**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 21-126** |
| **v.** | * | **SECTION: "S"** |
| **EMPIRE BULKERS LTD.** | * | |
| **JOANNA MARITIME LIMITED** | | |
| **WARLITO TAN** | * | |
| | * | |

<u>**REPLY MEMORANDUM IN SUPPORT OF WARLITO TAN'S MOTION FOR**</u>
<u>**RECONSIDERATION**</u>

NOW COMES defendant Warlito Tan, through counsel, and submits the following reply in support of his Motion for Reconsideration of Ruling on Motion to Dismiss (Rec. Doc. 229).

The government's opposition warrants just four brief comments, as follows:

First, the government mistakenly asserts Tan "does not contest that his conduct violated MARPOL" (Rec. Doc. 233 at 11). Although the indictment does not allege Tan "violated MARPOL," to eliminate all doubt, Tan affirmatively asserts that he violated the laws of neither the flag state nor this country, nor the treaty itself. That issue, however, has no bearing on the motion for reconsideration.

Next, the government asserts that Tan's "real" contention is that the *Jho* case was "wrongly decided." This is not Tan's contention here. The Fifth Circuit might well revisit *Jho* in light of a historical analysis of MARPOL, APPS and the relevant regulation that was never developed in *Jho*; but nothing in that case forecloses Tan's pending motion. The holdings in *Jho* were narrow. The issue before the court was whether international law prohibited U.S. prosecution for failure to "maintain" an oil record book (ORB) in a U. S. port (as the district court had ruled); and in concluding the trial court had erred, the *Jho* court further decided that APPS "can be read" to criminalize "knowing violations of 33 C. F. R. § 151.25 carried out by foreign-flagged vessels

1

while in a United States port … ."  *United States v. Jho,* 534 F.3d 398, 404, 409-10 (5th Cir. 2008).  The questions of whether the regulation was *ultra vires* or whether the nondelegation doctrine was violated were never raised and were never even mentioned by the court.  *See id.*

Furthermore, *Jho* did not deal with an attempted expansion of APPS to apply U. S. criminal law to a foreign seaman for entirely extraterritorial conduct that allegedly somehow had a causal impact on an alleged failure to maintain an ORB in U.S. waters.  In a footnote, the Fifth Circuit noted that Jho was charged with "aiding and abetting the ORB offenses."  *Id.* at 402 n. 1.  But the government contends it has *not* charged Tan with aiding and abetting an APPS violation.  Indeed, the government has objected to any aiding and abetting jury instruction.

Third, to avoid the effect of the recent *West Virginia* decision, the government contends that the ORB regulation as construed in this circuit does not present a "major question" or a consequential policy change, but undisputed facts and law prove the opposite.  The government does not dispute that Tan is charged with violating APPS, nor MARPOL in this country.  And although it contends (mistakenly) that Tan willfully "caused" the captain's failure to "maintain" a record while the captain was in this country, the government does not dispute – and the indictment makes clear – that the alleged causal conduct all took place on the high seas where only Marshall Island law applied.  The government similarly does not dispute that when MARPOL was negotiated the international community rejected the U.S. request for port-state enforcement concerning such high seas conduct, nor that the Congress that ratified MARPOL and enacted APPS was aware of and approved that balance of enforcement power.

In effect, the government argues, without citation to meaningful authority, that shifting enforcement for high seas events from flag states to port states is not a "major" policy matter.  Instead, the Supreme Court has repeatedly explained that the important presumption against extra-territorial effect of U.S. law "most notably[] serves to avoid the international discord that can

2

result when U.S. law is applied to conduct in foreign countries." *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2100 (2016). Respectfully, an agency regulation allegedly intended to shift the authority to fix and impose penalties for high seas conduct and alleged record keeping from flag state to port states, notwithstanding negotiations demonstrating that such was rejected when the treaty was negotiated and ratified, with the potential for "international discord," plainly qualifies as a "major" policy shift warranting careful analysis.

Lastly, the government mischaracterizes Tan's nondelegation argument as suggesting the *Jarkesy* decision "overturned" Supreme Court precedents as applied in this circuit. On the contrary, *Jarkesy* was foreshadowed by the Fifth Circuit's thoughtful decision in *Big Time Vapes, Inc. v. Food & Drug Administration,* 963 F.3d 436, 443 (5th Cir. 2020). There, the court adopted the view that that "[w]e ought not to shy away from our judicial duty to invalidate unconstitutional delegations." The court noted, *see id.,* that several Supreme Court Justices had increasingly signaled a willingness to take a more rigorous approach to the nondelegation doctrine. *See, e.g., Gundy v. United States,* 139 S. Ct. 2116, 2131, 204 L. Ed. 2d 522 (2018) (Alito, J., concurring) (indicating he would support reconsideration of lenient approach to delegation); *id.* at 2139 (Gorsuch, J., and Thomas, J., dissenting) (explaining that "mutated version" of "intelligible principle" line of cases has "no basis in the original meaning of the Constitution, in history, or even in the decision from which it was plucked," and urging reconsideration); *Paul v. United States,* 140 S. Ct. 342, 205 L. Ed. 2d 368 (2019) (Kavanaugh, J., concurring) ("Justice Gorsuch's thoughtful *Gundy* opinion raised important points that may raise further consideration"). The trend toward a more robust approach to the nondelegation doctrine has been growing in *both* the Fifth Circuit and the Supreme Court, as further shown by *Jarkesy.*.

For these reasons, and for all the reasons previously advanced in support of Tan's motion for reconsideration, the Court should reconsider its ruling on Tan's motions to dismiss counts 1 and 4

of the indictment.

**DATED** this 5th day of August 2022.

    /s/ Caroline Gabriel
Caroline Gabriel, Bar No. 38224
William Most, Bar No. 36914
Most & Associates, L.L.C.
201 St. Charles Ave. Suite 114 #101
New Orleans, LA 70170
(504) 509-5023
caroline.gabriel.ma@gmail.com


/s/ Edward S. MacColl
Edward S. MacColl, MBRN #2658
Pro Hac Vice
Counsel for Defendant Tan

## **CERTIFICATE OF SERVICE**

I, Edward S. MacColl, hereby certify that, on the above date I made due service of the above document by electronically filing the same using the Court's EM/ECF system.

/s/ Edward S. MacColl