UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 21-126 |
| v. | * | SECTION: S |
| WARLITO TAN | * | |
| | * | |

\* \* \*

**UNITED STATES' MEMORANDUM IN SUPPORT OF
SECOND MOTION TO EXCLUDE EXPERT WITNESS TESTIMONY**

The United States, through undersigned counsel, respectfully moves this Court to exclude the anticipated testimony of Antonis Panagiotareas, Gerasimos Aretos, and Iannis Zoumis. The Court denied certain portions of the government's first motion to exclude pending defendant's inspection and testing of the Oil Content Meter (OCM) from the *MV Joanna*. Rec. Doc. 223 at 8-9. That testing occurred on May 27, 2022, yet the defendant has not withdrawn much of the objectionable testimony.[1]

**I.      THE MAY 27, 2022 TESTING OF THE ORIGINAL OCM**

On May 27, 2022, proposed expert Mr. Panagiotareas and counsel for the defendant appeared in the U.S. Attorney's Office to inspect the original OCM at issue in this matter.[2] The defendant was permitted to bring whatever equipment was necessary for his expert to test the OCM as long as it did not mechanically alter or reconfigure the OCM. Rec. Doc. 184 at 6. On the agreed

---

[1] The government adopts by reference the legal standards for expert testimony set forth in its first motion to exclude. Rec. Doc. 155.

[2] The defendant initially insisted that the government surrender the OCM to the exclusive custody of the defense for private testing. Rec. Doc. 140. The government objected. Judge Roby denied the defendant's request for exclusive control but authorized private inspection and testing in the U.S. Attorney's Office. Rec. Doc. 184 at 6.

upon date the government performed its test live for Mr. Panagiotareas and defense counsel,[3] and the defense was given as much time as it needed to privately examine and test the OCM. After the conclusion of the private testing, no additional time was requested, and no other questions were raised.

**II.     THE ANTICIPATED TESTIMONY SHOULD BE EXCLUDED**

    **A.     <u>Antonis Panagiotareas</u>**

**April 18, 2022 Disclosure – Exhibit A**

On April 18, 2022, the defense noticed Mr. Panagiotareas as a maritime expert. Exhibit A. The government filed eight objections to his proposed testimony. Rec. Doc. 155-1 at 2-6. In light of the in-person testing of the original OCM by the defendant, the government re-urges its objections 4, 5, 6, and 8 as the Court anticipated in its June 2, 2022 Order and Reasons. Rec. Doc. 223 at 8-9.  The defendant ambiguously claims that "he does not anticipate" his expert testifying to government objections 4, 6, or 8, and so the government requests a definitive ruling from the Court. The defendant has not reconsidered government objection 5.

**<u>Objection No. 4</u>: He is expected to testify that the government prohibited him from taking control of or designing tests concerning the functionality of the OCM. Exhibit A at 3.**

Because the witness has been provided access to the OCM to conduct testing, the government objects to such testimony.

---

[3] This is the same test the government intends to run live before the jury at trial.

**Objection No. 5**: He is expected to testify that if 1) the USCG ordered and conducted tests to demonstrate that a diluted sample of OWS effluent was frequently or usually tested by the OCM as containing 3 to 4 parts per million of oil, and 2) if the government's tests demonstrate that the OCM was reliable except that, due to a dirty lens, it overstated oil content, and 3) that, as a result the allegedly diluted samples contained no parts per million of oil, then it necessarily follows that the undiluted sample also contained no or virtually no oil. His conclusion in that regard may be based on the limited available evidence of the government-monitored operation of the OWS after a replacement OCM was installed. *Id.*

This is irrelevant, false, and could only confuse the jury. Count 1 charges the defendant with failing to maintain an accurate Oil Record Book by indicating that the discharges had been made through a properly functioning OWS and OCM when they had not, and by failing to record exceptional discharges made without the use of a properly functioning OWS and OCM. Count 2 charges similar conduct for the purpose of obstructing an agency proceeding in violation of 18 U.S.C. § 1505. Count 3 charges that the defendant obstructed justice by making a false, fictitious and misleading ORB that concealed the disposal and discharge of bilge water. There is no charge (or element) that requires the government to show the actual ppms of any particular sample or discharge. Because of defendant's misconduct, the actual ppm is unknowable. It is also irrelevant since any dilution of the sample is itself a MARPOL violation as is not running the sample through a properly function OWS and OCM. MARPOL requires that a sample of the bilge water be measured by an OCM "without dilution" to determine whether it may be discharged overboard. The failure to record in the ORB that the OCM had been tampered with to allow dilution, and affirmative entries asserting that discharges had been made through a properly functioning OCM when it was not, are evidence of the failure to maintain an accurate Oil Record Book. Evidence and argument regarding the amount of dilution could only be offered to confuse the jury.

Moreover, this opinion is based on a misrepresentation of the government's evidence. The government's tests do not represent "that the OCM was reliable except that, due to a dirty lens, it overstated oil content." The OCM was not reliable because a metal plate was illegally inserted into

3

the valve handle to allow fresh water to dilute the sample. Such opinions mischaracterize the charges and the evidence, and would improperly confuse the jury.

In any event, the defendant has since been provided a live demonstration of the original OCM that conclusively shows that the metal plate causes dilution of the sample. The defendant was also provided an opportunity to test the OCM himself outside the government's presence. Defendant now concludes that any dilution was "minimal." Exhibit B at 2; *see also* Objection 10 below. However, the degree of dilution is not a defense to any of the pending charges, and such testimony should be excluded under Rules 403 and 702, and *Daubert*.

**Objection No. 6**: **He is expected to testify that it is a common practice in the maritime industry in the United States and elsewhere for parties who are engaged or likely to be engaged in litigation to coordinate concerning potential testing of systems under investigation. He is expected to testify that such joint or coordinated investigations are important and reliable because both sides are able to suggest modifications or follow-up inspections or tests. He is expected to testify that in this case the government appeared to seize and control all evidence, to design and conduct its own tests, and to control which tests and results were shared with the defense. He is expected to testify that the government's practice of so secretly designing, conducting, and controlling information about tests reduces the reliability of the testing.** *Id***.**

Questions and comments along these lines are improper and unfounded. Panagiotareas has not been offered as an expert on the conduct of federal investigations and he has no known prior law enforcement experience. The statements are also false, misleading, argumentative, and prejudicial. There is no policy, practice or requirement that the government collaborate with defendants on testing of evidence in a criminal case, and such is not the proper subject of expert testimony. The government has fully complied with its discovery obligation under Rule 16. Consequently, it would be improper to comment on the litigation between the parties before the jury.

4

In any event, the defendant has been provided with an opportunity to witness the government's test and conduct private testing on the OCM. Expert testimony and attorney argument along these lines should be excluded.

**Objection No. 8: He may testify that the government's practice in this case of taking exclusive control of pollution control equipment certified by MARPOL Administrator and designing and conducting unilateral tests of that equipment without prior notice to expected (or actual) litigation adversaries and without notice to the MARPOL Administrator is inconsistent with sound marine engineering practices and custom and with the provision of MARPOL.** *Id.* **at 5.**

See government's response to Objection No. 6 above. This is false, misleading, argumentative, prejudicial and improper expert testimony. Criminal investigations and the seizure of evidence are governed by the U.S. Constitution and Fourth Amendment. The law does not require prior notice to criminal defendants or third parties. In any event, the defendant and his expert have been provided with an opportunity to witness the government's test and conduct private testing of the OCM. Accordingly, expert testimony and attorney argument complaining about the government's investigation along these lines should be excluded.

### September 30, 2022 Supplemental Disclosure – Exhibit B

On September 30, 2022, after the government was forced to file a motion to compel, the defendant provided supplemental disclosure. Exhibit B. There are several aspects of defendant's supplemental expert testimony that are objectionable.

**Objection No. 9: He is expected to testify that he subsequently secured the duplicate oil content meter that was the object of testing by Gerasimos Aretos and Iannis Zoumis, that he performed tests on it similar or identical to their tests and reached the same conclusions summarized the April 18 disclosure of those witnesses' expected testimony.** *Id.*

At the outset, Mr. Panagiotareas did not secure a "duplicate" OCM to the one on the *MV Joanna*. It is apparent from photographs that the OCM used by the defendant's experts is different from the one on the *MV Joanna*. Since the original OCM at issue in this case has been made

5

available to defendant and his expert for inspection and testing, testimony regarding a different OCM is irrelevant and inadmissible.

Moreover, Aretos and Zoumis (and now evidently Mr. Panagiotareas by adoption) concluded that the metal insert used to improperly alter the OCM onboard the MV Joanna did not cause the OCM to dilute the effluent sample with fresh water. Exhibit C. However, again, this finding was not based on a test of the original OCM. As the defense now appears to concede, after testing the original OCM from the *MV Joanna*, the illegally modified valve does in fact cause dilution of the sample with fresh water. Exhibit B at 2.

The defendant has also not complied with Rule 16. As the Court is aware, the government has made repeated requests for disclosure of videos and reports of Mr. Panagiotareas' independent testing of the government OCM and the Greek OCM. The government has also requested that the defendant provide a reciprocal live demonstration of his purported test as the government did for the defendant. Thus far, the defendant has not complied.[4] Because his proposed expert testimony is based on this alleged independent testing, it should have been disclosed pursuant to Rule 16(b)(a)(B)(ii) and (C). At this late date, the testimony should be excluded as the government will not have sufficient time to prepare and respond. As further grounds, if there are no videos or reports of Mr. Panagiotareas' independent tests, the proposed testimony should be excluded under *Daubert* because it fails to meet the reliability requirements of Rule 702. Rule 702 requires that expert testimony be based on sufficient facts or data, that the testimony is the product of reliable

---

[4] The defendant has agreed to make the Greek OCM available for the government to inspect and test in the EDLA at some unknown time and place, but has apparently declined to demonstrate the test he intends to rely on during his testimony as the government has requested, and as the government did for the defendant.

6

principles and methods, and that the expert has reliably applied the principles and methods to the fact of the case. To date, no such showing has been made.

**Objection No. 10**: **He is expected to testify that any dilution of the sample during operation of the OCM with the metal chock in place was minimal, that the metal chock did not have a material impact on the functionality of the OCM or the OWS, and that the ORB entries that appear to be the object of the charges against defendant Tan were accurate and reasonable.**

The government objects to this proposed testimony as misleading and irrelevant. Whether defendant violated MARPOL a little or a lot is irrelevant. MARPOL Regulation 15 clearly states that "any discharge into the sea of oil or oily mixtures from ships" is prohibited unless, inter alia, "the oil content of the effluent *without dilution* does not exceed 15 ppm." MARPOL, Reg. 15 (A)(2) and (A)(2)(.3) (emphasis added); *accord* 33 C.F.R. § 151.10(a)(5), (b)(3). Defendant cannot advocate to the jury that dilution was minimal such that the jury should ignore the law. Such testimony is not a defense and could only be offered to confuse the jury or further an impermissible jury nullification defense.

Defendant additionally has not complied with Rule 16. The defendant has not provided any metrics regarding the claim that dilution was "minimal" as requested by the government. Even if such testimony were relevant and admissible, the defendant would need to inform the government how much and how this was determined so that these claims could be evaluated. Similarly, defendant has not provided any scientific basis for the conclusion that "the metal chock did not have a material impact on the functionality of the OCM…." In view of the MARPOL requirement that the OCM must test a sample of the effluent without dilution, *any* dilution or impact is material.

### B.    Gerasimos Aretos and Iannis Zoumis

The defendant claims that he "does not anticipate calling either of Messrs. Aretos or Zoumis unless Mr. Panagiotareas is unavailable." Exhibit B at 2. The deadline for noticing expert witnesses has long since past and surely the defendant knows whether Mr. Panagiotareas is available for trial by now.

In any event, as described above, the testing of a non-identical OCM is irrelevant, especially since the defendant has inspected and tested the original OCM – which will also be demonstrated live at trial. The proposed testimony of Messrs. Panagiotareas, Aretos, and Zoumis also constitutes needless cumulative evidence in violation of Rule 403. For all of these reasons, their testimony should now be excluded.

## IV.    CONCLUSION

Considering the foregoing, the government requests that the proposed expert testimony be excluded or, in the alternative, a *Daubert* hearing be conducted.

Respectfully Submitted,

| | |
|---|---|
| TODD KIM | DUANE A. EVANS |
| Assistant Attorney General | United States Attorney |
| Environmental & Natural Resources Division | |
| U.S. Department of Justice | |
| | |
| *s/Richard A. Udell* | *s/ G. Dall Kammer* |
| Richard A. Udell | G. Dall Kammer (26948) |
| Senior Litigation Counsel | Assistant U.S Attorney |
| Environmental Crimes Section | 650 Poydras Street, Suite 1600 |
| U.S. Department of Justice | New Orleans, LA 70130 |
| 50 M St., N.E./Room 4206 | Telephone: (504) 680-3168 |
| Washington, D.C. 20044 | Email:dall.kammer@usdoj.gov |
| Telephone: (202) 305-0361 | |
| Email: richard.udell@usdoj.gov | |

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 19, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all defense counsel of record.

                                                     *s/ G. Dall Kammer*
                                                     G. DALL KAMMER
                                                     Assistant United States Attorney