UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO: 21-126 |
| | * | |
| v. | * | SECTION: "S" (4) |
| | * | |
| EMPIRE BULKERS, LTD., | * | |
| JOANNA MARITIME LIMITED, AND | * | |
| WARLITO TAN | * | |

* * * *

## MEMORANDUM IN SUPPORT OF MOTION TO RELEASE WITNESS FROM TRIAL SUBPOENA

**NOW INTO COURT**, through undersigned counsel, come witness Gerone Bernabe (the "Witness") who respectfully submits this memorandum in support of his motion to release him from his trial subpoena in the above-captioned matter. Mr. Bernabe, a citizen of the Philippines, would endure significant hardship in travelling to this district to comply with the government's trial subpoena in this matter. It is unnecessary for Mr. Bernabe to endure such hardship where he has already provided videotaped testimony pursuant to Rule 15 of the Federal Rules of Criminal Procedure. Accordingly, Mr. Bernabe asks that he be released from his trial subpoena.

### SUMMARY OF RELEVANT FACTS

Mr. Bernabe was a crew member, more specifically the Electrician, on board the M/V JOANNA, when it entered New Orleans on March 6, 2021. Mr. Bernabe and five other crew members were required to come ashore by the government and were held under material witness warrants so that their testimony could be obtained. They were held for over seven months until they were discharged on October 13, 2021.

Prior to his release, Mr. Bernabe gave a videotaped, in-court and Court-supervised, and Court-ordered deposition to all parties in this matter pursuant to Rule 15 of the Federal Rules of Criminal Procedure.  After giving that deposition, Mr. Bernabe was served with a subpoena for a December 2021 trial in this matter.

After the trial was delayed several times and scheduled to begin on May 23, 2022, Mr. Bernabe and other foreign crewmembers moved to be released from their trial subpoenas, because they were at sea.  Rec. Doc. 116.  This Court granted Mr. Bernabe's release from the trial subpoena at that time because he was then under contract and employed at sea.  Rec. Doc. 165.  However, in releasing Mr. Bernabe and the other crewmembers, the Court further stated that "[t]o the extent that [a witness] cease[s] being employed aboard an oceangoing vessel, the subpoena will remain valid."

Both the government and defendant Tan designated the portions of Mr. Bernabe's videotape deposition they wished to offer, and both served and filed objections to the opposing party's designations.  The Court has resolved all such objections, and defendant Tan has provided the government with the final edited video of Mr. Bernabe's deposition in accordance with the Court's orders.

The trial did not take place in May 2022 due to the Court's scheduling difficulties, which delayed the trial until June.  The government then moved to continue the trial because one of the government attorneys tested positive for COVID. Trial is currently scheduled to begin November 7, 2022.

Mr. Bernabe's most recent contract ended in August 2022.  Because he is not at sea, the government objects to use of Mr. Bernabe's fully-edited deposition and insists that he must appear for trial, even though the government does not intend to call him as a witness.

Defendant Tan does intend to call Mr. Bernabe as a defense witness, but defendant Tan agrees given Mr. Bernabe's circumstances, his prior detention, the hardship he would have to endure and the distance he would have to travel, he may appropriately be treated as unavailable for trial and the edited video would satisfy the interests of justice.

## LAW & ARGUMENT

I. <u>Mr. Bernabe Has Already Provided His Testimony.</u>

Mr. Bernabe has already provided the testimony of his limited knowledge of the facts of this case when he was held in this district at the government's insistence on a material witness warrant for seven months. Mr. Bernabe was the electrician on board the M/V Joanna. He was neither responsible for, nor participated in the running and operation of, the Oily Water Separator on board the Joanna. He has no knowledge related to the alleged leaking valve associated with one of the preheaters on board the Joanna. He provided all information he has at his Rule 15 deposition, where he was subject to examination by all parties. If called at trial, Mr. Bernabe would merely reiterate testimony he has already given. Accordingly, he should be released from his trial subpoena.

II. <u>Mr. Bernabe Has Already Paid a Significant Personal Cost to Provide Testimony In This Matter.</u>

Mr. Bernabe has not only already given his testimony in this matter, he did so at great personal cost. Mr. Bernabe was already held in this district, isolated from his family and career, for seven difficult months in 2021, which included being relocated to Houston when Category 4 Hurricane Ida hit New Orleans in the summer of 2021. Since his release, Mr. Bernabe has had limited time to rebuild his relations with family and friends. In all, Mr. Bernabe has been working at sea or detained in this country for most of the last eighteen months. Although he was allowed to return home briefly to attend his mother's funeral in June 2021, he

was required to return to this country because the government contended his testimony was vitally important, and he did so.  Given these facts, the Court should consider the significant personal costs Mr. Bernabe has already incurred to provide his testimony in this matter.

 III. <u>Mr. Bernabe and his Family Will Incur Added Hardship if He is Forced to Travel to the United States for Trial.</u>

  Furthermore, requiring Mr. Bernabe to travel to the United States for trial will require him to suffer additional, unreasonable hardships, especially given that his limited-value testimony has already been provided in this case.  First, the travel required by the government's subpoena will be arduous for Mr. Bernabe. The Philippines is 8,727 miles from New Orleans; it is a difficult and time-consuming journey.  To travel to New Orleans, Mr. Bernabe must first take a flight from the island of Visayas, where he lives, to the international airport in Manila.  Without delays, the international leg of his journey alone will take 15.5 hours.

  Second, Mr. Bernabe, his wife, his adolescent son and other family members are all deeply anxious that Mr. Bernabe will again be stuck in the United States for an unknown period of time if he returns as the government again insists.  Importantly, Mr. Bernabe was held in this country both under orders of this Court and also a parole proceeding of the Department of Homeland Security ("DHS").  Mr. Bernabe believes that if he returns for trial he will again be "paroled" into the United States by DHS, and that his ability to leave may again be restricted by DHS.

  Moreover, it is unclear how long Mr. Bernabe will be required to remain in New Orleans for the trial.[1]  The government wants Mr. Bernabe to arrive in this District on November

---

[1] Notably this trial has already been continued on three occasions, the last one because of one of the government attorneys contracted the Coronavirus.  There is no guarantee that the trial will not be continued for some other reason.  If trial is delayed again after Mr. Bernabe is already en route to the United States, Mr. Bernabe will have lost substantial additional time from his family and career.

4

6, 2022, which would mean that he would have to wait for several days while jury selection and the government's case-in-chief are presented before he is expected to testify. Together with his travel time, wait time, and other time required for this trip,[2] Mr. Bernabe expects that his limited testimony in this matter will likely cost him at least a week of his life. The Court should consider the great personal cost that will be required of Mr. Bernabe and release him from his any subpoena obligation he may have in this matter.

    IV. <u>The Government's Position on Mr. Bernabe's Subpoena Lacks Legal Support.</u>

    The government's insistence that Mr. Bernabe provide his testimony again in person is both unfair and mistaken on the law. First, the subpoena at issue is no longer valid. Federal Rule of Criminal Procedure 17 provides for subpoenas to be served on a witness that identifies the date of the required appearance. Mr. Bernabe was served with a trial subpoena to appear in December 2021. Thereafter, the government issued a second subpoena for Mr. Bernabe on January 10, 2022, to appear for trial on February 14, 2022. The trial was several times continued and he has never been served with any subpoena for a later trial. Because Mr. Bernabe has not been served with these latter subpoenas, they may not be enforced.

    Moreover, Rule 17 contemplates service of subpoenas only "at any place within the United States." The same rule provides that service of subpoenas on witnesses outside the United States is governed by 28 U.S.C. § 1783. Section 1783 contemplates service of subpoenas outside the United States only on U.S. citizens,[3] and even then, only if the Court finds

---

[2] Undersigned counsel have been advised by counsel for Defendant Tan that there is some sort of quarantine protocol in effect in Manila that required Defendant Tan to be in quarantine from either the time that he arrived in Manila or from the time that he was administered a PCR when he arrived in Manila, which quarantine remains in effect until he departs that city on his international flight.

[3] Section 1783 makes clear that the parties would have to make a special showing of need even to require a U.S. citizen to provide live testimony in this matter. The law does not contemplate imposing extraordinary burdens on foreign nationals who have been detained and provided extensive videotaped testimony after seven months' detention.

that the appearance of the U.S. citizen (or resident) "is necessary in the interest of justice." Mr. Bernabe, of course, is not a U.S. citizen; he is not in the United States; and his appearance is not "necessary in the interest of justice" because, after being held here for seven months, he provided detailed, videotaped deposition testimony and all issues relevant to the admissibility of that testimony have been resolved by orders of this Honorable Court.

Further, Mr. Bernabe respectfully submits that the government's refusal to release him from his trial subpoena serves as a significant indication that the government misrepresented to the Court that it wanted to hold Mr. Bernabe in this district to secure his testimony. Mr. Bernabe submitted to a Rule 15 deposition and his testimony has already been secured. The law should not (and Mr. Bernabe respectfully submits does not) allow the government to hold a foreign national in the United States against his will for seven months, supposedly to secure his testimony, and then allow the government to insist, a full year after the witness provided sworn, videotaped testimony, that he must return to this foreign country where he was detained to repeat that testimony.

## **CONCLUSION**

Mr. Bernabe respectfully submits that it is an unfair emotional, financial and temporal burden to force him to appear in person for trial. Accordingly, witness Gerone Bernabe respectfully prays this Honorable Court will release him from any subpoena requiring his presence for trial in this matter.

Respectfully submitted,

*/s/ Jacob K. Weixler*
Jacob K. Weixler (36076)
Weixler Law LLC
P.O. Box 52197
New Orleans, Louisiana 70152-2197
Tel.: (504) 408-2180
Fax: (504) 814-1728
jkw@weixlerlaw.com

-AND-

*/s/ Bruce M. Merrill*
Bruce M. Merrill, (Me. Bar No. 7623)
Law Offices of Bruce M. Merrill, P.A.
225 Commercial Street
Suite 501
Portland, ME  04101
(207)  775-3333
E-mail: mainelaw@maine.rr.com
*Admitted Pro Hac Vice*

*Attorneys for Gerone Bernabe*

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2022, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Jacob K. Weixler*
JACOB K. WEIXLER