**EXHIBIT A**

# REPUBLIC OF
# THE MARSHALL ISLANDS



# MARITIME REGULATIONS

## MARITIME ADMINISTRATOR

**Aug/2021**

**MI-108**

# NOTICE

Any hardcopy publication of the Republic of the Marshall Islands Maritime Regulations (MI-108) will not be automatically supplemented, and therefore, may be **out of date**.

The link to the most up to date version of this publication may be found at www.register-iri.com on the MI-300 dedicated webpage.

Requests to be included in the email notification updating service, MI-300 Updates, may be sent to publications@register-iri.com.

*Published by:*

*Republic of the Marshall Islands Maritime Administrator*

**REPUBLIC OF THE MARSHALL ISLANDS**
**MARITIME REGULATIONS**

## TABLE OF CONTENTS

**CHAPTER 1 GENERAL REGULATIONS** ................................................................................ 1

1.01    Administration of Regulations. .......................................................................... 1
    .1    Maritime Administrator. ............................................................................... 1
    .2    Marine Notices. ........................................................................................... 1
    .3    Marine Guidelines. ...................................................................................... 1
    .4    MI-300. ......................................................................................................... 1

1.02    The Maritime Administrator. .......................................................................... 1

1.03    Definitions. ....................................................................................................... 2

1.04    Records. ............................................................................................................ 4
    .1    Recordable Instruments. .............................................................................. 4
    .2    Number of Copies Required. ....................................................................... 4

1.05    Fees. ................................................................................................................. 5
    .1    Authorization. .............................................................................................. 5
    .2    Collection of Fees. ....................................................................................... 5

1.06    Certificates of Seafarers. ................................................................................. 5
    .1    Issuance. ....................................................................................................... 5
    .2    Endorsements. .............................................................................................. 5
    .3    Equivalents. .................................................................................................. 6
    .4    Examinations. ............................................................................................... 6
    .5    Familiarization with National Maritime Legislation. .................................. 6
    .6    Cause for Revocation. .................................................................................. 6
    .7    Validity and Renewal. ................................................................................. 6

1.07    Control of the Movement and Operation of Vessels. ...................................... 7
    .1    Authority of Maritime Administrator. ........................................................ 7
    .2    Company. ..................................................................................................... 7
    .3    Designated Person Ashore (DPA). .............................................................. 7
    .4    Company Security Officer (CSO). .............................................................. 7
    .5    Ship Security Officer (SSO). ...................................................................... 8
    .6    Contact Information. .................................................................................... 8
    .7    Penalty for Violation. .................................................................................. 8

1.08    Commitments to Foreign Governments. ......................................................... 8
    .1    Approval Required. ...................................................................................... 8
    .2    Copies to be Filed. ...................................................................................... 8
    .3    Normal Commercial Carriage Excluded. .................................................... 8
    .4    Penalty for Violation. .................................................................................. 9

1.09    Taxes, Fees, Penalties, etc. .............................................................................. 9
    .1    Payment. ...................................................................................................... 9
        a.    Vessels Engaged in Foreign Trade. ..................................................... 9
        b.    Commercial Yachts and Passenger Yachts. ......................................... 9
        c.    Private Yachts Limited Charter. ........................................................... 9
        d.    Private Yachts. ...................................................................................... 9
        e.    Fishing Vessels. ................................................................................. 10
        f.    Yachts Engaged in Trade .................................................................. 10
    .2    Late Payment Penalties. ............................................................................ 10

.3   Failure to Pay Tonnage Tax. ...................................................................... 10

1.10   Tax Exemption for Laid-up Vessels. .......................................................... 10
.1   Commencement. ............................................................................... 10
.2   Termination. ....................................................................................... 11

1.11   Registration, Documentation, and Identification of Vessels. ..................... 11
.1   Limitations. ........................................................................................ 11
.2   Refusal. .............................................................................................. 11
.3   Termination. ....................................................................................... 12
.4   Home Port. ......................................................................................... 12
.5   Vessels Under Construction. .............................................................. 13
.6   Designated Number. .......................................................................... 13

1.12   Appeal from a Decision. ............................................................................ 13

**CHAPTER 2 SAFETY, DOCUMENTATION AND IDENTIFICATION OF VESSELS** ................ 14

2.11   Implementation and Compliance with International Conventions, Agreements and National
Standards. ......................................................................................................... 14
.1   IMO Instruments Implementation Code (III Code) ............................. 14
.2   List of Conventions. .......................................................................... 15
.3   Responsibility. ................................................................................... 15
.4   COLREGS '72. ................................................................................... 15
.5   ISM Code National Requirements. ..................................................... 15
.6   ISPS Code National Requirements. .................................................... 15
.7   National Requirements. ...................................................................... 16
a.   Commercial Yachts. ................................................................. 16
b.   Passenger Yachts. .................................................................... 16
c.   Private Yachts Limited Charter. ............................................... 16
d.   Yachts Engaged in Trade .......................................................... 16
e.   Private Yachts. ......................................................................... 17
f.   Tenders. ................................................................................... 17
g.   Fishing Vessels. ....................................................................... 17
.8   Safety Radio Regulations. ................................................................. 17
.9   Safety Navigation Regulations. ......................................................... 17
.10   ILO Convention National Standards. ................................................. 17
.11   Non-Compliance – Penalty. ............................................................... 18
.12   Lien of Penalty. ................................................................................. 18

2.12   Standards of Seaworthiness. ...................................................................... 18
.1   Classification. .................................................................................... 18
.2   Yachts. ............................................................................................... 18
.3   Change of Classification, Classification Society, or Appointed Representative. ................... 19

2.13   MARPOL - Prevention of Pollution from Ships. ....................................... 19
.1   Compliance. ....................................................................................... 19
.2   Annex I - Prevention of Pollution by Oil. ......................................... 19
a.   Construction. ........................................................................... 19
b.   Equipment. ............................................................................... 19
c.   Oily Discharges. ...................................................................... 19
d.   Oil Record Books. .................................................................... 20
e.   Shipboard Oil Pollution Emergency Plan. ................................ 20
f.   Transfer of Oil Cargo Between Oil Tankers at Sea (STS operations) Plan. ............ 20
g.   Condition Assessment Scheme. ................................................ 20
.3   Annex II - Prevention of Pollution by Noxious Liquid Substances in Bulk. .............. 20
a.   Discharges. .............................................................................. 20

|  | b. | Cargo Record Books. | 20 |
|  | c. | Procedures and Arrangements Manual. | 20 |
|  | d. | Shipboard Marine Pollution Emergency Plan. | 20 |
| .4 | | Annex III - Prevention of Pollution by Harmful Substances in Package Form. | 21 |
| .5 | | Annex IV - Prevention of Pollution by Sewage. | 21 |
|  | a. | Equipment. | 21 |
|  | b. | Discharges. | 21 |
| .6 | | Annex V - Prevention of Pollution by Garbage. | 21 |
|  | a. | Discharges. | 21 |
|  | b. | Placards. | 21 |
|  | c. | Equipment and Waste Management Plans. | 21 |
|  | d. | Record of Garbage Discharges. | 22 |
| .7 | | Annex VI - Prevention of Air Pollution. | 22 |
|  | a. | Ozone-depleting Substances. | 22 |
|  | b. | Ozone-depleting Substances Record Book. | 22 |
|  | c. | Nitrogen Oxides. | 22 |
|  | d. | Sulphur Oxides and Fuel Oil. | 22 |
|  | e. | Equivalents. | 23 |
|  | f. | Fuel Oil Changeover Record. | 23 |
|  | g. | Incinerators. | 23 |
|  | h. | Ship Energy Efficiency Management Plan (SEEMP). | 23 |
| .8 | | Non-Compliance; Penalty. | 23 |
| .9 | | Lien of Penalty. | 23 |

| 2.14 | Dumping or Burning of Wastes at Sea. | 23 |
| .1 | Activities Covered. | 23 |
| .2 | Matter Included and Excluded. | 24 |
| .3 | Permit Required. | 24 |
| .4 | Non-Compliance; Penalty. | 24 |
| .5 | Lien of Penalty. | 24 |

| 2.15 | International Convention on Load Lines 1966. | 24 |
| .1 | Commercial Vessels. | 24 |
| .2 | Stability and Trim Information. | 24 |
| .3 | Multiple Load Line Assignments. | 25 |
| .4 | Required Log Entries. | 25 |
| .5 | Inspections. | 25 |

| 2.16 | Cost of RMI International Participation. | 25 |
| .1 | Annual Fees. | 25 |
| .2 | How Applied. | 25 |
|  | a. | Assessments. | 25 |
|  | b. | Participation and Representation. | 26 |

| 2.17 | Authorized Agents for Measurement and Survey of Vessels. | 26 |
| .1 | Classification Societies. | 26 |
| .2 | Appointed Agent or Representative. | 26 |
| .3 | Other Recognized Organizations. | 26 |

| 2.18 | Measurement and Alteration of Vessels. | 26 |
| .1 | Tonnage Measurement. | 26 |
| .2 | Application of Tonnage Convention. | 27 |
| .3 | Certificate of Measurement. | 27 |
| .4 | Existing Vessels. | 27 |
| .5 | Alterations. | 27 |

| 2.19 | Tonnage Statements in Registry Certificate. | 28 |

|  | .1 | Alternate Use Vessel. | 28 |
|  | .2 | Dual Tonnage Vessel | 28 |

| 2.20 | Certificates of Registry. | 28 |
|  | .1 Content of Provisional Certificates of Registry. | 28 |
|  | .2 Content of Permanent Certificates of Registry. | 28 |
|  | .3 Yacht Certificates of Registry. | 28 |
|  | a. Revalidation. | 28 |
|  | b. Tonnage Tax Receipt. | 29 |
|  | c. Notice of Suspension. | 29 |
|  | d. Termination. | 29 |
|  | .4 Validity of Previously Issued Certificates of Registry. | 30 |

| 2.21 | Issuance of a New Certificate of Registry in Certain Cases. | 30 |

| 2.22 | Numbers of Registry Certificates and Licenses. | 30 |

| 2.23 | Conditions Precedent to Issuance of Provisional Certificates of Registry. | 30 |
|  | .1 Proof of Consent. | 30 |
|  | .2 Proof of Liability Insurance. | 30 |
|  | .3 Yacht Declarations | 31 |
|  | .4 Payment of All Outstanding Fees, Taxes and Charges. | 31 |
|  | .5 Continuous Synopsis Record (CSR). | 32 |
|  | .6 Filing. | 32 |

| 2.24 | Conditions Precedent to Issuance of Permanent Certificates of Registry. | 32 |
|  | .1 Proof of Consent. | 32 |
|  | .2 International and National Certificates. | 32 |
|  | .3 Filing. | 32 |

| 2.25 | Transfer Foreign; Cancellation. | 32 |
|  | .1 Statement Required. | 32 |
|  | .2 Documents Required. | 33 |
|  | .3 Other Requirements. | 33 |

| 2.26 | Change of Name of Vessel. | 33 |

| 2.27 | Liquidated Damages. | 33 |

| 2.28 | Foreign Ship Mortgage Recording. | 33 |

| 2.29 | Required Agreement by Shipowner and Foreign Bareboat Charterer. | 34 |

| 2.30 | Foreign Bareboat Charter: Required Filings. | 34 |
|  | .1 Charter Party. | 34 |
|  | .2 Amendment of Charter Party. | 34 |
|  | .3 Consent of Mortgagee. | 34 |

| **CHAPTER 3 PREFERRED SHIP MORTGAGES AND MARITIME LIENS** | **35** |

| 3.30 | Execution. | 35 |
|  | .1 Form of Required Acknowledgment. | 35 |
|  | .2 Proof of Due Execution. | 36 |

| 3.31 | Bill of Sale Recording. | 36 |
|  | .1 Existing Ships. | 36 |
|  | .2 Newbuildings. | 36 |

3.32    Mortgage Recording. .................................................................................. 37

3.33    Yacht Mortgage or Security Agreement. ..................................................... 37

3.34    Construction Contracts. ............................................................................... 37

**CHAPTER 4 RADIO** ............................................................................................ 38

4.33    General Requirements. ................................................................................ 38
    .1  Radio Call and Signal Letters, Frequency Assignments. ..................... 38
    .2  Ship Radio Station Licenses. .............................................................. 38
        a.  License Required. ........................................................................ 38
        b.  Validity and Renewal. ................................................................. 38
        c.  Filing. ......................................................................................... 38
    .3  Mobile Satellite Service Ship Earth Stations. .................................... 38
    .4  Service Contract Required. .................................................................. 38
    .5  Vessel Monitoring System. ................................................................. 38
    .6  Radio Operators. ................................................................................. 39
        a.  Radiotelegraph. ........................................................................... 39
        b.  Radiotelephone. .......................................................................... 39
        c.  Telex, etc. ................................................................................... 39
        d.  Secrecy and Compliance. ........................................................... 39

**CHAPTER 5 MARINE INSPECTION** .................................................................. 40

5.34    Marine Safety Inspections. .......................................................................... 40
    .1  Nautical Inspectors. ............................................................................ 40
    .2  Initial Inspections. .............................................................................. 40
    .3  Annual Inspections. ............................................................................ 41
    .4  Semi-Annual Inspections. ................................................................... 41
    .5  Periodic Inspections. .......................................................................... 41
    .6  Special Inspections. ............................................................................ 41
    .7  Alternative Inspections. ...................................................................... 41
    .8  Pre-registration Inspections. ............................................................... 42
    .9  Compliance Verifications. ................................................................... 42
    .10 MLC, 2006 Inspections. ..................................................................... 42
    .11 Voluntary Programs. .......................................................................... 42
    .12 Responsibilities of Owners and Operators. ........................................ 42
    .13 Duties of Shipboard Certificated Personnel. ...................................... 43
    .14 Costs of Inspection or Compliance Verification. ............................... 43
    .15 Invoicing. ........................................................................................... 43

**CHAPTER 6 MARINE INVESTIGATIONS** ........................................................ 44

6.35    Definitions. .................................................................................................. 44
    .1  Investigation Oversight Committee. ................................................... 44
    .2  Investigations Review Board. .............................................................. 44
    .3  Marine Casualty. ................................................................................. 44
    .4  Marine Incident. ................................................................................. 44
    .5  Marine Safety Investigation. ............................................................... 45
    .6  Marine Safety Record. ........................................................................ 45
    .7  Occurrence. ......................................................................................... 45
    .8  Offense. .............................................................................................. 45

6.36    Notification and Reporting Requirements. .................................................. 45
    .1  Initial Notification. ............................................................................. 45
    .2  Follow-Up Report. .............................................................................. 45
    .3  Form of Reports. ................................................................................. 46

.4    Penalties. ............................................................................................... 46

6.37    Incident Contingency Plan. ................................................................................ 46

6.38    Marine Investigations. ........................................................................................ 47
.1    Conduct. ................................................................................................ 47
.2    Duties of the Maritime Administrator. ....................................................... 47
.3    Investigators. ......................................................................................... 47
.4    Duties of Owners. ................................................................................... 48
.5    Duties of Shipboard Certificated Personnel. .............................................. 48
.6    Investigation. ......................................................................................... 49
.7    Retention of Voyage Records. .................................................................. 49
.8    Investigative Reports. .............................................................................. 49
        a.    Preliminary Report. ......................................................................... 49
        b.    Draft Report. .................................................................................. 50
        c.    Final Report. ................................................................................. 50
        d.    Transmission to Interested Party. ...................................................... 50
        e.    Reopening an Investigation. .............................................................. 50
        f.    Referral to Investigative Review Board. .............................................. 50
        g.    IMO Submission. ............................................................................ 50
        h.    Report Retention. ........................................................................... 51
        i.    Release of Reports and Information. ................................................... 51
.9    Invoice After Investigation. ..................................................................... 51

6.39    Marine Administrative Proceeding. ..................................................................... 51

**CHAPTER 7 SEAFARERS** ................................................................................................ 52

7.38    Manning Requirements for Vessels Registered under the Maritime Act. ................. 52
.1    Required Minimum Number of Deck Officers. ............................................ 52
.2    Required Minimum Number of Engineers. .................................................. 52
.3    Required Minimum Number and Ratings of Crew. ...................................... 52
.4    Required Minimum Number of Certified Persons Proficient in Survival Craft and Crowd
        Control. ................................................................................................. 53
.5    Responsibility of Shipowners/Operators. ................................................... 53
.6    Minimum Safe Manning Certificate. ......................................................... 53

7.39    Temporary Authorization as Officer. ................................................................... 53
.1    Required Sea Service. ............................................................................. 55
.2    Temporary Period of Service. ................................................................... 55
.3    Temporary Permit. ................................................................................. 55
.4    Number of Temporary Permits Allowed. .................................................... 55
.5    Prohibited Permits. ................................................................................. 55
.6    Revocation or Suspension. ....................................................................... 55

7.40    Change of Command Appointment and Log Entry. ............................................... 55

7.41    Master's Duties and Responsibilities. ................................................................. 56
.1    Master's Authority. ................................................................................ 56
.2    Required Log Books for Vessels of 100 Gross Tons and Over. ...................... 56
        a.    Bridge Navigation Log and Engine Room Log. ................................... 56
        b.    Bell Log. ....................................................................................... 56
        c.    Cargo Log Book. ............................................................................ 56
        d.    Radio Log Book. ............................................................................ 56
        e.    Medical Log. .................................................................................. 57
        f.    Official Log Book and Entries. ......................................................... 57
        g.    Electronic Log Data and Record Book Systems. .................................. 58

|  | h. Log and Record Book Retention. | 58 |
| .3 | Certificates to be Given by Master. | 58 |
| .4 | Manning of Survival Craft. | 58 |
| .5 | Muster List and Emergency Procedure. | 59 |
| .6 | Fire and Abandon Ship Drills. | 59 |
| .7 | Enclosed Space Entry and Rescue Drills. | 60 |
| .8 | Security Drills and Exercises. | 61 |
| .9 | Person Overboard Drills. | 61 |
| .10 | Recovery of Persons from the Water. | 61 |
| .11 | Line-Throwing Apparatus. | 61 |
| .12 | Onboard Familiarization and Training. | 61 |
| .13 | Accident Prevention. | 62 |
| .14 | Ship's Port Arrival/Departure Check List. | 62 |
| .15 | Nautical Publications. | 62 |
| .16 | Security. | 62 |
| .17 | Documented Inspections. | 62 |
| .18 | Emergency Preparedness. | 63 |

| 7.42 | Medical Care of Officers and Crew. | 63 |
| .1 | Responsibility of Shipowner/Operator. | 63 |
| .2 | Hospital. | 63 |
| .3 | Medical Doctor. | 64 |
| .4 | Standard of Competence for Medical First Aid/Medical Care. | 64 |
| .5 | Medicine Chest. | 64 |
| .6 | Medical Guide. | 64 |
| .7 | Medical Advice. | 64 |

| 7.43 | Health and Safety Protection and Accident Prevention. | 65 |

| 7.44 | Accommodations, Recreational Facilities, Food, Water and Catering. | 65 |
| .1 | Accommodations and Recreational Facilities. | 65 |
| .2 | Food, Water and Catering. | 65 |

| 7.45 | Conditions of Employment. | 66 |
| .1 | Seafarer Employment Agreement. | 66 |
| .2 | Recruitment and Placement Services. | 68 |

| 7.46 | Shipping Articles. | 69 |
| .1 | Official Form Required. | 69 |
| .2 | Definitions. | 69 |
| .3 | Time of Signing-on Articles. | 69 |
| .4 | Signing-Off of Articles Not a Waiver. | 70 |

| 7.47 | Required Certification. | 70 |
| .1 | Training and Qualifications. | 70 |
| .2 | Officer's Certificate of Competence. | 70 |
|  | a. Appropriate Certification. | 70 |
|  | b. Certificate of Competence or Temporary Permit. | 70 |
|  | c. Penalty for Non-possession. | 70 |
| .3 | Seafarer's Identification and Record Books. | 71 |
|  | a. Requirements. | 71 |
|  | b. Qualifications. | 71 |
|  | c. Validity and Renewal. | 71 |
|  | d. Penalty for Non-possession. | 71 |
| .4 | Medical Certificates. | 71 |
|  | a. Requirements. | 71 |
|  | b. Refusal of Medical Certificate. | 72 |

      c.   Valid Time Period.......................................................................................72

      d.   Urgent Circumstances..............................................................................72

  .5  Availability of Seafarers Documents.............................................................72

7.48    Certificates of Service.........................................................................................73

7.49    Minimum Age.....................................................................................................73

  .1  Prohibition........................................................................................................73

  .2  Nighttime Work................................................................................................73

  .3  Nighttime Work Exceptions..............................................................................73

  .4  Hazardous Work...............................................................................................74

7.50    Benefit of Compensation for Loss of Life..........................................................74

  .1  Amount of Compensation.................................................................................74

  .2  Exceptions........................................................................................................74

  .3  Medical Examination........................................................................................74

  .4  Presumption of Death.......................................................................................74

  .5  Shipowner's Obligation....................................................................................74

  .6  Termination of Obligation.................................................................................75

  .7  Suspension of Obligation..................................................................................75

  .8  Seafarer's Residence.........................................................................................75

  .9  Beneficiaries.....................................................................................................75

  .10 Other Death Benefits........................................................................................75

  .11 Satisfaction of Obligation.................................................................................75

  .12 Certification......................................................................................................76

7.51    Hours of Work and Hours of Rest.......................................................................78

  .1  Terms Used.......................................................................................................78

  .2  Limits on Hours of Rest....................................................................................78

      a.   Standard....................................................................................................78

      b.   Minimum Rest Hours................................................................................78

      c.   Additional Provisions...............................................................................78

      d.   Right of the Master...................................................................................79

  .3  Record..............................................................................................................79

  .4  Payment of Wages............................................................................................79

      a.   Terms Used...............................................................................................79

      b.   Wages.......................................................................................................80

      c.   Salary Plans..............................................................................................80

      d.   Profit-Sharing...........................................................................................81

  .5  Overtime..........................................................................................................81

      a.   Terms Used...............................................................................................81

      b.   Rate..........................................................................................................81

      c.   Exceptions................................................................................................81

      d.   Alternatives..............................................................................................81

7.52    Social Protections................................................................................................81

  .1  Liability Insurance............................................................................................81

  .2  Security for Costs.............................................................................................82

  .3  Satisfaction of Obligations for Social Protections............................................82

  4   Certification......................................................................................................83

  .5  Repatriation......................................................................................................83

      a.   Entitlements.............................................................................................83

      b.   Forbidden Employment Condition.............................................................84

      c.   Duration of Service..................................................................................84

      d.   Seafarer's Copy........................................................................................84

  .6  Unemployment Compensation..........................................................................84

      a.   Indemnity.................................................................................................84

      b.   Rights and Legal Remedies. ........................................................................ 84

      c.   Pay Rate and Period.................................................................................. 84

   .7   Abandonment ..................................................................................................... 85

7.53   On Board Complaint Procedures, Conciliation, Mediation and Arbitration................................... 85

   .1  On Board Complaint Procedures........................................................................... 85

   .2  Conciliation and Mediation Procedures. ................................................................. 85

   .3  Arbitration Rules. ................................................................................................ 86

   .4  Arbitration Proceeding. ....................................................................................... 86

REVISION HISTORY ............................................................................................................. 87

**REPUBLIC OF THE MARSHALL ISLANDS**
**MARITIME REGULATIONS**

**CHAPTER 1**
**GENERAL REGULATIONS**

**1.01    Administration of Regulations.**

**.1    Maritime Administrator.**

These Regulations are promulgated by the authority of The Trust Company of the Marshall Islands, Inc. which has been duly appointed by the Cabinet to act as the Republic of the Marshall Islands (RMI) Maritime Administrator ("Maritime Administrator" or "Administrator") to administer the provisions of the RMI Maritime Act 1990, as amended ("Maritime Act"). These Regulations shall be administered by and shall be subject to the direction and control of the Maritime Administrator. All documents referred to in the Maritime Act or in these Regulations shall be submitted to the Maritime Administrator for examination and approval.

**.2    Marine Notices.**

Marine Notices, when properly promulgated by the Maritime Administrator, shall have the force and effect of Regulations.

**.3    Marine Guidelines.**

Marine Guidelines, when promulgated by the Maritime Administrator, shall serve as recommendations to shipowners, ship operators, Companies and all other parties concerned on subject matters that should be considered for incorporation into management system policies and operational procedures to assure the safety and security of ships and crews and the protection of the marine environment.

**.4    MI-300.**

A dedicated webpage, MI-300, at www.register-iri.com contains links to major publications, Marine Notices, Marine Guidelines, forms and referenced International Labour Organization (ILO) and International Maritime Organization (IMO) documents that managing companies for RMI flagged vessels will require. It is up to the managing company to ensure that the RMI flagged vessels under their management have all necessary and pertinent information issued by the RMI or the Administrator.

Maritime Act Section 103.

**1.02    The Maritime Administrator.**

There shall be maintained a Central Office in the United States of America, together with other offices located elsewhere, for the purpose of those acts and services required or allowed to be performed by the Maritime Administrator under the provisions of the Maritime Act. Rules and Regulations as provided for in Section 103 of the Maritime Act shall be promulgated only by the Maritime Administrator.

Maritime Act Section 103

**1.03**   **Definitions.**

The definitions provided for terms used throughout the Maritime Act shall have the same meaning when used in these Rules and Regulations. In addition, for further clarification:

**.1**   "commercial yacht" means any yacht registered as per Chapter 2, Part V, of the Maritime Act that is described on the Certificate of Registry as a commercial yacht and therefore may be engaged in trade, commerce, or chartered carrying no more than 12 passengers;

**.2**   "crew" means collectively the persons other than officers and the Master, serving in any capacity on board a vessel;

**.3**   "digital signature" means a signature that is generated by software using a digital certificate issued by a trusted service provider, such as a certificate authority, or similar technology.

**.4**   "electronic copy" means (a) a scan or facsimile of a document that bears a handwritten or electronic signature or (b) a document that has been converted into a computer file, such as a portable document file (PDF), that bears a handwritten or electronic signature.

**.5**   "electronic signature" means a legible scan or facsimile of a handwritten signature or an image thereof attached to a document by a person with the intent to sign the document and does not include digital signatures.

**.6**   "fishing vessel" means (a) a decked vessel for the time being used or intended to be used commercially for catching fish or other living resources of the sea; or (b) a vessel used or intended to be used for fishing otherwise than for profit or a vessel for the time being used or intended to be used wholly for the purpose of conveying persons wishing to fish for pleasure;

**.7**   "gross tonnage," unless otherwise specified, means the gross tonnage calculated in accordance with the tonnage measurement regulations contained in Annex I to the International Convention on Tonnage Measurement of Ships, 1969, or any successor Convention; the gross tonnage for vessels covered by the tonnage measurement interim scheme adopted by the International Maritime Organization will be the gross tonnage which is included in the REMARKS column of the international tonnage certificate (1969);

**.8**   "master" includes every person or officer (except a pilot) having command or in charge of a vessel and, in relation to a fishing vessel or yacht, means the skipper;

**.9**   "officer" means a person other than a master ranked as an officer in accordance with international or national law or regulation;

**.10**   "owner" or "shipowner" in relation to a registered vessel, means the registered owner and includes a bareboat charterer and a managing owner or a managing agent who has assumed the responsibility for the operation of the vessel from the owner or other organization or person and who, on assuming such responsibility, has agreed to take over the duties and responsibilities imposed on shipowners in accordance with applicable international instruments;

**.11**   "passenger" means a person carried on a vessel except:

**a.**   a person employed or engaged in any capacity on the business of the vessel;

**b.**   a person on board the vessel either in pursuance of the obligation laid upon the master to

carry shipwrecked, distressed or other persons, or by reason of any circumstance that neither the master nor the owner nor the charterer, if any, could have prevented or forestalled;

**c.** a child under one (1) year of age; or

**d.** a social guest;

**.12** "passenger ship" means a vessel carrying more than 12 passengers for consideration;

**.13** "passenger yacht" means any passenger ship registered as per Chapter 2 of the Maritime Act that is described on the Certificate of Registry as a passenger yacht and therefore may be engaged in trade, commerce, or chartering carrying more than 12 but no more than 36 passengers under limited operational conditions;

**.14** "person" means an individual one (1) year of age or older;

**.15** "private use" means that the private yacht is used on a private voyage or excursion, and during such use is not engaged in trade by transporting merchandise or carrying passengers for reward or remuneration (other than as a contribution to the actual cost of the yacht or its operation for the period of the voyage or excursion, cumulatively for not more than 84 days per calendar year where the private yacht has met the requirements of and is certified as a private yacht limited charter or a yacht engaged in trade);

**.16** "pleasure yacht" means a private yacht as defined in 1.03.14 below.

**.17** "private yacht" means any yacht 12 meters or more in length not carrying passengers for hire, not engaged in trade or commerce, and being used solely for pleasure or recreational purposes of its owner, which, at the time it is being used, is:

**a.** in the case of a yacht owned by a corporate entity, one on which the persons on the yacht are employees, officers, directors, or beneficial owners of the corporate entity, or their immediate family or friends; or

**b.** in the case of other ownership arrangements, one on which the persons on board the yacht are beneficiaries under the trust or the employees, officers, beneficial owners, or persons with similar designations of the ownership arrangement, or their immediate family or friends; or

**c.** in private use.

**.18** "private yacht limited charter" means a private yacht 18 meters or more in length and less than 500 GT registered as per Chapter 2, Part V, of the Maritime Act that is described on the Certificate of Registry as a private yacht and holds a valid Private Yacht Limited Charter Compliance Certificate allowing the yacht to be engaged in limited chartering for no more than 84 days per calendar year and which shall carry no more than 12 passengers;

**.19** "processing vessel" means a vessel used exclusively for the processing of fish and other living resources of the sea, and for application of International Convention for the Safety of Life at Sea (SOLAS) requirements shall be considered a "cargo ship";

**.20** "rating" means a member of the crew other than an officer;

**.21** "seafarers" means those persons who are employed, engaged or work in any capacity on board any vessel unless specified otherwise;

**.22** "seafarer accommodation" includes such sleeping rooms, mess rooms, sanitary accommodation, hospital accommodation, recreation accommodation, food and catering as are provided for the use of the crew;

**.23** "seafarer's employment agreement" includes both a contract of employment and articles of agreement;

**.24** "social guest" means a person who has been invited on board a private yacht by the owner for which no reward or remuneration is given;

**.25** "supernumerary" means a person on board a vessel employed by the owner and engaged in the business of the ship who, unless trained in basic sea survival and included in the crew Articles of Agreement, shall be treated as passengers with implications for the service classification and certification of the vessel; and

**.26** "yacht engaged in trade" means a private yacht of 24 meters or more in length, registered as per the RMI Maritime Act (MI-107), Chapter 2, Part V, that is eligible to obtain a valid Temporary Certificate of Registry for Yacht Engaged in Trade and which maintains a valid Yacht Engaged in Trade Compliance Certificate, and therefore may be engaged in temporary chartering for no more than 84 days in a calendar year.

Maritime Act Sections 103 and 803.

## 1.04   Records.

**.1   Recordable Instruments.**

The following documents shall be recorded at any office maintained for that purpose, as provided in the Maritime Act, when presented in proper form, duly executed:

**a.** Bills of Sale and other instruments of conveyance of vessels in conjunction with the re-registration, or change of registered ownership, of a registered vessel.   Builder's Certificates, Bills of Sale, and other instruments of conveyance of vessels may also be recorded at the option of the owner in other circumstances;

**b.** Construction Contracts;

**c.** Mortgages, hypothecations, financing charters or similar charges upon vessels;

**d.** Assignments, assumptions, amendments, addenda, supplements, subordinations, coordination agreements, discharges, releases and satisfactions of mortgages, or any other instruments of similar effect; and

**e.** All other documents relating to vessels and which are entitled to recordation.

**.2   Number of Copies Required.**

**a.** Mortgages, Assignments, Assumptions, Mortgage Amendments, Addenda, Supplements, or Subordination or Coordination Agreements shall be submitted in four (4) originals, each duly apostilled, notarized, or acknowledged.

**b.**   Instruments of Satisfaction, Release and Discharge, etc., relating to recorded mortgages shall be submitted in two (2) originals, each duly apostilled, notarized, or acknowledged.

**c.**   Construction Contracts shall be submitted in one (1) certified copy.

**d.**   Bills of Sale, Master Carpenter's, or Builder's Certificates which are to be recorded shall be submitted in one (1) original, duly apostilled, notarized, or acknowledged.

**e.**   If the Bill of Sale submitted for recording evidences a transfer of ownership for a vessel already registered under the Maritime Act, the original Bill of Sale shall have a copy of the vessel's current Certificate of Registry of the RMI attached to it.

**f.**   One (1) copy of any instrument transferring title to a vessel is required for the purpose of a vessel's registration.

**g.**   Powers of Attorney or other evidence of authorization (such as Corporate Resolutions) shall be submitted in one (1) original or one (1) certified copy.

Maritime Act Section 107, 306, and 307.

## 1.05   Fees.

### .1   Authorization.

The only fees chargeable in connection with the registration, certification and inspection of vessels under the Maritime Act, or the certification of seafarers under the Maritime Act, or for any other official maritime act or service, shall be as specified in the Maritime Act or as established by these Regulations. No fee shall be chargeable unless it appears in a consolidated list of fees published by Marine Notice at the direction of the Maritime Administrator.

### .2   Collection of Fees.

All fees chargeable under the provisions of these Regulations shall be effected by means of payments made in United States (US) dollars. Checks or bank drafts must be drawn on a US bank or the US branch of an international bank. Unless otherwise instructed, payments should be presented to Marshall Islands Maritime and Corporate Administrators, Inc. and shall be made payable to "The Trust Company of the Marshall Islands, Inc."

Maritime Act Sections 205, 206 and 238.

## 1.06   Certificates of Seafarers.

### .1   Issuance.

Only following the verification of the authenticity and validity of the necessary documentation as determined by the Maritime Administrator, can a license, certificate, endorsement, or other document be issued to officers or ship's personnel serving on vessels of the Republic engaged in foreign trade.

### .2   Endorsements.

Endorsements attesting to the issue of a certificate under the International Convention on

Standards of Training, Certification and Watchkeeping, 1978, as amended (STCW or STCW Convention) shall only be issued by the Maritime Administrator, its Deputy Commissioners, or its duly appointed and authorized representatives, provided that all of the requirements of the STCW Convention have been met.

**.3   Equivalents.**

A person holding a valid Certificate of Competence or Special Qualification issued by a State giving full force and effect to the provisions of STCW Convention, and who is not otherwise disqualified in the opinion of the Maritime Administrator, or an official to whom application is made, shall be eligible for the issuance of an equivalent RMI Certificate, following verification of the authenticity and validity of the necessary documentary evidence, in accordance with the provisions of the Convention.

**.4   Examinations.**

All seafarers desiring an original RMI National Certificate of Competence or Special Qualification shall pass such written, and physical examinations as shall from time to time be required by the Maritime Administrator. The Maritime Administrator shall publish such requirements and a syllabus for competency examinations.

**.5   Familiarization with National Maritime Legislation.**

Masters, Chief Mates, Chief Engineers, and First Assistant Engineers shall become familiar with the RMI maritime legislation and regulations upon certification as required by the STCW Convention.

**.6   Cause for Revocation.**

Any Certificate of Competence or Special Qualification may be suspended or revoked in accordance with published Rules upon proof of:

**a.**   incompetency;

**b.**   physical or mental disability;

**c.**   habitual drunkenness;

**d.**   willful failure to comply with the provisions of the Maritime Act or these Regulations;

**e.**   falsification or fraudulent duplication of seafarer certification;

**f.**   criminal conduct;

**g**.   violation of any national or international rule or regulation; or

**h.**   other conduct incompatible with proper performance of duties and obligations in service on board a vessel.

**.7   Validity and Renewal.**

An Officer's Certificate of Competence shall be valid for a maximum period of five (5) years and may be renewed subject to the published requirements. Renewal of a certificate cannot be

granted more than one (1) year after the expiry date of the previous certificate, unless the applicant satisfies such special requirements as may be imposed by the Maritime Administrator, or the official to whom application for renewal is made.

Maritime Act, Section 109.

### 1.07    Control of the Movement and Operation of Vessels.

#### .1    Authority of Maritime Administrator.

The Maritime Administrator may when necessary prohibit or place restrictions upon the movement or operation of vessels documented under the Maritime Act. The location of the area and/or nature of such prohibition or restrictions shall be officially notified in writing to all Masters, shipowners and officers affected thereby, and effective upon the date specified in such notice of prohibition or restriction, it shall be unlawful to navigate or operate a vessel of the RMI otherwise than as required by such notice. Where appropriate, conditions for compliance with this Regulation shall also be specified in such notice.

#### .2    Company.

The owner of each vessel documented under the Maritime Act and subject to SOLAS Ch. IX, the International Safety Management (ISM) Code, shall declare to the Maritime Administrator itself or any other organization or person such as the Shipmanager, or the Bareboat Charterer, to be known as the Company, who has assumed the responsibility for operation of the vessel from the Shipowner and who on assuming such responsibility has agreed in writing to take over all the duties and responsibilities imposed by the ISM Code in recognition of which a Document of Compliance (DOC) has been issued. The owner of each vessel must provide the Maritime Administrator, Marine Safety, with the name, address, telephone and facsimile numbers and email address of the Company responsible for the operation of the vessel. The Company shall be the same ISM Code entity the shipowner has given authorization to represent it with regard to certain assumed duties and responsibilities imposed by the ILO Maritime Labour Convention (MLC), 2006.

If, at any time during its period of registration, the owner of a vessel documented under the Maritime Act and subject to the ISM Code determines to change the Company it has declared as responsible for the operation of the vessel, notice of such proposed change, including the name, address, telephone and facsimile numbers and email address of the Company proposed to become responsible for the operation of the vessel, shall be provided to the Maritime Administrator no less than two (2) weeks in advance of any proposed change.

#### .3    Designated Person Ashore (DPA).

The owner or Company of each vessel documented under the Maritime Act and subject to the ISM Code shall, under its Safety Management System, appoint a DPA having direct access to the highest level of management with whom direct communications may be had at any time. The responsibility and authority of the DPA(s) shall include, but not be limited to, monitoring the safety, security and pollution prevention aspects of the operation of each vessel under his or her control and to ensure that adequate resources and shore-based support are provided.

#### .4    Company Security Officer (CSO).

The Company responsible for the operation and management of a vessel shall, in compliance with the mandatory requirements of the International Ship and Port Facility Security (ISPS) Code, designate and identify to the Maritime Administrator a person within the Company who shall be

appropriately trained and responsible for ensuring that a Ship Security Assessment (SSA) is carried out; that a Ship Security Plan (SSP) is developed, submitted and thereafter implemented and maintained; and for liaison with port facility security officers, the ship security officer and the Administrator on each vessel to which he or she is assigned.

**.5   Ship Security Officer (SSO).**

A CSO shall designate on board each vessel to which he or she is assigned under the Company's management an appropriately trained and certified person who, if not the Master of the vessel, shall be accountable to the Master as responsible for the security of the vessel, including implementation and maintenance of the SSP, and for liaison with the CSO and port facility security officers.

**.6   Contact Information.**

The Owners or managers of all registered vessels shall provide the Maritime Administrator with current contact information sufficient for the Maritime Administrator to establish direct and immediate contact with the vessel's DPA(s), CSO(s), or Designated Person (DP), as applicable. For vessels subject to the ISM and ISPS Codes, the above information shall be provided for DPA(s) and CSO(s). For vessels not subject to the ISM and ISPS Codes, the above information shall be provided for the DP designated by the Owner or manager.

**.7   Penalty for Violation.**

Any violation of this Regulation or of an official notice given pursuant thereto may result in revocation of any license, certificate or document issued by or for the Maritime Administrator, in addition to any penalty otherwise prescribed by law.

Maritime Act Section 103.

**1.08    Commitments to Foreign Governments.**

**.1   Approval Required.**

An owner with the approval in writing of the Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator, may make, enter into or execute any commitment, agreement or arrangement whereby a vessel registered under the Maritime Act may be made available for the use of, to be chartered or sold to, or requisitioned by, another country. The granting of such approval shall also constitute approval for making the vessel available under the terms of the said commitment, agreement or arrangement.

**.2   Copies to be Filed.**

Copies of any such proposed commitments, agreements or arrangements must be submitted, together with the application for approval, and, if approved, a true copy must be filed with the Maritime Administrator within 30 days after the formal execution of said commitment, agreement or arrangement.

**.3   Normal Commercial Carriage Excluded.**

This regulation shall not apply to day-to-day current commercial transactions providing for the carriage of cargo under booking contracts, contracts of affreightment, voyage charters and time charters.

**.4   Penalty for Violation.**

Any violation of this Regulation shall subject the offending party to cancellation of the Certificate of Registry of his or her vessel, as well as such other penalty as in his or her acts may be involved, as provided by the Maritime Act and Regulations thereunder.

Maritime Act Section 115.

**1.09   Taxes, Fees, Penalties, etc.**

**.1   Payment.**

Any tax, fee, penalty or other charge payable under the Maritime Act, these Regulations or the published requirements in furtherance thereof, shall constitute a maritime lien on the vessel involved and shall be paid in full when due as provided in Section 238 of the Maritime Act.

**a.   Vessels Engaged in Foreign Trade.**

Tonnage taxes for vessels engaged in foreign trade shall be payable upon registration for one (1) full year and annually thereafter in accordance with Section 238 of the Maritime Act. Upon receipt of payment, the Maritime Administrator shall issue an annual tonnage tax receipt. Proof of payment shall be by means of said tonnage tax receipt, the original or copy of which shall be attached to the Certificate of Registry.

**b.   Commercial Yachts and Passenger Yachts.**

Tonnage taxes for commercial and passenger yachts shall be payable upon registration for one (1) full year and annually by the 1st of January each year thereafter in one (1) payment. Upon receipt of payment, the Maritime Administrator shall issue an annual tonnage tax receipt. Proof of payment shall be by means of said tonnage tax receipt, the original or copy of which shall be attached to the Yacht Certificate of Registry.

**c.   Private Yachts Limited Charter.**

Tonnage taxes for private yachts limited charter shall be payable upon registration for one (1) full year and annually by the 1st of January each year thereafter in one (1) payment. Upon receipt of payment, the Maritime Administrator shall issue an annual tonnage tax receipt. Proof of payment shall be by means of said tonnage tax receipt, the original or copy of which shall be attached to the Yacht Certificate of Registry.

**d.   Private Yachts.**

Tonnage taxes for private yachts shall be payable upon registration for one (1) year or three (3) years at the option of the yacht owner in one (1) payment. Upon receipt of payment, the Maritime Administrator shall issue relevant flag State yacht documentation and a tonnage tax receipt for the selected period of registration. Proof of payment shall be by means of said tonnage tax receipt, the original or copy of which shall be attached to the Yacht Certificate of Registry to maintain its validity.

**e.   Fishing Vessels.**

Tonnage taxes for fishing vessels shall be payable upon registration for one (1) full year and annually by the 1st of January each year thereafter in one (1) payment. Upon receipt of payment, the Maritime Administrator shall issue an annual tonnage tax receipt, the original or copy of which shall be attached to the Certificate of Registry.

**f.   Yachts Engaged in Trade**

Tonnage taxes for yachts engaged in trade shall be payable upon registration for one (1) full year and annually by the 1st of January each year thereafter in one (1) payment. Upon receipt of payment, the Maritime Administrator shall issue an annual tonnage tax receipt. Proof of payment shall be by means of said tonnage tax receipt, the original or copy of which shall be attached to the Private Yacht Certificate of Registry, the tonnage tax receipt need not be attached to the Temporary Certificate of Registry for Yacht Engaged in Trade.

**.2   Late Payment Penalties.**

Any amount unpaid after the due date shall incur a penalty equal to a percentage of the amount due, according to the following scale:

- 90 days overdue - 11.11%
- 120 days overdue - 22.22%
- 180 days overdue - 33.33%

and the debtor shall be liable for payment of the outstanding amount plus any penalties without regard to other measures taken to ensure payment.

Maritime Act Section 238.

**.3   Failure to Pay Tonnage Tax.**

With regard to other measures which may be taken by the Maritime Administrator to ensure payments, the continued validity of a Certificate of Registry shall be contingent upon the timely payment of tonnage taxes, fees and other charges against the vessel or yacht and on the fulfillment of any other requirements as prescribed by the Maritime Administrator. In accordance with Regulation 1.11.3, failure to make such payments may result in the invalidation of the Certificate of Registry.

**1.10   Tax Exemption for Laid-up Vessels.**

**.1   Commencement.**

The owner of a vessel eligible for a tonnage tax exemption under Section 206 of the Maritime Act must obtain the issuance of a Provisional Certificate of Registry in Laid-up Status, and must surrender and deliver to the Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator, the Permanent Certificate of Registry and all other certificates issued to the vessel by the RMI. The date of delivery of all certificates by the owner shall be the date of withdrawal from service for purposes of determining the commencement of the tax exemption period.

**.2   Termination.**

The date that formal notification has been received by the Maritime Administrator from a vessel's Classification Society or other recognized organization, that (a) the vessel has completed the required surveys to restore it either to full classification status or to a seaworthy condition; and (b) the issuance of certificates as required by either these Regulations or the International Conventions to which the RMI is a signatory, shall be the date the vessel re-enters service for purposes of terminating the tax exemption period.

Maritime Act Section 206.

**1.11   Registration, Documentation, and Identification of Vessels.**

The types of vessels which may be registered pursuant to Section 203 of the Maritime Act and this Regulation include, but are not limited to, commercial and private yachts, fishing vessels, and small craft. Registration, documentation, and identification of vessels under this section shall be governed by the rules provided in RMI publication MI-100.

**.1   Limitations.**

    **a.**   The registration of commercial yachts, passenger yachts and fishing vessels shall be limited to those of 24 meters or more in length. The registration of private yachts shall be limited to those of 12 meters or more in length. Those private yachts eligible for private yacht limited charter shall be limited to those of 18 meters or more in length and less than 500 GT. The registration of yachts engaged in trade shall be limited to those of 24 meters or more in Load Line Length. The Maritime Administrator, or its duly authorized agent, may, however, consider waiving the minimum size limitation and other requirements upon demonstration that there is an absolute and genuine need for such waiver.

    **b.**   Only those fishing vessels that are operated by an entity resident in the RMI and that regularly land their catches in the RMI or aboard RMI registered processing vessel shall be considered for registration. Special regulations and licensing shall apply to such fishing vessels which shall be administered by the Maritime Administrator.

**.2   Refusal.**

Notwithstanding that any vessel in respect of which an application for registration has been made is entitled to be documented, the Maritime Administrator, or its duly authorized agent, may refuse registration to a vessel if satisfied that after due consideration of:

    **a.**   the condition of the vessel so far as is relevant to safety, security or risk of pollution to the environment;

    **b.**   the safety, health and welfare of persons employed or engaged in any capacity on board the vessel;

    **c.**   the record of the shipowner's management and operational quality including any matters related to subparagraphs (a) and (b) above;

    **d.**   the possibility that the vessel is being used for criminal purposes or engaged in illegal operations; or

    **e.**    the vessel is owned or operated by a government sanctioned entity;

or with respect to any other reason as determined by the Maritime Administrator, it would be detrimental to the interests of the RMI or of international shipping for the vessel to be documented.

**.3   Termination.**

The Maritime Administrator may terminate a vessel's registration and/or suspend or cancel its Certificate of Registry if:

    **a.**    it would be detrimental to the interests of the Republic or of international shipping for a registered vessel to continue to be registered;

    **b.**    a penalty imposed on the owner of a registered vessel in respect of a contravention of the Maritime Act, or any instrument in force under the Maritime Act or these Regulations, has remained unpaid for a period of more than three (3) months;

    **c.**    the annual tonnage tax for vessels engaged in foreign trade remains unpaid beyond July 1 of the year in respect of which such tonnage tax is due, the annual tonnage tax for a fishing vessel or yacht remains unpaid by January 1 of the year in respect of which such fees are due, or corporate fees has(have) remained unpaid for a period of more than one (1) year;

    **d.**    there has been a failure to comply with the provisions of Regulation 1.07;

    **e.**    there has been a failure to comply with the provisions of Regulation 1.08;

    **f.**    there has been a failure to comply with the provisions of Regulation 2.11;

    **g.**    any default that has occurred under Regulation 2.20 subsection 3d;

    **h.**    there has been a failure to comply with the provisions of Regulation 5.34;

    **i.**    there has been a failure to comply with the provisions of Regulations 6.37 and 6.38;

    **j.**    any material default or non-compliance with the provisions of these Regulations that would jeopardize the safety and security a vessel, its crew, cargo or passengers or poses a material risk to the marine environment; or

    **k.**    the vessel becomes a total loss or constructive total loss; or

    **l.**    otherwise provided for under these Regulations.

**.4   Home Port.**

As stipulated in the Maritime Act, the home port of every vessel documented under the Maritime Act shall be Majuro. However, to distinguish yachts and fishing vessels from other types of vessels, the home port for fishing vessels shall be Jaluit and the options of home port for yachts shall be Jaluit or Bikini.

**.5   Vessels Under Construction.**

The Maritime Administrator may, at its discretion, accept a Construction Contract or the issuance of a hull number as proof that construction of a vessel under construction has begun or commenced pursuant to Section 214A(1)(b) of the Maritime Act.

**.6   Designated Number.**

Pursuant to section 230(3) of the Maritime Act, each vessel registered in the RMI shall have its International Maritime Organization unique identification number marked permanently on its main beam. Unless otherwise required by the Maritime Administrator, there is no requirement to permanently affix the unique RMI Official Number to the vessel.

Maritime Act Sections 103, 202, 203,204, 214A and 230.

**1.12   Appeal from a Decision.**

An appeal from a decision of an official who is authorized to act for and on behalf of the Maritime Administrator, or any Special Agent, as provided in Section 117 of the Maritime Act may be instituted, by filing with the Maritime Administrator, exceptions to the decision, with supporting memoranda, within 60 days from the date of publication of such decision. Filing should be made by Registered Mail, provided the same is postmarked not less than five (5) days prior to the due date.

Maritime Act Section 117.

**CHAPTER 2**
**SAFETY, DOCUMENTATION AND IDENTIFICATION OF VESSELS**

**2.11    Implementation and Compliance with International Conventions, Agreements and National Standards.**

**.1    IMO Instruments Implementation Code (III Code)**

    **a.**    IMO Resolution A. 1070(28), the "IMO Instruments Implementation Code (III Code), is the result of the request of the seventh session of the United Nations Commission on Sustainable Development (CSD 7) to develop measures to ensure that flag States give full and complete effect to the IMO and other relevant conventions to which they are party, so that all ships of all flag States meet international rules and standards. Parties to the relevant international conventions do, as part of the ratification process, accept to fully meet their responsibilities and to discharge their obligations under the conventions and other instruments to which they are party. States have the primary responsibility to have in place an adequate and effective system to exercise control over ships entitled to fly their flag, and to ensure that they comply with relevant international rules and regulations in respect of maritime safety, security and protection of the marine environment.

    **b.**    Under the provisions of the United Nations Convention on the Law of the Sea, 1982 (UNCLOS) and of IMO conventions, flag States are responsible for promulgating laws and regulations and for taking all other steps which may be necessary to give these instruments full and complete effect so as to ensure that, from the point of view of safety of life at sea and protection of the marine environment, a ship is fit for the service for which it is intended and is manned with competent maritime personnel.

    **c.**    The ultimate effectiveness of any instrument depends, inter alia, upon all States becoming Parties to all instruments related to maritime safety, security and pollution prevention and control, implementing and enforcing such instruments fully and effectively and reporting to the Organization, as required. In the context of the Voluntary IMO Member State Audit Scheme, the enactment of appropriate legislation, its implementation and enforcement are the three key issues on which a Member State's performance can be measured. The Voluntary IMO Member State Audit Scheme contains references to the Code, as appropriate; and that the III Code, in addition to providing guidance for the implementation and enforcement of IMO instruments, forms the basis of the Mandatory Audit Scheme, in particular concerning the identification of the auditable areas.

    **d.**    The objective of this Code is to enhance global maritime safety, security and protection of the marine environment, the three areas that the Republic holds of prime importance as stated in §102 of the Maritime Act. In order for the Republic to meet the objective of this Code, a strategy based upon its Statement of policy; application must be developed and put into place by the Maritime Administrator covering the following issues:

        **(1)**    implementation and enforcement of relevant international mandatory instruments;

        **(2)**    adherence to international recommendations, as appropriate;

        **(3)**    continuous review and verification of the effectiveness of the RMI in respect of meeting its international obligations; and

**(4)** the achievement, maintenance and improvement of overall organizational performance and capability.

**e.** And finally, the RMI must communicate its strategy, as referred to in the previous paragraph d, including information on national legislation to concerned parties; assign responsibilities to the relevant government bodies to update and revise any relevant policies adopted, as necessary; and establish resources and processes capable of providing administrative instructions to implement applicable international rules and regulations as well as develop and disseminate any interpretative national regulations as necessary.

### .2 List of Conventions.

The Maritime Administrator periodically publishes and updates through Marine Notices to the attention of owners and Masters a list of the national standards established by the Maritime Administrator, all applicable international treaties, conventions, protocols, codes, regulations and agreements, which have come into force and to which the RMI is a party or has declared a national standard; and shall publish and periodically update the policy, goals and measures to be taken toward the effective and efficient implementation of mandatory Instruments for the attention of all parties involved in the management and operation of ships entitled to fly the flag of the RMI.

### .3 Responsibility.

It shall be the responsibility of owners and Masters to ensure that their vessels are in compliance with the requirements of all applicable International Treaties, Conventions, Protocols, Codes and Agreements, which have come into force and to which the RMI is a Party, and National Standards. Yachts shall be subject to all applicable international treaties, conventions, protocols, codes and agreements, which have come into force and to which the RMI is a Party, and all applicable national standards including the RMI Yacht Code.

### .4 COLREGS '72.

All vessels, including yachts and fishing vessels, shall comply with the requirements of the Convention on International Regulations for Preventing Collisions at Sea, 1972, (COLREGS '72), as amended, in accordance with the provisions of Section 150 of the Maritime Act, which encompasses the fitting and provision of navigation lights, shapes and sound signaling equipment.

### .5 ISM Code National Requirements.

National requirements for compliance with the International Safety Management Code (ISM Code) shall be published by the Maritime Administrator to provide policy interpretations and guidelines. Compliance with the ISM Code shall be closely monitored and enforced by the Maritime Administrator, its appointed recognized organizations and nautical inspectors. Vessels operated by Companies that fail to maintain compliance with the ISM Code shall be considered in violation of SOLAS and may be prevented from trading or removed from the registry.

### .6 ISPS Code National Requirements.

National requirements for compliance with the ISPS Code shall be published by the Maritime Administrator to provide policy interpretations and guidelines. Compliance with the ISPS Code shall be closely monitored and enforced by the Maritime Administrator, its appointed recognized organizations and nautical inspectors. Vessels operated by Companies that fail to maintain compliance with the ISPS Code shall be considered in violation of SOLAS and may be prevented from trading or removed from the registry.

**.7   National Requirements.**

**a.   Commercial Yachts.**

Commercial yachts carrying 12 passengers or less and no cargo shall comply with the RMI Yacht Code as an equivalent arrangement to the applicable international conventions. SOLAS Safety Construction and Safety Equipment certification shall be issued to commercial yachts of 500 gross tons or more. SOLAS Safety Radio certification shall be issued to commercial yachts of 300 gross tons or more. Load Line certification shall be issued to commercial yachts of 24 meters or more in Load Line Length. All commercial yachts, regardless of tonnage, shall be issued and shall maintain a valid Commercial Yacht Compliance Certificate. All commercial yachts, regardless of tonnage, shall be issued a Record of Safety Equipment and Tender Statement of Compliance, where applicable.

**b.   Passenger Yachts.**

Any yacht regardless of tonnage carrying more than 12 and up to 36 passengers for consideration on board shall be considered a passenger yacht, subject to the SOLAS passenger ship safety regulations and certification requirements as they can be applied under stated limited operational conditions as specified in the RMI Yacht Code. Additionally, a yacht registered as a passenger yacht shall comply with all relevant provisions of the RMI Yacht Code including, but not limited to, the requirement that all passenger yachts are issued and maintain a valid Passenger Yacht Compliance Certificate, Record of Safety Equipment, and Tender Statement of Compliance (as applicable).

Any vessel, including a yacht, regardless of tonnage, carrying more than 36 passengers for consideration on board shall be considered a passenger ship and shall be subject to the SOLAS passenger ship safety regulations and certification requirements.

**c.   Private Yachts Limited Charter.**

Any yacht of less than 500 GT registered as a private yacht limited charter shall comply with the relevant provisions of the RMI Yacht Code. This includes, but is not limited to, the requirement that all private yachts limited charter are issued and maintain a valid Private Yacht Limited Charter Compliance Certificate, Record of Safety Equipment, Tender Statement of Compliance (as applicable) and Declaration Private Use with Intent to Engage in Limited Charter (MI-127PYLC).

**d.   Yachts Engaged in Trade**

Yachts engaged in trade shall comply with the RMI Yacht Code as an equivalent arrangement to the applicable international conventions. The applicable statutory certificates shall be issued in accordance with the requirements of the RMI Yacht Code. All yachts engaged in trade, regardless of tonnage, shall be issued and shall maintain a valid Yacht Engaged in Trade Compliance Certificate, Record of Safety Equipment, and Tender Statement of Compliance (as applicable).

**e.   Private Yachts.**

Private yachts shall be guided by the RMI Yacht Code in respect of requirements for safety construction, lifesaving, fire detection and suppression appliances and pollution prevention and shall comply with all applicable international conventions and national requirements. An RMI Statement of Compliance to the Yacht Code may be issued by the Maritime Administrator on the basis of satisfactory Certificates of Survey or Statements of Compliance received from organizations recognized by the Maritime Administrator for this purpose as provided in Regulation 2.12.2.

**f.   Tenders.**

A rigid or inflatable boat carried on or towed by a commercial yacht, passenger yacht, private yacht limited charter, or yacht engaged in trade for the purpose of transporting persons to and from the shore or between other yachts, shall comply with the rules and regulations imposed by the local port authorities for the area of operation and be subject to a safety survey and is required to maintain a valid Tender Statement of Compliance in accordance with the RMI Yacht Code.

**g.   Fishing Vessels.**

Fishing vessels shall comply with all applicable laws and regulations, including those specifically developed and promulgated by the Administrator for that sector.

**.8   Safety Radio Regulations.**

A SOLAS Convention Safety Radio Certificate is mandatory for all seagoing vessels of 300 gross tons or more on international voyage which includes Global Marine Distress and Safety System (GMDSS) and Ship Security Alert System (SSAS) compliance. For vessels of less than 300 gross tons, national requirements established by the Maritime Administrator shall apply.

**.9   Safety Navigation Regulations.**

SOLAS Ch. V shall apply to all ships on all voyages. All ships shall mean any ship, vessel or craft irrespective of type and purpose, including yachts and fishing vessels. For ships less than 150 gross tons and fishing vessels, National requirements established by the Maritime Administrator promulgated by Marine Notice shall apply.

**.10   ILO Convention National Standards.**

National Standards for compliance with the ILO Conventions and Codes (ILO Standards) shall be published by the Maritime Administrator to provide policy interpretations and guidelines. Compliance with the ILO Standards shall be closely monitored and enforced by the Maritime Administrator, its appointed recognized organizations and nautical inspectors. Vessels operated by Companies that fail to maintain compliance with the ILO Standards shall be considered in violation of the Maritime Act and these Regulations and may be prevented from trading or removed from the registry.

**.11 Non-Compliance – Penalty.**

In the event of failure to comply with paragraphs .3 through .10 hereof, the Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator, may suspend or cancel a vessel's Certificate of Registry and/or impose a monetary penalty not to exceed US$1,000,000 per incident or violation, and/or set such other conditions as may be necessary to bring about compliance with these National Standards, maritime or maritime-related Conventions and other International Agreements to which the RMI is a Party, and which are in force, or the provisions of which are applied by the RMI in advance of the official date of their entry into force.

Maritime Act Section 115.

**.12 Lien of Penalty.**

Any penalty assessed pursuant to paragraph .11 hereof shall constitute a maritime lien upon the vessel, and until such lien has been satisfied or executed the Certificate of Registry of the vessel shall be liable to suspension, and port clearance of such vessel shall be withheld.

Maritime Act Sections 103 and 236.

**2.12   Standards of Seaworthiness.**

**.1   Classification.**

Current classification of a vessel with any of the Classification Societies appointed in Regulation 2.17 as agents for the RMI in the issuance of documents required by SOLAS, the International Load Line Convention, the International Convention of Tonnage Measurement of Ships, 1969 (International Tonnage Convention) and the International Convention for the Prevention of Pollution from Ships (MARPOL) shall be accepted as evidence that the vessel is in seaworthy condition.

**.2   Yachts.**

**a.**   All commercial yachts and yachts engaged in trade shall be able to demonstrate that their hull and machinery was built to a known high standard. This is typically accomplished by having the yacht built to Class rules and issued a class certificate. All yachts wishing to register as a passenger yacht shall be classed. Commercial yachts and yachts engaged in trade of 500 gross tons and over and all passenger yachts regardless of tonnage shall be required to maintain classification. Obtaining or maintaining classification is voluntary for private yachts.

**b.**   A Certificate of Survey or Compliance Certificate issued by an organization recognized or individual authorized by the Maritime Administrator in Regulation 2.17 to conduct surveys shall be accepted as evidence that a private yacht of any size is in seaworthy condition. The Certificate of Survey or Compliance Certificate shall, in addition to verifying substantial compliance with the RMI Yacht Code, confirm a reasonable period of satisfactory operation, or in the case of new or recent construction, the same period of satisfactory operation of sister vessels or yachts of similar design, construction and outfitting.

**.3   Change of Classification, Classification Society, or Appointed Representative.**

Each shipowner shall promptly notify the Maritime Administrator of any intention to change the classification or Classification Society of a vessel or yacht or the Appointed Representative of a yacht and when such change actually occurs.

Maritime Act Sections 236 and 237.

**2.13   MARPOL - Prevention of Pollution from Ships.**

**.1   Compliance.**

All vessels to which MARPOL Annexes I, II, III, IV, V and VI, applies shall comply with the design and pollution prevention equipment and operation provisions contained therein. All yachts shall comply with the requirements of Annexes I, IV, V and VI. All yachts and fishing vessels of 400 gross tons and above shall be surveyed to verify compliance and issued certificates as required for Annexes I, IV, V and VI. In accordance with Section 2.13.7, Annex VI is retroactive to 1 January 2000. All vessels and yachts shall comply with the requirements of the local jurisdiction within which they may be operated.

**.2   Annex I - Prevention of Pollution by Oil.**

**a.   Construction.**

Every vessel of 400 gross tons and upwards shall be properly constructed to comply with the requirements for the fitting of a tank or tanks of adequate capacity to receive oil residues (sludge), and associated piping and standard discharge connection to facilitate discharge to reception facilities, as specified under Regulations 12 and 13 of Annex I, and any amendments thereto in force. Furthermore, every oil tank vessel shall be properly constructed to comply with the relevant regulations provided under Chapter 4, Part A of Annex I, and any amendments thereto in force, as applicable.

**b.   Equipment.**

Except as specified otherwise in Regulation 14 of Annex I, and any amendments thereto in force, every vessel of 400 gross tons and upwards shall be fitted with oil filtering equipment complying with the relevant specifications set forth under the aforementioned regulation, as appropriate. Furthermore, subject to the provisions of paragraphs 4 and 5 of Regulation 3, and any amendments thereto in force, every oil tank vessel of 150 gross tons and upwards shall be additionally equipped with the equipment specified under Regulations 31 – 33, where applicable. Such equipment shall be maintained in good working order at all times.

**c.   Oily Discharges.**

Except in cases of emergency, and then only under the circumstances and conditions set forth in Regulation 4 of Annex I and any amendments thereto in force, it shall be unlawful at any time for any vessel to discharge into the sea any oil, oily mixture, or substance which may leave an oily sheen on the water other than as permitted by MARPOL.

**d.  Oil Record Books.**

It shall be unlawful for any oil tank vessel of 150 gross tons and upwards, or for any other vessel of 400 gross tons and upwards, to fail to have and maintain on board at all times the current oil record book required by Regulation 17, and/or Regulation 36 when applicable, of Annex I and any amendments thereto in force. All other vessels, including yachts and fishing vessels, in the registry shall maintain a similar oil record book.

**e.  Shipboard Oil Pollution Emergency Plan.**

It shall be unlawful for any oil tank vessel of 150 gross tons and upwards, or for any other vessel of 400 gross tons and upwards, to fail to have and maintain on board at all times the current shipboard oil pollution emergency plan (SOPEP) required by Regulation 37 of Annex I, and any amendments thereto in force. Note sub-section 2.13.3(d) authorization.

**f.  Transfer of Oil Cargo Between Oil Tankers at Sea (STS operations) Plan.**

Oil tank vessels of 150 gross tons and upwards engaged in the transfer of oil cargo between oil tankers at sea (STS operations) and their STS operations conducted on or after 1 April 2012 shall be in accordance with Chapter VIII of Annex I, and any amendments thereto in force.

**g.  Condition Assessment Scheme.**

For those vessels to which it applies, the Condition Assessment Scheme, MEPC.94(46), as amended and consolidated (CAS), shall be properly conducted in accordance with the guidance and instructions to Recognized Organizations, Shipowners and Authorized Representative Surveyors provided by the Maritime Administrator.

**.3  Annex II - Prevention of Pollution by Noxious Liquid Substances in Bulk.**

**a.  Discharges.**

Subject to the provisions of the applicable Regulation 3 of Annex II, and any amendments thereto in force, it shall be unlawful for any vessel to discharge into the sea any noxious liquid substances or mixtures containing such substances otherwise than as permitted by MARPOL.

**b.  Cargo Record Books.**

It shall be unlawful for any vessel to which Annex II applies to fail to have and maintain on board at all times the current cargo record book required by Regulation 15 of Annex II.

**c.  Procedures and Arrangements Manual.**

It shall be unlawful for any vessel to which Annex II applies, which has been certified to carry substances of category X, Y, or Z, to fail to have, and maintain on board at all times, the current procedures and arrangement manual required by Regulation 14 of Annex II.

**d.  Shipboard Marine Pollution Emergency Plan.**

It shall be unlawful for any vessel of 150 gross tons and upwards to which Annex II applies to fail to have, and maintain on board at all times, the current shipboard marine pollution emergency plan for noxious liquid substances required by Regulation 17 of Annex II. For those vessels to which Regulation 37 of Annex I applies, such a plan may be combined with the SOPEP as required by Regulation 37 of Annex I. In this case, the title of such a plan shall be "Shipboard Marine Pollution Emergency Plan (SMPEP)."

**.4   Annex III - Prevention of Pollution by Harmful Substances in Package Form.**

This Annex was acceded to by the RMI on 1 July 1992 and became effective for all ships on 1 October 1992; therefore vessels in the registry shall comply with all relevant provisions of Chapter VII, Part A of SOLAS as well as the International Maritime Dangerous Goods (IMDG) and the International Maritime Solid Bulk Cargoes (IMSBC) Codes.

**.5   Annex IV - Prevention of Pollution by Sewage.**

    **a.   Equipment.**

Every vessel of 400 gross tons and upwards, and every vessel of less than 400 gross tons certified to carry more than 15 persons, shall be fitted with a sewage handling or treatment system and associated piping and standard discharge connection to facilitate discharge to reception facilities as specified under Regulations 9 and 10 of Annex IV, and any amendments thereto in force.

    **b.   Discharges.**

Subject to the provisions of Regulation 3 of Annex IV, and any amendments thereto in force, it shall be unlawful for any vessel to discharge sewage into the sea otherwise than as permitted by MARPOL or the laws and regulations of the local coastal State.

**.6   Annex V - Prevention of Pollution by Garbage.**

    **a.   Discharges.**

Subject to the provisions of the applicable Regulations 3, 4, and 5 of Annex V, it shall be unlawful for any vessel to discharge into the sea any garbage otherwise than as permitted by MARPOL or the laws and regulations of the local coastal State.

    **b.   Placards.**

Every vessel of 12 meters or more in length shall display placards which notify the officers, crew and passengers of the disposal requirements of Regulations 3 and 5 of Annex V, as applicable.

    **c.   Equipment and Waste Management Plans.**

As set forth in Regulation 10 of Annex V, every vessel of 100 gross tons and above, or vessels which are certified to carry 15 persons or more shall:

    **(1)**   be fitted with equipment for collecting, storing and disposing of garbage to meet the requirements of the waste management plan as set out in (2) below;

    **(2)**   develop and follow a shipboard waste management plan ensuring that officers and crew have a written plan to follow outlining the procedures for collecting, storing, processing and disposing of garbage, including the equipment on board the vessel that meets the requirements of Annex V. Such a waste management plan shall be in accordance with IMO guidelines, written in the working language of the officers and crew and reviewed by the vessel's classification society.

**d.   Record of Garbage Discharges.**

Every vessel of 400 gross tons and above, or vessels which are certified to carry 15 persons or more and engaged in voyages to ports or offshore terminals under the jurisdiction of other parties to MARPOL shall maintain a Garbage Record Book as specified by the Maritime Administrator.

**.7   Annex VI - Prevention of Air Pollution.**

**a.   Ozone-depleting Substances.**

Subject to the provisions of Regulation 3 of Annex VI, it shall be unlawful for any vessel to deliberately emit ozone-depleting substances otherwise than as permitted by MARPOL. Additionally, the new installation of systems that contain ozone-depleting substances and hydrochlorofluorocarbons shall be prohibited in accordance with the schedule set forth in Regulation 12.3.1 and Regulation 12.3.2 of Annex VI, as amended.

**b.   Ozone-depleting Substances Record Book.**

As from 1 July 2010, every vessel of 400 gross tonnage and above, or platforms and drilling rigs engaged in voyages to waters under the jurisdiction of other parties to MARPOL, shall maintain a list of equipment containing ozone-depleting substances and shall maintain an ozone-depleting substances record book, which may form part of an existing log book, as specified in Regulation 12 of Annex VI, as amended.

**c.   Nitrogen Oxides.**

Subject to the provisions of Regulation 3 of Annex VI, as amended, it shall be unlawful for any vessel to operate a marine diesel engine to which Regulation 13 of Annex VI applies, except when the emission of nitrogen oxides are within the relevant limits as specified by Regulation 13 of Annex VI, as amended and where applicable. Except as specified otherwise in Regulation 13 of Annex VI, each marine diesel engine to which Regulation 13 of Annex VI applies shall comply with the procedures for the testing, survey, and certification of engines as provided for in the $NO_X$ Technical Code, as amended.

**d.   Sulphur Oxides and Fuel Oil.**

Subject to the provisions of Regulation 3 of Annex VI, it shall be unlawful for any vessel to use fuel oil with a sulphur content exceeding the limits as specified in Regulation 14.1 of Annex VI, as amended. Additionally, while operating within an emission control area designated for $SO_X$ emission controls as defined under Regulation 14 of Annex VI, it shall be unlawful for any vessel to use fuel oil with a sulphur content exceeding those limits specific to operation within an emission control area, as specified in Regulation 14.4 of Annex VI, as amended. Furthermore, the sulphur content of the fuel oil used shall be documented by the supplier, and such documentation shall be maintained in accordance with Regulation 18 of Annex VI, as amended.

**e.   Equivalents.**

Any alternative means for complying with the standards set forth under Regulations 13 or 14 of Annex VI shall be implemented in accordance with Regulation 4 of Annex VI, as amended.

**f.   Fuel Oil Changeover Record.**

It shall be unlawful for any vessel using separate fuel oils to comply with operation within an emission control area under Regulation 14.4 to fail to maintain a current written procedure demonstrating the safe and effective fuel oil changeover process, and record book of fuel oil changeover operations, which may form part of an existing log book, as specified in Regulation 14.6 of Annex VI, as amended.

**g.   Incinerators.**

Subject to the provisions of Regulation 3 of Annex VI, it shall be unlawful for any vessel to incinerate substances otherwise than as permitted by Regulation 16 of Annex VI, as amended.

**h.   Ship Energy Efficiency Management Plan (SEEMP).**

In accordance with Regulation 22 and MEPC 64 Unified Interpretations, each ship shall keep on board a ship specific Ship Energy Efficiency Management Plan (SEEMP). This may form part of the ship's Safety Management System (SMS).

**.8   Non-Compliance; Penalty.**

In the event of failure to comply with paragraphs .2 through .7 hereof, the Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator, may suspend or cancel a vessel's Certificate of Registry and/or impose a monetary penalty not to exceed US$1,000,000 per incident or violation, and/or set such other conditions as may be necessary to bring about compliance with these National Standards and International Agreements to which the RMI is a Party, and which are in force, or the provisions of which are applied by the RMI in advance of the official date of their entry into force.

Maritime Act Section 115.

**.9   Lien of Penalty.**

Any penalty assessed pursuant to paragraph .8 hereof shall constitute a maritime lien upon the vessel, and until such lien has been satisfied or executed the Certificate of Registry of the vessel shall be liable to suspension, and port clearance of such vessel shall be withheld.

Maritime Act Sections 103 and 236.

**2.14   Dumping or Burning of Wastes at Sea.**

**.1   Activities Covered.**

Dumping and incineration as defined in the Convention on the Prevention of Marine Pollution by Dumping of Wastes and Other Matter, 1972, as amended (London Dumping Convention and Protocol) shall be carried out by vessels only as permitted in paragraph .3 of this Regulation.

**.2   Matter Included and Excluded.**

Matter covered by the London Dumping Convention and Protocol and its Annexes or Addenda thereto shall be covered by this Regulation, and shall be included in or excluded from the scope of this Regulation in accordance with its status under the London Dumping Convention.

**.3   Permit Required.**

No matter included within the scope of this Regulation shall be loaded aboard a vessel for dumping or incineration, nor shall any such matter be dumped or incinerated, without a permit for such operation first being issued by the Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator. In determining whether such a permit shall be issued and, if so, under what restrictions, the standards of the London Dumping Convention and Protocol shall be applied as a minimum, and the Maritime Administrator may impose such additional conditions as it deems necessary.

**.4   Non-Compliance; Penalty.**

In the event of failure to comply with paragraphs .1 through .3 hereof, the Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator, may suspend or cancel a vessel's Certificate of Registry and/or impose a monetary penalty not to exceed US$1,000,000 per incident or violation, and/or set such other conditions as may be necessary to bring about compliance with this National Standard or related Conventions to which the RMI is a Party, and which are in force, or the provisions of which are applied by the RMI in advance of the official date their entry into force.

Maritime Act Section 115.

**.5   Lien of Penalty.**

Any penalty assessed pursuant to paragraph .4 hereof shall constitute a maritime lien upon the vessel, and until such lien has been satisfied or executed the Certificate of Registry of the vessel shall be liable to suspension, and port clearance of such vessel shall be withheld.

Maritime Act Section 103.

**2.15   International Convention on Load Lines 1966.**

**.1   Commercial Vessels.**

Compliance with the International Convention on Load Lines 1966, as amended (Load Line Convention) shall be required for all commercial vessels of new construction 24 meters or more in length or existing commercial vessels of 150 gross tons or over as defined in accordance with that specified in the Load Line Convention.

**.2   Stability and Trim Information.**

Under the provisions of Regulation 10, Chapter II of the Load Line Convention, the Master of every vessel shall be supplied with sufficient information, in an approved form, to enable him or her to arrange for the loading and ballasting of the vessel in such a way as to avoid the creation of any unacceptable stresses in the vessel's structure.

**.3   Multiple Load Line Assignments.**

More than one (1) load line freeboard assignment may be permitted; however, only one (1) may be displayed at any one (1) time. Any vessel in the registry to which authorization has been given for the assignment of more than one (1) load line freeboard assignment shall be issued an Assignment Book by the Maritime Administrator. The Assignment Book shall apply only to those full term load line certificates issued to a subject vessel and <u>not</u> to single voyage load line certificates. The Assignment Book shall contain data pertaining to the current freeboard assignments together with endorsement pages and instructions to be followed when changing from one (1) load line assignment to another. An Assignment Book shall be valid for as long as the load line certificates to which it pertains remain valid.

**.4   Required Log Entries.**

The Master shall enter into the vessel's deck log book prior to the vessel's departure from its loading port or place:

**a.**   a statement of the load line marks applicable to the voyage;

**b.**   a statement of the position of the load line mark, port and starboard, at the time of departure from such port or place; and

**c.**   the actual drafts of the vessel, forward and aft, as nearly as the same can be ascertained, at the time of departing from such port or place.

**.5   Inspections.**

Load Line Inspection of vessels must be conducted annually. The Maritime Administrator shall be provided with the results or proof of said inspections.

Maritime Act Section 103.

**2.16   Cost of RMI International Participation.**

**.1   Annual Fees.**

The cost incurred by the RMI to represent the fleet of registered vessels in international maritime affairs shall be defrayed by the payment of an annual fee based upon registered gross tonnage. The fees payable for these items can be found in RMI Marine Notice 1-005-1, which contains the consolidated list of fees and charges for all vessels. Although payable in US dollars, the fees may be adjusted upwards for exchange rate differences to meet the obligations of assessments imposed in foreign currencies. Private yachts and private yachts limited charter of any tonnage and commercial yachts and yachts engaged in trade of less than 400 gross tons registered under the provisions of the Maritime Act shall be exempt from the payment of this fee.

**.2   How Applied.**

The fee collected under this Regulation shall be applied as follows:

**a.   Assessments.**

The costs covered shall relate to assessments and dues payable under the terms of international maritime conventions and maritime agreements to which the RMI is a Party.

**b.  Participation and Representation.**

The costs covered shall relate to attendance and support of delegations or representatives of the RMI at international maritime meetings and conferences, and to support of representatives of the RMI engaged in maritime diplomatic negotiation.

Maritime Act Section 111.

**2.17   Authorized Agents for Measurement and Survey of Vessels.**

**.1   Classification Societies.**

The following international ship Classification Societies are agents duly appointed and authorized to measure vessels in accordance with the provisions of Regulation 2.18 and to survey vessels required to be classed for the issuance of Certificates of the RMI referred to in Regulation 2.12.1:

- American Bureau of Shipping
- Bureau Veritas
- China Classification Society
- ClassNK
- Croatian Register of Shipping
- DNV
- Hellenic Register of Shipping, yachts only
- Indian Register of Shipping
- Korean Register
- Lloyd's Register
- Polski Rejestr Statkow
- RINA Services S.p.A.
- Russian Maritime Register of Shipping

**.2   Appointed Agent or Representative.**

The Appointed Representatives listed below are recognized by the Administrator to perform certain international statutory surveys, to conduct compliance verifications, and to issue the applicable certificates for unclassed yachts:

- NautX (www.nautx.com)
- United Maritime Survey (www.umssurvey.com)
- Mark Robinson Maritime Consultants (www.mrmc.co)

**.3   Other Recognized Organizations.**

Agents, other than those identified in sub-section 2.17.1 and .2 above, may be authorized by the Maritime Administrator to perform survey or oversight functions in behalf of the Maritime Administrator as deemed necessary to meet its convention compliance enforcement responsibilities.

Maritime Act Sections 250, 252 and 237.

**2.18   Measurement and Alteration of Vessels.**

**.1   Tonnage Measurement.**

All vessels must be surveyed for tonnage measurement prior to registration under the provisions of the Maritime Act by one (1) of the agents authorized by the RMI in Regulation 2.17. It shall be the responsibility of the shipowner to arrange and pay for any tonnage survey.

**.2   Application of Tonnage Convention.**

The International Tonnage Convention entered into force internationally on 18 July 1982 and applies to:

**a.**   new ships, meaning a ship the keel of which is laid, or which is at a similar stage of construction, on or after the date of coming into force of the present Convention;

**b.**   existing ships which undergo alterations or modifications which result in a substantial variation from the existing tonnage;

**c.**   existing ships if the owner so requests;

**d.**   all yachts and fishing vessels 24 meters or more in length; and

**e.**   all existing ships, as of 18 July 1994 (12 years after the date on which the Convention came into force); except that such ships, apart from those mentioned in (b), (c) and (d) of this paragraph, shall retain their then existing tonnages for the purpose of the application of the relevant requirements under other existing International Conventions, unless specified otherwise.

Pleasure yachts operating exclusively in the waters of the RMI as Domestic Watercraft shall not require an international tonnage certificate regardless of length.

**.3   Certificate of Measurement.**

All measurements must be verified by a Certificate of Measurement in official form which shall be provided to the Maritime Administrator.

**.4   Existing Vessels.**

In cases of existing vessels previously documented in a foreign country, or never before documented but which have been measured by a representative of a foreign country, an Admeasurer, without physically measuring the vessel, may accept the figures contained in the vessel's latest marine document or Certificate of Measurement in determining the principal measurements and gross and net tonnages; provided said Admeasurer is furnished with a sworn statement by the owner or some authorized person on behalf of the owner that no alterations or modifications affecting measurement or tonnage have been made in the vessel since the issuance of said marine document or Certificate of Measurement. In the event such sworn statement shall disclose that changes affecting measurement of tonnage have been made prior to 18 July 1982, the Admeasurer may limit his or her physical measurement to such spaces as are affected by such changes. But if any such alterations or modifications have been made after 18 July 1982, the vessel shall be fully remeasured in accordance with the Tonnage Measurement Convention currently in force, as amended.

**.5   Alterations.**

The owner or Master of a vessel or person authorized to act on his or her behalf shall advise the Maritime Administrator of any alteration or modification of the vessel which could affect its classification, measurement, tonnage or load line prior to placing the vessel back in service and not more than 30 days from the completion of such alteration or modification, and shall provide complete details thereof.

Maritime Act Section 252.

**2.19    Tonnage Statements in Registry Certificate.**

**.1    Alternate Use Vessel.**

In cases where the vessel may be used alternately in one (1) category or another (e.g., ore carrier or tanker), the Certificate of Registry shall describe the vessel in the category which produces the highest gross and net tonnages. The Maritime Administrator may attach to the Certificate of Registry an Appendix stating separately the description of the vessel, including measurements, which would be applicable if the vessel were trading in the other category.

**.2    Dual Tonnage Vessel.**

In accordance with the provisions of the International Tonnage Convention, dual tonnage measurements and markings shall no longer be allowed. However, for the purposes of determining the need for smaller vessels to comply with the SOLAS Convention regulations, Tonnage Certificates may be endorsed by the issuing Classification Society with the pre-ITC (69) tonnage measurement if less than 500 gross registered tons. The ITC (69) tonnage measurement alone shall apply for determining compliance with SOLAS Chapter XI-2 on matters of security.

Maritime Act Section 254.

**2.20    Certificates of Registry.**

**.1    Content of Provisional Certificates of Registry.**

Each ship's Provisional Certificate of Registry shall state the name of the vessel, official number, call sign, IMO number, service, and home port of Majuro, (except for fishing vessels which shall state the home port of Jaluit and yachts which shall state the home port of either Jaluit or Bikini, as selected by the owner); the names, registered address, and proportional ownership of the vessel; the former name or designation of the vessel; the year and place of build of the vessel; the name of the builder; Classification Society; the best particulars with respect to the vessel tonnage or tonnages, build, description, dimensions and motive power which the issuing officer is able to obtain; and route restrictions and conditions of operation.

**.2    Content of Permanent Certificates of Registry.**

Each ship's Permanent Certificate of Registry shall state the name of the vessel, the official number, call sign, IMO number, service, and home port of Majuro, (except for fishing vessels which shall state the home port of Jaluit and yachts which shall state the home port of either Jaluit or Bikini as selected by the owner); the names, registered address, and proportions of the owners of the vessel; the IMO registered owner number; the former name or designation of the vessel; the year and place of build of the vessel; the name of the builder; propelling power (kW); the length, depth and breadth; the gross and net tonnage; and route restrictions and conditions of operation.

**.3    Yacht Certificates of Registry.**

Although issued without an expiration date, Yacht Certificates of Registry are subject to annual revalidation.

**a.    Revalidation.**

The continued validity of a Yacht Certificate of Registry is contingent upon the following

requirements being met:

    **(1)** maintaining good standing of the owning entity in the RMI;

    **(2)** paying annual tonnage taxes and all other fees or assessments when due;

    **(3)** retaining current classification status where required; and

    **(4)** for commercial yachts, passenger yachts, private yachts limited charter, and yachts engaged in trade submitting to the Maritime Administrator each year, a satisfactory Compliance Verification Certificate or Endorsement, issued by an AR.

Should any of the revalidation requirements above not be fulfilled, a Notice of Suspension shall be issued by the Maritime Administrator.

**b. Tonnage Tax Receipt.**

A tonnage tax receipt shall be issued each year upon receipt of payment. A current tonnage tax receipt must be maintained with the Yacht Certificate of Registry for the certificate to be considered valid.

**c. Notice of Suspension.**

Should any of the revalidation requirements above not be fulfilled, a Notice of Suspension shall be issued by the Maritime Administrator.

**d. Termination.**

Termination of the Yacht Certificate of Registry may result upon the occurrence of any one or more of the following reasons:

    **(1)** the noncompliance cited in a Notice of Suspension is not corrected within 90 days of the issuance of the Notice of Suspension;

    **(2)** a transfer or change of ownership takes place without properly re-registering the yacht with the RMI;

    **(3)** the deliberate filing of a false or fraudulent Declaration of Private Use – Not for Hire, Declaration of Private Use with Intent to Engage in Limited Charter, Declaration of Intent to Maintain Commercial Compliance, Declaration of Intent to Maintain Passenger Yacht Compliance, or Declaration of Private Use with Intent to Request a Temporary Certificate of Registry for Yacht Engaged in Trade is made to the Maritime Administrator;

    **(4)** failure to comply with the applicable provisions of Regulation 2.11; or

    **(5)** the yacht becomes a total or constructive total loss.

**.4   Validity of Previously Issued Certificates of Registry.**

All Certificates of Registry issued by the Maritime Administrator shall remain valid for the entirety of the validity period stated on Certificate of Registry, where applicable, or until such Certificate of Registry is revoked or replaced. Changes to the requirements for Certificates of Registry will not invalidate any Certificates of Registry previously issued by the Maritime Administrator.

**2.21   Issuance of a New Certificate of Registry in Certain Cases.**

In cases where there has been a change of name or ownership of a vessel, a new Registry Certificate, Permanent or Provisional, must be issued and in no event shall such change or changes be accomplished by means of endorsement of the existing ship's documents.

Maritime Act Sections 208 and 209.

**2.22   Numbers of Registry Certificates and Licenses.**

The Maritime Administrator, upon the issuance of Registry Certificates and Licenses, assigning to such documents numbers progressively, shall as soon as possible notify all appropriate officials who are authorized to act for and on behalf of the Maritime Administrator so that, when a License or Registry Certificate is subsequently issued, the number assigned will be that next number, following the number assigned by the Maritime Administrator.

Maritime Act Section 103.

**2.23   Conditions Precedent to Issuance of Provisional Certificates of Registry.**

**.1   Proof of Consent.**

In cases where a vessel is acceptable in the first instance for documentation under the Maritime Act, or for re-registration under the Maritime Act, and is eligible for a Provisional Certificate of Registry, the owner, in addition to filing the documents for the issuance of a Provisional Certificate of Registry, shall file an affidavit that no further consent is required from the Government of former registry and flag or, if such consent is required, file copies of such official consent.

**.2   Proof of Liability Insurance.**

In no case shall a vessel be issued a Certificate of Registry unless there is on file proof of satisfactory third party liability insurance. Such proof must show either:

**a.**   protection and indemnity cover in force with respect to the vessel and issued by either:

**(1)**   a member Club of the International Group of Protection & Indemnity (P & I) Clubs;

**(2)**   a non-member Club of the International Group of P & I Clubs with a contractual agreement for re-insurance with member/members of the International Group of P & I Clubs;

**(3)**   a publicly traded Insurer with verifiable reserves that fulfill the obligations required under the various International Conventions to which the RMI is a party; or

> **(4)** a non-member P & I Club of the International Group of P & I Clubs with verifiable financial reserves that fulfill the obligations required under the various International Conventions to which the RMI is a party.

**b.** in the case of a pleasure yacht, a combined third party liability and hull and machinery insurance issued by an underwriter in policy form acceptable to the Maritime Administrator; or

**c.** in the case of a self-insurer, the nature, amount and security of the liability reserve.

**d.** In the case of 2.23.2.a.3, 2.23.2.a.4, 2.23.2.b and 2.23.2.c all insurance companies and self-insurers shall satisfy the requirements set by the Administrator.

In any case, with the exception of pleasure yachts, the proof must show coverage of the shipowner's repatriation obligations under Section 843 of the Maritime Act, Regulation 7.52 of these Regulations and the obligations of the ILO Standards.

**.3   Yacht Declarations**

The Administrator requires certain declarations for the use of yachts to be submitted at the time of their registration, including: Declarations of Private Use - Not for Hire, Declaration of Private Use with Intent to Engage in Limited Charter, Declaration of Intent to Maintain Commercial Compliance, Declaration of Intent to Maintain Passenger Yacht Compliance; and Declaration of Private Use with Intent to Request a Temporary Certificate of Registry for Yacht Engaged in Trade.

**a.** For a yacht to be registered as a private yacht, the owner must submit at registration a Declaration of Private Use – Not for Hire, declaring that the yacht is not a commercial yacht or cargo vessel and that it shall not be used for chartering, commercial purposes or financial gain. In the event an owner intends to engage in limited chartering as a private yacht limited charter, a Declaration of Private Use with Intent to Engage in Limited Charter shall be submitted to confirm a private yacht owner's understanding of the restrictions and requirements for allowing limited chartering for non-commercial purposes.

**b.** For a yacht to be registered as a commercial yacht, the owner must submit a Declaration of Intent to Maintain Commercial Compliance to confirm the yacht owner's understanding of the restrictions and requirements applicable to commercial yachts.

**c.** For a yacht to be registered as a passenger yacht, the owner must submit a Declaration of Intent to Maintain Passenger Yacht Compliance to confirm the yacht owner's understanding of the restrictions and requirements applicable to passenger yachts.

**d.** For a yacht to be registered as a private yacht engaged in trade, the owner must submit a Declaration of Private Use with Intent to Request a Temporary Certificate of Registry for Yacht Engaged in Trade to confirm the yacht owner's understanding of the restrictions and requirements applicable to yachts engaged in trade.

**.4   Payment of All Outstanding Fees, Taxes and Charges.**

In no case shall a vessel previously registered under the Maritime Act be issued any new Certificate of Registry before any and all taxes, fees and charges of whatever nature outstanding to the Maritime Administrator in respect of that vessel under its previous registration have first been paid or satisfied.

**.5   Continuous Synopsis Record (CSR).**

Vessel registration procedures shall require the submission of a copy of the vessel's current CSR Document certified by the flag administration from which the vessel is being transferred along with an Amendment Form and a new Index of Amendments. For transactions involving only a change of ownership and not a change of flag, the new owner need only submit an Amendment Form and a new Index of Amendments.

**.6   Filing.**

All documents and required papers shall have been forwarded through a Regional office and/or received by the Maritime Administrator in Reston, Virginia, USA.

Maritime Act Sections 155 and 214.

**2.24   Conditions Precedent to Issuance of Permanent Certificates of Registry.**

**.1   Proof of Consent.**

In case of the sale or transfer of a vessel which currently is documented under another registry and flag, and where the buyer or transferee desires to register the vessel in the RMI and such vessel is immediately entitled to a Permanent Certificate of Registry, the owner, in addition to filing the documents and papers required for registration, shall file an affidavit that no further consent is required from the Government of the current foreign registry or, if such consent is required, file copies of such official consent.

**.2   International and National Certificates.**

All vessels registered under the Maritime Act shall be issued valid full term certificates as required by SOLAS, International Load Line Convention, MARPOL and related Codes or any other International Convention which has been ratified or acceded to by the RMI and the National requirements established by the Maritime Administrator. These certificates shall be issued, following the successful completion of the required surveys, by one (1) of the Classification Societies, Appointed Representatives, or other agents authorized by the RMI in Regulation 2.17, as appropriate.

**.3   Filing.**

All documents and papers required by the Maritime Administrator are to be forwarded to Vessel Administration, Reston, Virginia, USA.

Maritime Act Section 208.

**2.25   Transfer Foreign; Cancellation.**

**.1   Statement Required.**

The owner of a vessel, in order to transfer the vessel to a foreign registry, or to leave the RMI Registry for any reason, shall file a statement setting forth the information specified in Section 221 of the Maritime Act, including a request for the transfer of the vessel's CSR File, and pay any outstanding annual tonnage taxes or fees due against the vessel.

**.2   Documents Required.**

A Certificate of Cancellation from the RMI may be issued upon filing with the Maritime Administrator, or upon delivery to a Special Agent or an official acting under specific instructions from the Maritime Administrator, of:

    **a.**  the vessel's Certificate of Registry, Ship Radio Station License and all other documents issued to the vessel, as listed in the published requirements; and

    **b.**  the Bill of Sale, in the event title has been transferred.

**.3   Other Requirements.**

In no case shall a Certificate of Cancellation be issued before:

    **a.**  all fees, penalties and charges of whatever nature outstanding against the vessel or its owning corporation to the RMI have first been fully paid;

    **b.**  the vessel's CSR File is current; and

    **c.**  any recorded mortgage has been duly satisfied or discharged as required by Section 304 of the Maritime Act.

Maritime Act Sections 106, 221 and 304(2).

## 2.26   Change of Name of Vessel.

The Maritime Administrator shall not approve the application of an owner for the change of name of a vessel if said vessel is subject to a Preferred Ship Mortgage unless the mortgagee has consented to, or given approval for, such change of name.

Maritime Act Section 232.

## 2.27   Liquidated Damages.

The penalty specified in Section 263 of the Maritime Act shall be construed as liquidated damages, and the Maritime Administrator may impose such conditions upon the grant of Provisional Certificate of Registry under either Sections 262 or 274 of the Maritime Act as he or she deems appropriate to secure payment of such damages if incurred.

Maritime Act Sections 262, 263 and 274.

## 2.28   Foreign Ship Mortgage Recording.

Notice of a foreign ship mortgage, hypothecation or similar charge or any other instrument related thereto which is entitled to be recorded under Section 264 of the Maritime Act shall be recorded in books to be kept for that purpose and indexed to show:

- the name of the vessel;
- the names of the parties;
- the time and date of reception of the instrument;
- the interest in the vessel transferred or affected;

- the amount and date of maturity of any mortgage, hypothecation or similar charge; and
- the name of the foreign State of registration of the vessel and date, book and page or other identification of the registration of the instrument in such foreign State.

Maritime Act Sections 264.

**2.29    Required Agreement by Shipowner and Foreign Bareboat Charterer.**

Before any Certificate of Permission for Foreign Bareboat Charter Registration shall be issued by the Maritime Administrator, the owner of the vessel and the bareboat charterer shall submit for filing a written undertaking to ensure that:

- the owner and the bareboat charterer both understand that the jurisdiction of the RMI will be withdrawn during the period of foreign bareboat charter registration;
- the vessel is to be manned, equipped, maintained and navigated to the safety and equipment standards that are no less than those laid down in the Maritime Act and these Regulations;
- the right to fly the flag of the RMI is waived, and the vessel will not be permitted to show Majuro as its home port while the vessel is subject to the bareboat charter;
- they shall be required to cooperate with the Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator, in any investigation arising out of a casualty occurring during the period of the bareboat charter; and
- the vessel shall immediately revert to the jurisdiction and control of the RMI when the charterparty is terminated or expires, or possession and control of the vessel is retaken by the owner.

Such agreement shall be signed by both parties and acknowledged in accordance with Regulation 3.30.

Maritime Act Sections 270-274.

**2.30    Foreign Bareboat Charter: Required Filings.**

**.1    Charter Party.**

A certified copy of the bareboat charter party upon which foreign bareboat charter registration is to be based shall be submitted for filing prior to the issuance of a Certificate of Permission. A certified copy of any subsequent amendments thereto and any bareboat sub-charterparties must also be submitted for filing within 30 days of execution.

**.2    Amendment of Charter Party.**

Each amendment or sub-charter party submitted for filing under paragraph .1 must be accompanied by proof of consent of the mortgagee or mortgagees of the vessel.

**.3    Consent of Mortgagee.**

In the event that a new mortgage is made or an existing mortgage is assigned with respect to a vessel under Foreign Bareboat Charter Registration, no such new mortgage or assignment shall be recorded unless the written consent of all preferred mortgagees of the vessel is also presented for filing.

Maritime Act Sections 270 and 271.

## CHAPTER 3
## PREFERRED SHIP MORTGAGES AND MARITIME LIENS

**3.30    Execution.**

**.1    Form of Required Acknowledgment.**

Every required acknowledgment shall be in a form substantially as follows, and be a part of or permanently attached to the executed document, and shall be subscribed by an official named in Section 209 of the Maritime Act or by a Special Agent, by a notary public or other officer authorized to administer oaths:

### SAMPLE FORMS OF ACKNOWLEDGMENT

**a.    If corporate seal <u>is</u> affixed:**

CITY OF:_____          SS.:

PROVINCE OF:_____

On this _____ day of _____ 20___, before me personally appeared_____, to me known, who being by me duly sworn, deposes and says that he/she resides at_____; that he/she is President (or Attorney-in-Fact, etc.) for (name of shipyard or corporation), the corporation (or company) described in and which executed the foregoing instrument; that he/she knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; and that it was so affixed by order of the Board of Directors (or whatever group has corporate authority) of said corporation and that he/she signed his/her name thereto by like order.

_____
(Name and Title of Officer taking acknowledgment)

**b.  If corporate seal is <u>not</u> affixed:**

CITY OF:_____          SS.:

PROVINCE OF:_____

   On this _____ day of _____ 20____, before me personally appeared_____, to me known, who being by me duly sworn, deposes and says that he/she resides at_____; that he/she is President (or Attorney-in-Fact, etc.) for (name of corporation), the corporation (or company) described in and which executed the foregoing instrument; and that he/she signed his/her name thereto pursuant to authority granted to him/her by the Board of Directors of said corporation.

_____
(Name and Title of Officer taking acknowledgment)

**.2  Proof of Due Execution.**

   Where Proof of Due Execution is specified as an alternative to acknowledgment in these Regulations, such proof must:

**a.**  in form and in substance, be a full legal acknowledgment that the document was duly executed in accordance with the laws of the place of execution of the document;

**b.**  be subscribed by and legibly bear the name and title of a notary public or other officer authorized by the laws of the place of execution of the document to take acknowledgments; and

**c.**  be a part of or permanently attached to the executed document.

Maritime Act Sections 209 and 305.

**3.31    Bill of Sale Recording.**

**.1  Existing Ships.**

   Where a vessel of the RMI is sold or transferred and re-registered under the Maritime Act, a Bill of Sale issued in connection with such sale or transfer shall be recorded in the Maritime Administrator as soon as practicable thereafter and as outlined in Regulations 1.04.2d and 2e.

**.2  Newbuildings.**

   In cases of newbuildings, the Builder's Certificate, or, in cases of transfer from another flag, the Bill of Sale may be, but is not required to be, recorded.

Maritime Act Section 306.

**3.32    Mortgage Recording.**

No mortgage shall be recorded unless it is submitted in four (4) originals, all duly executed, and acknowledged or with proof of due execution as required in Regulation 1.04.2a. All mortgages shall be in the English language.

Maritime Act Section 305 and 307.

**3.33    Yacht Mortgage or Security Agreement.**

The central office of the Maritime Administrator in the United States of America or its duly authorized agent elsewhere may accept for recording any mortgage or other document securing an installment loan or other debt with respect to the financing of a yacht,  which has been received in four (4) originals by a Commissioner, Deputy Commissioner or any Special Agent, provided it has been acknowledged or is submitted with such proof of due execution and as required in Regulation 1.04.2a.

**3.34    Construction Contracts.**

A Construction Contract shall be submitted for recordation in the form of one (1) certified copy as required in Regulation 1.04.2c.

Maritime Act Section 307.

# CHAPTER 4
# RADIO

**4.33    General Requirements.**

**.1    Radio Call and Signal Letters, Frequency Assignments.**

The Maritime Administrator, or the appropriate official who is authorized to act for and on behalf of the Maritime Administrator, is authorized to assign Radio Call and Signal Letters and also Frequencies to a vessel qualified for the issuance of a Certificate of Registry.

**.2    Ship Radio Station Licenses.**

    **a.    License Required.**

The Ship mobile radio transmitting stations shall be licensed by the Maritime Administrator who shall issue a license for each such station which shall be subject to the control of the Maritime Administrator with respect to its use. No license shall be transferred without the approval of the Maritime Administrator.

    **b.    Validity and Renewal.**

All Ship Radio Station Licenses shall be valid for a period of four (4) years and shall be subject to renewal. Any such license may be revoked by the Maritime Administrator at any time for cause shown.

    **c.    Filing.**

Applications for Ship Radio Station Licenses, or modifications or renewals thereof, shall be submitted to the Maritime Administrator in Reston, Virginia, USA.

**.3    Mobile Satellite Service Ship Earth Stations.**

All Mobile Satellite Ship Earth Station systems aboard vessels documented under the Maritime Act shall be reported to and activated, deactivated or have their systems data modified by the Maritime Administrator as Point of Service Activator (PSA) or by an agent authorized by the Maritime Administrator to serve as PSA for matters concerning these systems.

**.4    Service Contract Required.**

Every vessel shall be covered by a properly executed contract with a radio company recognized and approved by the Maritime Administrator or its appointed agent, under which contract the radio company assumes all accounting obligations and also the obligation to secure the Ship Radio Station License.

**.5    Vessel Monitoring System.**

Every vessel documented under the Maritime Act and subject to SOLAS Chapter V, regulation 19-1, shall participate in the RMI Vessel Monitoring System. The Maritime Administrator shall prescribe the manner by which participation by vessels shall be implemented and maintained through procedures published in a Marine Notice.

**.6   Radio Operators.**

**a.   Radiotelegraph.**

The service of every ship radiotelegraph station shall be performed only by an operator holding a valid certificate, in the proper class or category, issued by the Maritime Administrator.

**b.   Radiotelephone.**

The service of every ship radiotelephone station shall be controlled by an operator holding a valid certificate, in the proper class or category, issued by the Maritime Administrator. Provided the station is so controlled, other persons besides the operator may use the radiotelephone equipment.

**c.   Telex, etc.**

The service of automatic communication devices installed in any ship station shall be controlled by an operator holding a valid certificate, in the proper class or category, issued by the Maritime Administrator. Provided the devices are so controlled, and further provided the devices do not require for their basic function the use of Morse code signals for other than identification purposes, they may be used by persons other than the operator.

**d.   Secrecy and Compliance.**

As a condition for the issuance of a certificate to an operator, every applicant who is otherwise eligible shall submit to the Maritime Administrator a written statement acknowledging his or her obligations to maintain the secrecy of any radio correspondence not intended for the general use of the public, and to fully comply with the International Radio Regulations currently in force.

Maritime Act Sections 130 and 131.

# CHAPTER 5
# MARINE INSPECTION

**5.34**   **Marine Safety Inspections.**

**.1**   **Nautical Inspectors.**

**a.**   The Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator, may at such times and in such places or areas as may be suitable, appoint officials, Appointed Representatives (AR) or Recognized Organizations (RO), collectively "Nautical Inspectors", to board and examine, inspect or audit vessels registered under the Maritime Act. Nautical Inspectors shall render a report with respect to each such boarding to, and in the manner prescribed by, the Deputy Commissioner in charge of Marine Safety.

**b.**   Persons appointed to be Nautical Inspectors responsible for, or performing, surveys, inspections and audits on vessels and companies covered by the relevant IMO international instruments shall have as a minimum:

**(1)**   appropriate qualifications from a marine or nautical institution and relevant seagoing experience as a certificated ship officer holding or having held a valid STCW II/2 or III/3 Certificate of Competence and have maintained their technical knowledge of ships and their operation since gaining their Certificate of Competence and have served for a period of not less than three (3) years at sea as an officer in the deck or engine department; or

**(2)**   a degree or equivalent from a tertiary institution within a relevant field of engineering or science recognized by the Maritime Administrator, or an official authorized to act on behalf of the Maritime Administrator, and have worked in a relevant capacity for at least three (3) years; or

**(3)**   the requisite training on and knowledge of appropriate practical and theoretical knowledge of ships, their operation and the provisions of the relevant RMI Maritime Law and Regulations and international instruments necessary to perform their duties**.**

**.2**   **Initial Inspections.**

All vessels, except yachts, shall be required to undergo an initial safety inspection:

**a.**   Within 60 days of registration (90 days for mobile offshore units) and issuance of a Provisional Certificate of Registry;

**b.**   Within 60 days of re-registration where a change of ownership and management has taken place;

**c.**   Within 60 days of re-registration where a change of ownership or management has taken place as deemed necessary by the Administrator;

**d.**   after any substantial structural alteration; or

**e.**   prior to resuming service at the end of an official lay-up period.

**.3   Annual Inspections.**

All vessels registered under the Maritime Act shall be required to undergo an annual safety inspection with the following exceptions:

**a.**   unmanned barges;

**b.**   private yachts of any gross tonnage;

**c.**   yachts subject to Compliance Verification per the RMI Yacht Code;

**d.**   cargo vessels under 400 gross tons;

**e.**   vessels under construction; and

**f.**   vessels during an official lay-up period

**.4   Semi-Annual Inspections.**

Except for passenger yachts which are subject to Compliance Verifications per the RMI Yacht Code, passenger ships, including high speed passenger ferries, shall be required to undergo safety inspections at six (6) month intervals.

**.5   Periodic Inspections.**

The Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator, when deemed appropriate, may require special purpose or uniquely constructed vessels and vessels subject to corrective action to undergo periodic inspection at assigned intervals of less than one (1) year.

**.6   Special Inspections.**

The Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator, in addition to the above inspections, may require a vessel to undergo a special or unscheduled safety inspection at any time for any purpose. Single Hull Tank Vessels and Bulk Carriers 15 years of age or more and any vessel granted a waiver of the age limitation to registration shall be subject to a comprehensive initial inspection within 60 days of registration and at least one (1) additional special inspection mid-term during the first year in the registry.

**.7   Alternative Inspections.**

The Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator, may establish an alternative program for the annual safety inspection of:

**a.**   vessels and platforms engaged in the offshore seabed natural resource exploration, development and production industries; or

**b.**   vessels operating in remote or hard to reach areas to which a nautical inspector cannot travel or is not available.

**.8   Pre-registration Inspections.**

    **a.**   Any vessel applying for registration may be subject to a pre-registration inspection as required for a waiver of the age limitation to registration or as deemed necessary by the Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator, to adequately assess the condition and acceptability of the vessel prior to proceeding with the registration process. When so required or deemed necessary, it shall be done so with the concurrence and co-operation of the current owner. The direct costs of the inspection shall be charged to the registering owner or operator and invoiced after the inspection.

        **(1)**   Bulk Carriers 15 years of age or more shall be required to undergo a pre-registration inspection prior to registration.

        **(2)**   All unclassed private yachts of 24 meters or more in length overall and less than 400 gross tons are required to undergo a pre-registration inspection. This must be accomplished prior to registration, unless otherwise authorized by the Administrator. In all cases, the inspection must occur within 30 days of registration.

**.9   Compliance Verifications.**

    Initial, annual, and renewal compliance verifications of commercial yachts, passenger yachts, private yachts limited charter, and yachts engaged in trade shall be conducted by the Administrator or its duly designated representative(s) to verify that the qualifications and certification of the crew and the actual condition of the yacht and the certificates issued to it are in compliance with the requirements of the Yacht Code and any international conventions, as applicable.

**.10  MLC, 2006 Inspections.**

    All vessels less than 500 gross tons not subject to mandatory certification shall be inspected by the Administrator or its duly designated representative(s) to verify compliance with the requirements of the MLC, 2006, as applicable.

**.11  Voluntary Programs.**

    The owners of vessels exempt from the annual inspections or compliance verifications as detailed in paragraphs .3 and .9 may voluntarily participate in a self-administered safety inspection program in accordance with guidance issued by the Maritime Administrator. Such vessels may also opt to comply with the provisions of an international convention or code where they fall outside the applicability criteria of that instrument. Should it be deemed necessary, the Maritime Administrator, or an official representative who is authorized to act for and on behalf of the Maritime Administrator, may conduct safety inspections or compliance verifications on board vessels participating in such voluntary programs at any time and in such places or areas as may be suitable.

**.12  Responsibilities of Owners and Operators.**

    It is the responsibility of owners and operators of all vessels subject to inspection or compliance verification and registered under the RMI to present each such vessel for boarding when required, and to cooperate fully with the Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator, particularly in enabling them to board and examine, inspect or audit the condition of each such vessel including any documents and equipment and the use thereof during its operation in the flag and prior to change of ownership. Failure to present such

a vessel for inspection prior to a due date, failure to cooperate as above, or allowing the existence of a condition on board in violation of established requirements, may subject the vessel in question to immediate detention and suspension of registration, in addition to any penalty prescribed by law or Regulation. Such detention and suspension shall only be canceled upon satisfactory completion of the inspection, examination or audit and any required corrective action.

**.13 Duties of Shipboard Certificated Personnel.**

It is the duty of all holders of certificates of competence or other certification issued to seafarers by the Maritime Administrator to cooperate fully with the Maritime Administrator, or an official authorized to act on behalf of the Maritime Administrator, particularly in enabling them to board and examine, inspect or audit vessels registered under the Maritime Act including any documents and equipment and the use thereof. Failure of such cooperation on the part of any holder of an RMI Certificate of Competence or special qualification may subject him or her to formal charges of a marine offense, looking to the possible suspension or revocation of such certification, in addition to any other penalty prescribed by law or these Regulations.

**.14 Costs of Inspection or Compliance Verification.**

For the purpose of funding marine safety inspections and matters related thereto, the owner of a vessel or yacht registered under the Maritime Act and subject to Compliance Verification or annual safety inspection shall pay a Marine Safety or Yacht Services fee or fees as established and promulgated by the Maritime Administrator. The fee structure is contained in RMI Marine Notice 1-005-1.

**.15 Invoicing.**

**a.** Vessels, including yachts and fishing vessels, required to be inspected once annually or subject to Compliance Verification shall be invoiced annually in advance for the annual inspection or Compliance Verification fees falling due within a calendar year as part of the Marine Safety Services Fee or the Yacht Services Fee.

**b.** When an inspection, other than the annual safety inspection, is required as determined necessary by the Maritime Administrator, the fee for such inspection shall be invoiced and shall become due and payable upon receipt.

**c.** When a boarding officer must travel outside his or her station area to reach the owner's vessel, including yachts and fishing vessels, incidental travel costs, which are pre-authorized by the Maritime Administrator, shall be invoiced to and are due and payable by the owner.

**d.** If a boarding under this Regulation is for the purpose of attending to a port State control action and/or examining and overseeing the rectification of deficiencies of any nature, the owner of the vessel so boarded shall pay all costs incidental thereto.

**e.** All fees and costs chargeable under the provisions of this Regulation shall be invoiced and collected by the Maritime Administrator.

Maritime Act Sections 103 and 140.

# CHAPTER 6
# MARINE INVESTIGATIONS

**6.35**  **Definitions.**

### .1  Investigation Oversight Committee.

The Investigation Oversight Committee ("IOC") shall oversee the structure and operation of investigations and shall provide guidance on the proper functioning thereof to the Maritime Administrator or its duly designated representative(s).

### .2  Investigations Review Board.

The Investigations Review Board means a board appointed on a case-by-case basis by the Senior Deputy Commissioner located in the Central Office that shall review and make final determinations on issues pertaining to an investigation conducted by the Maritime Administrator, where necessary or appropriate.

### .3  Marine Casualty.

Marine Casualty means an event or a sequence of events that has occurred directly in connection with the operation of a vessel documented under the Maritime Act or a ship operating in the navigable waters of the RMI Marine Casualties include:

**a.**  serious injury to, or the death of, a person;

**b.**  the loss of a person from a ship;

**c.**  the loss, presumed loss or abandonment of a ship;

**d.**  material damage to a ship;

**e.**  the stranding or disabling of a ship, or the involvement of a ship in a collision or an allision;

**f.**  material damage to the marine infrastructure external to a ship, that could seriously endanger the safety of the ship, another ship or an individual; and

**g.**  severe damage to the environment, or the potential for severe damage to the environment, brought about by a ship or ships.

It does not include a deliberate act or omission, with the intention to cause harm to the safety of a ship, an individual or the environment.

### .4  Marine Incident.

A Marine Incident means an event or sequence of events, other than a Marine Casualty, which has occurred directly in connection with the operations of a Ship that endangered, or, if not corrected, would endanger the safety of the ship, its occupants or any other person(s) or the environment. A Marine Incident includes "hazardous incidents" and "near misses." A Marine Incident does not include a deliberate act or omission, with the intention to cause harm to the safety of a Ship, an individual or the environment or other Occurrence.

**.5   Marine Safety Investigation.**

A Marine Safety Investigation means an investigation into a Marine Casualty or Marine Incident conducted with the objective of preventing the occurrence of similar Marine Casualties and Marine Incidents in the future.

**.6   Marine Safety Record.**

A Marine Safety Record consists of evidence collected for a Marine Safety Investigation.

**.7   Occurrence.**

An Occurrence is an event that is not classified as a Marine Casualty or a Marine Incident, but requires investigation on the part of the Maritime Administrator. An Occurrence includes any act, failure to act, or Offense contrary to the Maritime Act or any Maritime Regulations, including any Rules made as provided by law and those contained in any International Conventions and Agreements to which the RMI is a party or which it has implemented. This would include an act or intended act of armed robbery, piracy, hijacking or terrorism.

**.8   Offense.**

An Offense means any of the causes for revocation specified in Regulation 1.06.4, and/or the Maritime Act §830 that may result, upon proof of such cause(s) and/or grounds, in the suspension or revocation of a seafarer's Certificate of Competence or Special Qualification.

Maritime Act Sections 103, 110 and 830.

**6.36   Notification and Reporting Requirements.**

**.1   Initial Notification.**

The owner, charterer, manager, operator, Master, agent or person in charge of a vessel registered under the Maritime Act involved in a Marine Casualty, Marine Incident or Occurrence, including an Offense, shall immediately (within 24 hours) advise the Maritime Administrator of the Marine Casualty, Marine Incident, Occurrence, or Offense by the fastest means possible, including fax, email, or telephone.

**.2   Follow-Up Report.**

Promptly after submitting initial notification as required in Regulation 6.36, an original report signed by the Master, the highest available officer or ship's representative, shall be forwarded to the Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator. A follow-up report shall be filed whenever there is:

**a.**   material damage affecting the seaworthiness of a vessel;

**b.**   collision, allision, stranding, grounding, abandonment or loss of a vessel;

**c.**   severe damage to the environment;

**d.**   fire or explosion;

**e.**   loss of life;

    **f.**   injury causing any person(s) to remain incapacitated for a period in excess of 72 hours, including occupational accidents and occupational injuries and diseases, which may not be limited to accidents or incidents involving the vessel;

    **g.**   acts or attempted acts of armed robbery, piracy, hijacking or terrorism; or

    **h.**   State action in response to the contravention of or non-compliance with any International Convention and Agreements to which the RMI is a party or which it has implemented.

In all cases, the Master or Shipowner shall submit a report to the Maritime Administrator of any instance of an Offense or criminal act.

Maritime Act Sections 709 and 711.

**.3  Form of Reports.**

    **a.**   A report of each Marine Casualty, Marine Incident, Occurrence or Offense shall be submitted on the appropriate form obtained from the Maritime Administrator.

    **b.**   In cases where a form is not available, each report shall set forth the name and Official Number of the vessel; the type of the vessel; the name and address of the owner; the date and time of the Marine Casualty, Marine Incident, Occurrence or Offense; the exact locality of the Marine Casualty, Marine Incident, Occurrence or Offense; and a detailed description of the circumstances under which the event took place. In addition,

        **(1)**  If a Marine Casualty involves collision with another vessel, the name of such other vessel shall be provided.

        **(2)**  Where a Marine Casualty involves personal injury or loss of life, the names of all persons injured or whose lives are lost shall be provided.

        **(3)**  Where damage to property is involved, the nature of the property damaged and an estimate of the extent of the damage shall be supplied.

    **c.**   The report must be signed by the Master or highest available officer or ship's representative.

**.4  Penalties.**

Where there is a failure to execute and file a report as required, the Master and vessel owner shall each be liable to a fine of one thousand dollars (US $1,000) and five thousand dollars (US$5,000) respectively upon notice from the Maritime Administrator.

Maritime Act Section 709.

**6.37  Incident Contingency Plan.**

The Maritime Administrator shall maintain an Incident Contingency Plan for the purpose of providing a rapid and effective response to any event of international maritime significance involving a ship registered under the RMI flag.

**6.38    Marine Investigations.**

**.1    Conduct.**

    **a.**   Marine Safety Investigations shall be conducted by the Office of the Maritime Administrator for:

       **(1)**  every instance where a ship documented under the RMI is involved in a Very Serious Marine Casualty or where the RMI is otherwise conducting a Marine Safety Investigation as a Substantially Interested State;.

       **(2)**  in other Marine Casualties and Marine Incidents of a ship documented in the RMI, if based on a preliminary investigation, it is considered likely that the investigation will provide information that can be used to prevent such casualties and incidents in the future; and

    **b.**   The Maritime Administrator shall also investigate Occurrences and Offenses involving a ship documented under the RMI.

    **c.**   Investigations shall commence as soon as reasonably practicable, so as not to delay a ship unnecessarily.

    **d.**   Any person or persons that interfere with the conduct of a Marine Safety Investigation or an investigation of an Offense or Occurrence may be subject to fines and penalties under the RMI law.

    **e.**   All Investigations shall, to the extent reasonable and practicable, be conducted in accordance with IMO resolution A.987(24) and the Guidelines on Fair Treatment of Seafarers in the Event of a Maritime Accident (IMO Circular Letter No. 2711), as may be amended from time to time.

Maritime Act Sections 710 and 711.

**.2    Duties of the Maritime Administrator.**

    **a.**   The Maritime Administrator, upon receipt of information of a Marine Casualty, Marine Incident, Occurrence or Offense, may institute such investigation as may be necessary to determine as closely as possible the cause or any contributing causes and whether there has been any act of misconduct, inattention to duty, or negligence upon the part of any certificated person, or violation of law or regulation, so that appropriate action may be taken.

    **b.**   Investigations shall be conducted in accordance with rules established by the Maritime Administrator in the RMI publication MI-260. All such rules shall incorporate the relevant international conventions, treaties, standards, laws and regulations to which the RMI is a party or has implemented.

**.3    Investigators.**

    **a.**   The Maritime Administrator may appoint an individual investigator and confer upon him/her such authority as may be deemed necessary to effect the investigation.

**b.** Individual investigators shall have a working knowledge and practical experience in those subject areas pertaining to their normally assigned duties. Additionally, to assist individual investigators in performing duties outside their normal assignments, the Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator, shall ensure ready access to expertise, as necessary, in the areas of:

**(1)** navigation and the collision regulations;

**(2)** Maritime Administrator regulations on Certificates of Competence;

**(3)** causes of marine pollution;

**(4)** interviewing techniques;

**(5)** evidence gathering;

**(6)** evaluation of the effects of the human element; and

**(7)** forensics evaluation.

Maritime Act Section710.

**.4   Duties of Owners.**

**a.** It is the duty of all owners of vessels registered under the Maritime Act to cooperate with the Maritime Administrator, or an official authorized to act for or on behalf of the Maritime Administrator, in the investigation of Marine Casualties, Marine Incidents, Occurrences and Offenses to produce, when called upon, witnesses in their employ and relevant books, papers, documents and other records in their possession, and to permit the Maritime Administrator or its appointees to board and examine vessels and their appurtenances.

**b.** In the event of owners' or their representatives' failure to cooperate fully in or attempt to inhibit any marine investigation, any or all of the following consequences may result with respect to the vessel directly involved or to any other vessel of the same ownership:

**(1)** cancellation from the registry of the RMI;

**(2)** suspension or revocation of the Certificate of Registry;

**(3)** refusal to issue a Certificate of Cancellation from the registry of the RMI or otherwise to give the consent of the RMI to a transfer of ownership or registry;

**(4)** refusal to accept registration or re-registration in the registry of the RMI; or

**(5)** liability for a monetary penalty which shall not exceed US$50,000.

**.5   Duties of Shipboard Certificated Personnel.**

**a.** It is the duty of all holders of certificates of competence or other certification issued to seafarers by the RMI to cooperate with the Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator, in the investigation of Marine Casualties, Marine Incidents, Occurrences or Offenses, to participate in any administrative proceeding or adjudicatory proceeding as provided in Regulations 6.39. or

6.40, respectively, to which they may be summoned, to testify orally or in writing or to produce, when called upon, relevant books, papers, documents and other records in their possession, and to permit the Maritime Administrator, or its appointees to board and examine vessels and their appurtenances.

**b.** In the event of failure of holders of certificates of competence or other certification to cooperate fully in any marine investigation, any or all of the following consequences may result:

    **(1)** suspension or revocation of the Certificate of Competence or other certification held;

    **(2)** refusal to renew or reissue any Certificate of Competence or other certification held, before or after expiration; or

    **(3)** liability for a monetary penalty which shall not exceed US$15,000.

**.6 Investigation.**

**a.** The Maritime Administrator, or other persons appointed by the Maritime Administrator as Investigating Officers, shall make an investigation, as appropriate, under paragraph .1 of this Regulation.

**b.** In connection with any investigation, the Maritime Administrator, an official who is authorized to act for and on behalf of the Maritime Administrator, or Investigating Officers, may collect evidence, interview witnesses, examine relevant papers, documents and records, board and examine vessels or equipment and visit the scene of the casualty or offense.

**c.** An Investigating Officer shall not be permitted to take original documents or equipment off a vessel documented in the RMI, unless under exceptional circumstances.

**.7 Retention of Voyage Records.**

The persons in charge of any vessel involved in a Marine Casualty or Marine Incident as defined in 6.35, above, shall retain for five (5) years, or until otherwise instructed by the Maritime Administrator, the complete records of the voyage during which the casualty occurred, as well as any other material, including Voyage Data Recorder (VDR) information and other automatically recorded data, which might reasonably be of assistance in investigating and determining the cause and scope of the Marine Casualty or Marine Incident, and said persons shall make all such records and materials available, upon request, to the Maritime Administrator.

Maritime Act Section 710.

**.8 Investigative Reports.**

    **a. Preliminary Report.**

When an investigation under this Chapter has been delayed due to a failure of production of evidence or other circumstances outside of the Maritime Administrator's control, the Maritime Administrator may choose to produce a preliminary report, memorializing any preliminary findings, conclusions and recommendations. A preliminary report may be furnished to Interested Parties at the Maritime Administrator's sole discretion.

**b. Draft Report.**

When an investigation under this Chapter has been concluded, the Investigating Officer(s) shall submit, as expeditiously as possible, findings, conclusions and recommendations, if any, in a written draft report, along with the investigative file, to the Maritime Administrator. A written draft report shall conform to any guidance promulgated by the Maritime Administrator on report content and format.

**c. Final Report.**

The Maritime Administrator may:

**(1)** adopt a draft report with recommendations, if any, as a final report; or

**(2)** return a draft report to the Investigating Officer for further investigation or revision as appropriate.

**d. Transmission to Interested Party.**

Upon completion of the investigation and any necessary review and/or approval, the final investigation Report may be promptly furnished to each Interested Party to the investigation.

**e. Reopening an Investigation.**

In exceptional cases and only for good cause shown, the Maritime Administrator may order an investigation reopened, in which case the provisions of the Maritime Act, Regulations, and other Notices and/or Guidelines promulgated by the Administrator, shall apply as in the case of a new investigation. Any supplemental reports shall state that the original investigation has been reopened, and shall take into account the original investigation report in setting forth any new findings, conclusions or recommendations.

**f. Referral to Investigative Review Board.**

Notwithstanding Regulation 6.36, where a report recommends the suspension, revocation or cancellation of any license, certificate, permit or other document issued by the RMI, the case shall be referred to the Investigative Review Board.

**g. IMO Submission.**

**(1)** A final written full investigative report shall be submitted to IMO for:

  **i.** every Very Serious Casualty of a vessel documented in the RMI or, if conducting an investigation of a Very Serious Casualty, as a Substantially Interested State in accordance with IMO Resolution MSC.255(84).

  **ii.** other casualties and Marine Incidents where there are important lessons to be learned which may prevent or lessen the seriousness of such Marine Casualties or Marine Incidents in the future.

**(2)** Should the Maritime Administrator, during the course of an investigation, be hindered due to the withholding of information, for any reason, which may frustrate, delay or preclude the submission of a complete and timely report of investigation to the IMO as required in Regulation 6.38.8(g)(1), nothing contained in these Regulations shall preclude the Maritime Administrator from submitting an interim report of causal factors as they may appear along with recommendations based upon the information available to satisfy this obligation.

**h.  Report Retention.**

All investigation reports, including reports submitted to IMO, and their accompanying investigative files shall be kept by the Maritime Administrator for a period of five (5) years, unless deemed to be of historical importance requiring that they be kept for such longer period as determined by the Maritime Administrator.

**i.  Release of Reports and Information.**

**(1)** No Investigating Officer or any other person involved in an RMI investigation shall release or otherwise make public all, or any portions of any statements, Marine Safety records, reports or any other evidence used or referenced in the Marine Safety Investigation Report, unless so instructed by the Maritime Administrator.

**(2)** A final Marine Safety Investigation Report or preliminary report shall not be released by the Maritime Administrator unless it is approved for such release in accordance with rules promulgated by the Maritime Administrator.

**(3)** The Maritime Administrator may, in its sole discretion, release for public information or cause to be published any Marine Safety record, reports, documents, evidentiary matter or official statements pertaining to a marine investigation, or any portions thereof

Maritime Act Sections 103, 710 and 711.

**.9  Invoice After Investigation.**

The owner or operator of a vessel boarded for the purposes of an investigation under this Regulation shall pay all costs incidental thereto. All fees and costs chargeable under the provisions of this Regulation shall be invoiced and collected by the Maritime Administrator.

Maritime Act Sections 103, 111, 710 and 711.

**6.39  Marine Administrative Proceeding.**

**.1** The Maritime Administrator may conduct a non-judicial proceeding, including a suspension and revocation proceeding, regarding alleged violations of the RMI Maritime Act, these Regulations, and/or relevant international conventions and agreements to which the RMI is a party or implements. An Administrative Proceeding may result in the invocation of penalties by the Maritime Administrator.

**.2** An Administrative Proceeding shall be conducted independently of an investigation and shall be governed by rules promulgated by the Maritime Administrator. Such rules shall provide for the non-judicial proceedings to address violations or suspected violations as the result of a marine casualty, marine incident, occurrence or offense.

CHAPTER 7
SEAFARERS

**7.38    Manning Requirements for Vessels Registered under the Maritime Act.**

All vessels that fly the RMI flag shall have a sufficient number of seafarers on board to ensure that vessels are operated safely, efficiently and with due regard to security. Every vessel shall be manned by a crew that is adequate, in terms of size and qualifications, to ensure the safety and security of the vessel and its personnel, under all operating conditions, in accordance with minimum safe manning documentation issued by the Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator. When determining, approving or revising manning levels, the need to avoid or minimize excessive hours of work shall be taken into account to ensure sufficient rest and to limit fatigue. In keeping with these principles in applicable international instruments, the following shall be maintained:

**.1    Required Minimum Number of Deck Officers.**

    **a.**    No vessel registered under the provisions of the Maritime Act shall be navigated unless it has on board and in its service a duly certified Master holding an RMI Certificate of Competence.

    **b.**    On a vessel engaged on an international voyage but in a non-navigational status, there may be on board and in its service, in lieu of the prescribed duly certified Master, an Officer in Charge holding an RMI Certificate of Competence.

    **c.**    The number of Deck and Navigation Watch Officers required, and the grades in which they shall be duly certificated, shall be prescribed for each vessel by the Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator.

    **d.**    This section is not applicable to private yachts, except private yachts limited charter, yachts engaged in trade, and beginning 1 September 2024, private yachts of 3,000 gross tons or more.

**.2    Required Minimum Number of Engineers.**

    **a.**    No vessel engaged in commerce propelled by machinery of 750 kilowatts (1000 horsepower) or greater shall be navigated unless it has on board and in its service a duly certificated Chief Engineer.

    **b.**    The numbers of assistant engineers and engine room watch officers required, and the grades in which they shall be duly certificated, shall be prescribed for each vessel by the Maritime Administrator.

    **c.**    Refer to 7.38.1b for non-navigational status requirements.

    **d.**    This section is not applicable to private yachts, except private yachts limited charter and yachts engaged in trade.

**.3    Required Minimum Number and Ratings of Crew.**

The Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator, may prescribe for any vessel a required minimum number of crew for its safe navigation and operation, and may require a specified number of crew members to be rated and/or certificated as he or she deems necessary. This section is not applicable to private yachts,

except private yachts limited charter, yachts engaged in trade, and beginning 1 September 2024, private yachts of 3,000 GT or more.

**.4   Required Minimum Number of Certified Persons Proficient in Survival Craft and Crowd Control.**

Every passenger ship shall have on board for each lifeboat, or other survival craft carried, an assigned number of certified survival craft crewmembers and an assigned number of persons designated to assist passengers in an emergency.

**.5   Responsibility of Shipowners/Operators.**

Shipowners and Operators responsible for employing seafarers for service on board vessels shall ensure that:

**a.**   seafarers, on being newly employed in service aboard the vessel, are provided with reasonable opportunity to become familiar with their specific duties and with all ship arrangements, installations, shipboard equipment, operating procedures and ship characteristics that are relevant to their routine or emergency duties before assignment to those duties;

**b.**   a knowledgeable officer or crew member shall be designated who will be responsible for ensuring that an opportunity is provided to each newly employed seafarer to receive essential information in a language the seafarer understands;

**c.**   verification of ship's officers shall be reported for each vessel as directed by, and on forms obtained from, the Maritime Administrator or an official who is authorized to act for and on behalf of the Maritime Administrator;

**d.**   seafarers who are engaged as ship's cooks are 18 years of age or older, trained, qualified and documented as competent for the position; and

**e.**   all requirements of companies under the STCW Convention are met.

**.6   Minimum Safe Manning Certificate.**

The Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator, shall issue to each vessel a Minimum Safe Manning Certificate setting forth the required *minimum* numbers of officers, crew and other persons, in specified grades, ratings and functions, which have been prescribed for the safe navigation and operation of that vessel and the protection of the crew and passengers on board. This Certificate shall be readily available for inspection with a copy conspicuously posted. This section is not applicable to private yachts, except private yachts limited charter, yachts engaged in trade, and beginning 1 September 2024, private yachts of 3,000 gross tons or more.

**7.39   Temporary Authorization as Officer.**

Where it has been established by the Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator, that an emergency situation exists which reasonably precludes the engagement of the required complement of duly certificated Navigation and Engine Watch Officers as prescribed in paragraphs 7.38.1 and 7.38.2 above, the Maritime Administrator may authorize temporary service of qualified persons in Watch Officer capacities on board a vessel, other than a passenger

ship, as follows:

**.1    Required Sea Service.**

A duly certificated Navigation or Engine Watch Officer, who has completed at least six (6) months of service in the capacity for which he or she is certificated and while holding such certificate, may be authorized to serve temporarily in the capacity next highest to that for which he or she is presently certificated, but not as Master or Chief Engineer, for a period not to exceed six (6) months, provided he or she is in all other respects eligible for examination for a certificate in such higher capacity, has submitted an application for such examination, and undertakes to complete that examination prior to the expiration of the six-month period.

**.2    Temporary Period of Service.**

A person not duly certificated may be authorized to serve temporarily in capacities not higher than Navigation or Engine Watch Officer, for a period not to exceed six (6) months, provided he or she is in all other respects eligible for examination for a certificate in one (1) of said capacities, has submitted an application for such examination and undertakes to complete said examination prior to the expiration of the six-month period; and further provided he or she has first successfully completed a preliminary examination as to his or her qualifications and competence as shall be required by the Maritime Administrator or an official who is authorized to act for and on behalf of the Maritime Administrator to whom application is made.

**.3    Temporary Permit.**

An authorization granted pursuant to this Regulation shall be in the form of a Temporary Permit issued by the Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator, which shall be valid only for service on board the specific vessel named therein.

**.4    Number of Temporary Permits Allowed.**

Not more than one (1) Mate and one (1) Assistant Engineer shall be authorized to serve on board the same vessel at the same time under a Temporary Permit.

**.5    Prohibited Permits.**

Temporary permits shall not be granted in the capacities of Master, Chief Engineer, Radio Officer, GMDSS General Operator or Ship Security Officer.

**.6    Revocation or Suspension.**

Temporary Permits may be revoked or suspended on the grounds set forth in Regulation 1.06.4, or at any time upon notice by the Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator, when the Maritime Administrator declares that the emergency situation referred to above no longer exists.

Maritime Act Sections 103, 109, 115, 802, 804, 805 and 806.

**7.40    Change of Command Appointment and Log Entry.**

Whenever there occurs a change of Master of a vessel, the shipowner or his or her authorized agent shall designate and appoint the new Master in writing and the new Master shall enter the following statement in the vessel's log book:

"I, (name of new Master), a citizen of (country of citizenship), holder of the RMI Certificate of Competence No. (number of certificate) in the grade of Master, assumed command of the vessel on (date on which officially took command) at the port of (port where change effected)."

Maritime Act Sections 810 and 811.

**7.41   Master's Duties and Responsibilities.**

**.1   Master's Authority.**

(a)   The Master of any type vessel registered in the RMI shall have overriding authority and discretion to take whatever action he or she deems to be in the best interest, safety and security of passengers, officers, crew, cargo, ship and marine environment.

(b)   For the purposes of the special powers of Masters to perform marriages as granted by section 812(a) of the Maritime Act, the term "at sea" shall mean when a vessel is in international waters outside of the territorial sea of a coastal State, as defined in Part II of UNCLOS.

**.2   Required Log Books for Vessels of 100 Gross Tons and Over.**

**a.   Bridge Navigation Log and Engine Room Log.**

Every self-propelled vessel of 100 gross tons or over shall keep a Bridge Navigation and an Engine Room log book which shall be maintained in bound volumes aboard ship. All entries made in such log books shall be signed by the Master or officer designated by the Master who shall make such entries, and all such entries shall be made as soon as possible after the occurrences to which they relate.

**b.   Bell Log.**

In addition to keeping of Bridge Navigation and Engine Room log books, every vessel shall have a bridge and an engine room record wherein shall be contained the times and nature of all orders passed between the navigation bridge and the engine room.

**c.   Cargo Log Book.**

Bulk carriers shall maintain a cargo log book as prescribed by SOLAS VI/7.8. The requirement may be fulfilled by having it incorporated in relevant shipboard SMS checklists as long as the checklist developed contains all the information required under the SOLAS regulation to be recorded.

**d.   Radio Log Book.**

SOLAS IV/17 requires that a record be kept of all incidents connected with the radio communication service which appear to be of importance to safety of life at sea. Every vessel shall keep a log of radio service and GMDSS operations convenient to the radio installation during the voyage. Every radio operator shall enter in the radio log book his or her name, the dates served onboard the vessel, and an indication of the designated duties. In addition, all incidents which may occur connected with the radio service and GMDSS operations which are

of importance to the safety of life at sea shall also be recorded in the appropriate section of the radio log book, as well as the daily noon position of the ship. The Master shall inspect and sign each day's entries.

### e.   Medical Log.

Each vessel shall keep a medical log book wherein shall be entered every case of illness or injury happening to any member of the crew, passenger or other persons engaged in the business of the vessel; the nature thereof; the medical treatment; and the results.

### f.   Official Log Book and Entries.

Every Master of a vessel shall make or cause to be made in an official log book entries including, but not limited to, the following:

**(1)**  every offense and any penalty or fine imposed;

**(2)**  every death occurring on board and every burial at sea, with all information required by Section 839 of the Maritime Act;

**(3)**  every marriage taking place on board, with the names, citizenship and residences of the parties;

**(4)**  every birth occurring on board, with the sex of the infant and names of the parents;

**(5)**  the name of every seafarer or apprentice who ceases to be a member of the crew otherwise than by death, with the place, time, manner and cause thereof;

**(6)**  wages due any seafarer or apprentice who dies during the voyage, and the gross amount of all deductions made therefrom;

**(7)**  a statement of any collisions, allisions, groundings, spills or other marine casualties which may have been experienced immediately after the occurrence or as soon thereafter as practicable;

**(8)**  before departing from any port, load line and draft information;

**(9)**  time of muster of crew at their boat and fire stations, followed by drills or training, respectively, either in port or at sea, or reason why not held;

**(10)**  date of enclosed space entry and rescue drills, which must be held at least once every two (2) months;

**(11)**  date of security drills and exercises, with details being recorded as specified in Regulation 7.41.8 below;

**(12)**  the closing and opening of watertight doors and of all inspections and drills as required by SOLAS Regulations in force, as amended;

**(13)**  drill of ship's crew in the use of the line-throwing apparatus at least once every three (3) months; but the actual firing of the apparatus shall not be required;

**(14)**  search for stowaways and contraband, which search shall be conducted prior to the vessel's departure from each port;

**(15)** date and results of area(s) inspected as required under Regulation 7.41.17; and

**(16)** upon each change of Master, the information required under Regulation 7.40.

**g.   Electronic Log Data and Record Book Systems.**

**(1)** Electronic data systems for recordation and retention of Log Data and Records may be used provided that the design of the equipment and software, including future updates, shall be such as to enable recording of information required by SOLAS and the Guidelines for the Recording of Events Related to Navigation, MARPOL, STCW , ILO Standards and that the systems comply with the requirements set by the Maritime Administrator.

**(2)** Electronic log data and record systems software shall provide verifiable security from tampering and inappropriate revisions of data along with back-up arrangements for both the system (means of recording log data or record) and the log data or record itself, once recorded.

**(3)** A record book device or system to electronically record required entries for discharges, transfers and other operations for use by ship owners or ship operators in lieu of a hard copy record book must be approved by the Administrator in accordance with the relevant international convention.

**(4)** For the purpose of meeting the intent of the log book requirement to be maintained in bound volumes, the Maritime Administrator shall accept a hard copy (printout) of each day's entry of Log Data, duly signed and dated by the Master or Officer designated by the Master to make such entries, and retained in binders onboard the ship for the duration prescribed in subsection h. below.

**h.   Log and Record Book Retention.**

Logs and records shall be retained onboard a vessel in accordance with the provisions of the applicable governing international convention(s) or in the absence of any such provisions, not less than three (3) years unless otherwise specified by the Maritime Administrator. They shall be thereafter forwarded to the shipowner and/or operator as provided for by the shipowner and/or ship operator in written company procedure, and retained for a period of at least three (3) years from the date of receipt. In the event of a casualty occurring during a voyage covered by such log books or records, they shall be retained for so long as may be instructed by the Maritime Administrator

**.3   Certificates to be Given by Master.**

Each exercise of a special power granted to Masters under Section 812 of the Maritime Act shall be evidenced by an appropriate certificate, referring to a log entry of the event, and shall be signed by the Master and executed upon a form to be supplied, on request and payment of fees, by the Maritime Administrator. The fee structure is contained in RMI Marine Notice 1-005-1.

Maritime Act Section 812.

**.4   Manning of Survival Craft.**

**a.** The Master shall place in charge of each lifeboat or other survival craft a deck officer (or certificated survival craft crewmember if a passenger ship) and shall also designate a

second-in-command. The person so placed in charge shall have a list of the survival craft's crew, and shall assure himself or herself that those individuals placed under his or her orders are acquainted with their duties. The Master shall also assign to each life raft a member of the crew proficient in the handling, launching and operation of life rafts.

**b.**   The Master shall assign to each motor lifeboat at least one (1) member of the crew capable of working the motor. He or she shall similarly assign to each lifeboat equipped with radio and searchlight apparatus, at least one (1) member of the crew capable of working such equipment.

### .5   Muster List and Emergency Procedure.

The Master of each vessel of 500 or more gross tons shall ensure that the ship's complement can effectively coordinate their activities in an emergency situation and in performing functions vital to safety or to the prevention of pollution by allotting to each officer and member of the crew special duties to be undertaken in the event of an emergency or the need for heightened security and shall cause to be drawn up and posted a muster list showing said assignments, which list shall further indicate the particular station to which each crew member must go. The muster list shall assign such duties as the Master deems necessary for the safety and security of the vessel, its crew and cargo. The Master shall further specify and publish definite signals for calling all the crew to their boat and fire stations, and shall give full particulars of these signals to all crew and passengers.

### .6   Fire and Abandon Ship Drills.

The Master of each vessel (excluding passenger ships and mobile offshore units (MOUs)) shall cause the crew to be exercised at fire (SOLAS Ch. III/19.3.4) and abandon ship (SOLAS Ch. III/19.3.3) drills at least monthly to satisfy the requirements of SOLAS Ch. III/19.3, or within 24 hours of the vessel leaving port if more than 25% of the crew have not participated in fire and abandon ship drills collectively satisfying the requirements of SOLAS Ch. III/19.3.2 on board that particular ship the previous month.

For passenger ships, the Master of each vessel shall cause the crew to be exercised at fire and abandon ship drills at least weekly to satisfy the requirements of SOLAS Ch. III/30.2. The entire crew need not be involved in every drill, but each crew member must participate in at least one (1) abandon ship drill and one (1) fire drill each month as required by SOLAS Ch. III/ 19.3.2.

Masters of MOUs, in accordance with the IMO 2009 Mobile Offshore Drilling Units Code, Ch. 14.12, shall cause the crew to be exercised at fire and abandon ship drills weekly, or within 24 hours of a personnel change if more than 25% of the crew have not participated in fire and abandon ship drills collectively satisfying the requirements of SOLAS Ch. III/19.3 on board that particular MOU the previous month.

Such drills, to the extent practicable, shall be conducted as if an actual emergency existed, and as a minimum, consist of the following points:

**a.**   Weather permitting, lowering of at least one (1) lifeboat to the embarkation point after any necessary preparation for launching shall be performed to ascertain that the gear is in good working order. The motor and hand-propelling gear of each lifeboat, where fitted, shall be operated sufficiently to ascertain that it is in proper operating condition.

**b.**   All fire pumps shall be started and sufficient outlets opened to determine that the system is in proper working order.

**c.**   All watertight doors in use while the vessel is underway shall be operated.

**d.**   All emergency lighting for mustering and abandonment and communications systems shall be tested at every abandon ship drill.

**e.**   Persons assigned to the use of rescue and safety equipment shall demonstrate their proficiency in the use of such equipment.

**f.**   In accordance with SOLAS Ch. III/19.2.2 and 19.2.3, as amended, passengers scheduled to be on board for more than 24 hours shall be mustered at their stations within 24 hours after their embarkation and instructed in the use of life preservers and the action to take in an emergency. The crew shall be instructed in crowd control duties.

**g.**   In addition to the requirements of SOLAS Ch. III/19.4, at the discretion of the Master, the crew may receive additional on-board training sessions or presentations related to lifesaving and firefighting measures, as appropriate.

**h.**   Each lifeboat shall be launched and maneuvered in the water by its assigned crew, at least once in every three (3) months, during an abandon ship drill, and the crew shall be exercised in the use of oars and other means of propulsion where fitted.

**i.**   In the case of a lifeboat arranged for free-fall launching from a height of 20 meters or less, at least once every three (3) months during an abandon ship drill the crew shall board the lifeboat, properly secure themselves in their seats and commence launch procedures up to but not including the actual release of the lifeboat (i.e., the release hook shall not be released). The lifeboat shall then either be free-fall launched with only the required operating crew on board, or lowered into the water by means of the secondary means of launching with or without the operating crew on board. In both cases the lifeboat shall thereafter be maneuvered in the water by the operating crew. At intervals of not more than six (6) months, the lifeboat shall either be launched by free-fall with only the operating crew on board, or simulated launching shall be carried out.

**j.**   With regard to free-fall lifeboats being launched from heights greater than 20 meters, launching by falls is acceptable, provided that a simulated free-fall launch is conducted at least every six (6) months.

**k.**   For vessels fitted with fast rescue boats, training exercises are to be carried out weekly, whereas actual launch and recovery drills are to be carried out at least every three (3) months.

**l.**   Mustering is required for newly embarked passengers who will stay more than 24 hours aboard passenger ships. Mustering at the beginning or during the voyage shall be conducted prior to or immediately upon departure from any port at which an embarkation takes place. Whenever new passengers embark, a passenger safety briefing, which may be included in the muster, shall be given prior to or immediately upon departure.

**.7   Enclosed Space Entry and Rescue Drills.**

Crew members with enclosed space entry or rescue responsibilities shall participate in an enclosed space entry and rescue drill to be held on board the ship at least once every two (2) months in accordance with SOLAS Ch. III/19.3.3 and 19.3.6.

**.8   Security Drills and Exercises.**

    **a.**   The Master of every vessel subject to the ISPS Code shall ensure that shipboard personnel are proficient in all assigned security duties at all security levels through the conduct of drills and exercises and shall identify and address security-related deficiencies encountered during such drills and exercises. Drills shall test individual elements of the SSP such as those listed in the ISPS Code, Part B, Section 8.9. Exercises shall test the connectivity, communications and cooperation among all parties that may be involved in a security incident. When practicable, the Company and ship should participate in the drills or exercises being conducted by a port facility whereat they may be located.

    **b.**   The Master shall ensure:

        **(1)**   the effective implementation of the provisions of the SSP;

        **(2)**   that drills are conducted at least once every three (3) months; and

        **(3)**   in addition, in cases where more than 25% of the ship's personnel have changed, at any one time, with personnel that have not previously participated in any drill on that ship within the last three (3) months, that a drill is conducted within one (1) week of the change.

    **c.**   Exercises must be carried out at least once each calendar year with no more than 18 months between them. Company Security Officers (CSOs) shall participate in exercises to ensure the effective implementation and co-ordination of SSPs.  Exercises do not have to involve each vessel within a fleet.

    **d.**   Records indicating type of drill or exercises, SSP element(s) covered, and who participated shall be kept by the SSO and maintained on board for a period of three (3) years. They may be kept in any format but must be protected from unauthorized disclosure. The records shall be in a form which is readily available to port State control officers if so requested.

**.9   Person Overboard Drills.**

    All ships shall conduct a drill or training for person overboard procedures at intervals of not more than three (3) months.

**.10   Recovery of Persons from the Water.**

    All ships shall have ship-specific plans and procedures for recovery of persons from the water, taking into account the guidelines developed by the IMO. The plans and procedures shall identify the equipment intended to be used for recovery purposes and measures to be taken to minimize the risk to shipboard personnel involved in recovery operations.

**.11   Line-Throwing Apparatus.**

    On vessels fitted with a line-throwing apparatus, the Master shall cause the crew to be exercised in the use of such apparatus at least once in every three (3) months, except that the actual firing of the apparatus shall not be required. The service line shall not be used for drill purposes. In lieu thereof, any flexible line of proper size and length, suitably flaked or laid out, may be used.

**.12   Onboard Familiarization and Training.**

    **a.**   All persons employed or engaged aboard vessels documented under the Maritime Act shall

receive familiarization training after being assigned to a vessel and prior to assuming routine duties on board. It shall be the responsibility of the shipowner/operator to accomplish this training in accordance with the guidelines provided in STCW, SOLAS Chapters IX, XI-1 and XI-2 and as established by the Maritime Administrator. Every crew member with assigned emergency or security duties shall be familiar with these duties before the voyage begins.

**b.**  A training manual complying with the requirements of SOLAS Ch. III - 35 shall be provided on board. Onboard training in the use of the vessel's life-saving appliances, including survival craft equipment, the use of the vessel's fire extinguishing appliances and security duties shall be given as soon as possible but not later than two (2) weeks after a crew member joins the vessel.

### .13 Accident Prevention.

The Master of each vessel shall appoint from amongst the crew a suitable person or a committee responsible for accident prevention, and such person or committee shall in addition to any other duties assigned by the Master hold safety meetings, conduct routine inspections and ensure that any conditions aboard the vessel not in substantial compliance with the applicable provisions of the accident prevention code or codes and guidelines currently approved or provided by the Maritime Administrator are brought to the prompt attention of the Master.

### .14 Ship's Port Arrival/Departure Check List.

Every Master shall establish and review the Ship's Port Arrival/Departure Safety Check List on arrival and before departure and the vessel loading/unloading procedures for the safe navigation and operation of the ship.

Maritime Act Section 811.

### .15 Nautical Publications.

The Master shall ensure that adequate and up-to-date charts, sailing directions, lists of lights, notices to mariners, tide tables and all other nautical publications necessary for the intended voyage are carried by the vessel.

### .16 Security.

**a.**  The Master shall have overriding authority and responsibility to make decisions with respect to the security of the ship, and the Company shall ensure that the Company Security Officer (CSO), Master and Ship Security Officer (SSO) are given necessary support.

**b.**  The SSO shall be responsible for the security of the ship, including implementation and maintenance of the ship security plan and for the liaison with the CSO and the Port Facility Security Officer (PFSO) and shall, if other than the Master, be accountable to the Master.

### .17 Documented Inspections.

Frequent and documented inspections available for review shall be carried out on board vessels, by or under the authority of the Master, with respect to:

**a.**  seafarer accommodations for cleanliness, decently habitable and maintained in good state of repair;

    **b.**   sanitary facilities meeting minimum standards of health and hygiene, reasonable standards of comfort and maintained in good working order and state of repair;

    **c.**   adequate supplies of food and drinking water;

    **d.**   all spaces and equipment used for the storage and handling of food and drinking water meeting minimum standards of health and hygiene; and

    **e.**   galley and other equipment for the preparation and service of meals meeting minimum standards of health and hygiene, reasonable standards of comfort and maintained in good working order and state of repair;

### .18 Emergency Preparedness.

The Master shall prepare an annual program for drills and exercises in accordance with the Company Guidelines or SMS to meet the requirements of the ISM Code, Part A-8, to ensure proper training for emergency actions in different types of situations is carried out throughout the year.

## 7.42   Medical Care of Officers and Crew.

### .1   Responsibility of Shipowner/Operator.

Shipowners and Operators shall ensure that health protection and medical care (including essential dental care) are provided in accordance with the ILO Standards for seafarers working on board vessels taking into consideration cultural and religious backgrounds are maintained which:

    **a.**   ensures the application to seafarers of any general provisions on occupational health protection and medical care relevant to their duties, as well as of special provisions specific to work on board vessels;

    **b.**   gives health protection and medical care as comparable as possible to that which is generally available to workers ashore, including prompt access to the necessary medicines, medical equipment and facilities for diagnosis and treatment and to medical information and expertise;

    **c.**   gives seafarers the right to visit a qualified medical doctor or dentist without delay in ports of call, where practicable;

    **d.**   ensures that, to the extent consistent with the Maritime Act and practice, medical care and health protection services while a seafarer is on board a vessel or landed in a foreign port are provided free of charge to seafarers;

    **e.**   are not limited to treatment of sick or injured seafarers but include measures of a preventive nature; and

    **f.**   provide for the use of a standard medical report form, the contents of which shall be kept confidential and shall only be used to facilitate the treatment of seafarers.

### .2   Hospital.

Vessels carrying 15 or more seafarers and engaged in a voyage of more than three (3) days' duration shall provide separate hospital accommodation to be used exclusively for medical

purposes and that will, in all weathers, be easy of access, provide comfortable housing for the occupants and be conducive to their receiving prompt and proper attention. Vessels engaged in coastal trade and capable of reaching qualified medical care and medical facilities within eight (8) hours and vessels or offshore installations capable of providing medical evacuation by helicopter may be exempted from this requirement.

**.3   Medical Doctor.**

Vessels carrying 100 or more persons and ordinarily engaged on international voyages of more than three (3) days duration shall carry a qualified medical doctor who is responsible for providing medical care. Certain alternative equivalent arrangements may be considered for offshore installations.

**.4   Standard of Competence for Medical First Aid/Medical Care.**

Vessels which do not carry a medical doctor shall be required to have one (1) seafarer on board who is in charge of medical care and administering medicine as part of their regular duties and one (1) seafarer on board competent to provide medical first aid. A single individual may serve in both capacities, provided he/she is certified for the two (2) competencies. Seafarers designated to provide medical first aid or designated to take charge of medical care shall meet the standard of competence respectively specified in the applicable sections of STCW.

**.5   Medicine Chest.**

Each vessel shall carry and maintain an adequate medicine chest bearing in mind the number of persons aboard and the nature and duration of the voyage. In the determination of the contents of the chest, consideration shall be given to the minimum acceptable recommendations of the International Labor Organization, the World Health Organization or as established by the Maritime Administrator for the vessel type. The medicine chest and its contents, as well as the medical equipment and medical guide carried on board, shall be properly maintained and inspected at regular intervals, not exceeding 12 months, by responsible persons who shall insure that the labeling, expiry dates and conditions of storage of all medicines and directions for their use are checked and all equipment functioning as required.

**.6   Medical Guide.**

All required medicine chests must contain the most recent medical guide sufficiently detailed to assist persons other than a ship's doctor in administering to the ordinary needs of sick or injured persons on board and without supplementary medical advice by radio or radiotelephone.

    **a.**   The most recent editions of the International Medical Guide for Ships and the Medical First Aid Guide for Use in Accidents Involving Dangerous Goods shall be carried on board vessels.

    **b.**   Where a cargo which is classified dangerous has not been included in the most recent edition of the Medical First Aid Guide for Use in Accidents Involving Dangerous Goods, the necessary information on the nature of the substances, the risks involved, the necessary personal protective devices, the relevant medical procedures and specific antidotes shall be made available to the seafarers. Such specific antidotes and personal protective devices shall be on board whenever dangerous goods are carried. This information shall be integrated with the vessel's policies and programs on occupational safety and health.

**.7   Medical Advice.**

    **a.**   Vessels shall carry a complete and up-to-date list of radio stations through which medical

advice can be obtained and, if equipped with a system of satellite communication, carry an up-to-date and complete list of coast stations through which medical advice can be obtained.

**b.** The Master, and such other officers as the Master may designate at his or her discretion, shall be instructed in the use of the ship's medical guide and the medical section of the most recent edition of the International Code of Signals so as to enable them to make full use of all available medical advice by radio or radiotelephone and in the providing of information to assist a doctor in giving such advice.

### 7.43    Health and Safety Protection and Accident Prevention.

**.1**    Each shipowner shall ensure that seafarers are provided with occupational health protection and live, work and train on board vessels in a safe and hygienic environment.

**.2**    Compliance with the requirements of applicable international instruments on acceptable levels of exposure to workplace hazards on board vessels and on the development and implementation of vessel occupational safety and health policies and programs shall be considered as meeting the requirements of this regulation.

**.3**    Masters, officers, and other seafarers shall have no more than 0.04% blood alcohol level while performing designated safety, security, and marine environmental duties.

a.    Watchkeeping personnel shall have no more than 0.04% blood alcohol level during watchkeeping duties, and watchkeeping personnel shall not consume alcohol within four (4) hours prior to serving as a member of a watch.

**.4**    Illicit drug possession, use or trafficking shall be prohibited.

Maritime Act Section 864.

### 7.44    Accommodations, Recreational Facilities, Food, Water and Catering.

**.1    Accommodations and Recreational Facilities.**

**a.**    Each shipowner shall ensure that ships that fly the RMI flag are provided with decent accommodations and recreational facilities for seafarers working or living on board, or both, and maintained consistent with promoting the seafarers' health and well-being in accordance with the MLC, 2006.

**b.**    The Maritime Administrator may, as and when necessary, prescribe by Marine Notice and/or Marine Guideline standards appropriate to the provision of health and safety protection and accident prevention, in light of the specific needs, customs and habits of the crew.

**.2    Food, Water and Catering.**

**a.**    There shall be maintained on board the following minimum standards:

**(1)**    food and drinking water supplies, having regard to the number of seafarers on board, their religious requirements and cultural practices as they pertain to food, and duration and nature of the voyage, shall be suitable in respect of quantity, nutritive value, quality and variety;

**(2)**    the organization and equipment of the catering department shall be such as to permit the provision to the seafarers of adequate, varied and nutritious meals prepared and

served in hygienic conditions; and

**(3)** catering staff shall be properly trained or instructed and documented as competent for their positions.

**(4)** cooks shall be at least 18 years of age and documented as competent for their positions.

**b.** The Maritime Administrator may, as and if necessary, prescribe scales of provisions appropriate to the customs and habits of the crew.

**c.** Seafarers living on board a vessel shall be provided with food free of charge during the period of engagement.

Maritime Act Sections 103, 863 and 864.

**7.45   Conditions of Employment.**

**.1   Seafarer Employment Agreement.**

**a.** The conditions of employment and shipboard living arrangements on board every vessel shall be subject to examination and approval by the Maritime Administrator. Such conditions and arrangements shall be approved if they are not in conflict with the requirements of the Maritime Act and:

**(1)** are embodied in a clearly written and legally enforceable contract for seafaring labor; or

**(2)** are embodied in a clearly written and legally enforceable labor contract concluded between a shipowner or shipowners organization and a seafarers organization constituted in accordance with the substantive provisions of the applicable International Conventions; or

**(3)** are ordered in accordance with the Maritime Act by a court having jurisdiction over both the shipowner and seafarers concerned; or

**(4)** are otherwise substantially equivalent to those specified in the applicable International Conventions.

**b.** Where the provisions of a seafarer's collective bargaining agreement conflict with or deviate from the Maritime Act and/or these Regulations with regard to the employment of the seafarer on vessels registered in accordance with Chapters 1 through 8 of the Maritime Act, the Maritime Administrator may, at its sole discretion, determine that the conflicting or deviating provision is substantially equivalent to, and shall satisfy the requirements of, the Maritime Act or these Regulations, provided it is not inconsistent with or of a lesser standard than the Maritime Act or Regulations.

**c.** Seafarers' employment agreements shall be signed by both the seafarer and the shipowner/operator, or a representative of the shipowner/operator, and each shall retain an original copy of the signed agreement for the duration of its term, provided that:

**(1)** where this may not be possible at the time of joining a vessel, the employment agreement may be signed in the original by the shipowner/operator or its representative in its office and sent electronically to the crewing agency where the electronic copy of

the agreement is received and signed in the original by the seafarer allowing the seafarer to hold an agreement with his/her own original signature when joining the vessel. Two (2) copies of the agreement signed in the original by the shipowner/operator or its representative shall then be forwarded to the vessel as soon as reasonable and, upon receipt, the seafarer shall countersign two (2) originals of the agreement and return one to the shipowner/operator or its representative; or

**(2)** in lieu of original shipowner/operator or seafarer signatures, the Administrator will accept electronic signatures on seafarers' employment agreements.

**(3)** regardless of the procedure used by the shipowner/operator to achieve compliance with the above signature requirements for employment agreements, the procedure must be properly documented.

**d.** Seafarers' employment agreements shall be agreed to by the seafarer under conditions which ensure that the seafarer has an opportunity to review and seek advice on the terms and conditions in the agreement and freely accepts them with a sufficient understanding of the seafarer's rights and responsibilities before signing.

**e.** Seafarers' employment agreements shall as a minimum contain the following particulars:

**(1)** the seafarer's full name, date of birth and birthplace;

**(2)** the name and address of the shipowner/operator, or a representative of the shipowner/operator;

**(3)** the place at which and date on which the seafarer's employment agreement is entered into;

**(4)** the capacity in which the seafarer is to be employed;

**(5)** the amount of the seafarer's wages or the formula for calculating such wages;

**(6)** the amount of paid annual leave or the formula for calculating such paid annual leave;

**(7)** the termination of the agreement and the conditions thereof, including:

**i.** if the agreement has been made for an indefinite period, the conditions which entitle either party to terminate the agreement, as well as the required period of notice, provided that such period shall not be less for the shipowner than for the seafarer;

**ii.** if the agreement has been made for a definite period, the date fixed for the termination of the agreement; and

**iii.** if the agreement has been made for a voyage, the port of destination and the time period for discharge of the seafarer after completion of the voyage;

**(8)** the health and social security protection benefits to be provided to the seafarer by the shipowner, including a statement as to applicable national provisions;

**(9)** the seafarer's entitlement to repatriation; and

(10) reference to a collective bargaining agreement, if applicable.

**f.** Should there be a restriction on the term of a seafarer employment agreement in an applicable collective bargaining agreement, such a restriction shall also be applicable to the seafarer employment agreement for service onboard an RMI vessel, provided the restriction is not in conflict with RMI laws or regulations. However, absent such a restriction, the seafarer's ability to extend his/her contract beyond its expiration date or 12 months, if so desired, would not be limited, subject to mutual agreement between the seafarer and the shipowner.

**g.** Seafarers and shipowners shall provide for minimum notice periods for the early termination of a seafarer's employment agreement. The duration of these minimum periods shall be determined after consultation with the shipowners' and seafarers' organizations concerned, but shall not be shorter than seven (7) days.

**h.** Any seafarer may request termination of the seafarer's employment agreement on shorter notice than is required by the employment agreement or without notice on grounds of injury, illness, compassionate or other urgent reasons. Such termination shall be executed without penalty of whatever nature to the seafarer.

**i.** To the extent not prohibited by the laws, regulations and practices of the RMI, seafarers' employment agreements shall be understood to incorporate any applicable collective bargaining agreement. Clear information, including any labor contract, shall be made available to the crew on board every vessel as to the conditions of employment thereon.

**j.** Evidence of contractual or similar arrangements shall be maintained by the shipowner/operator for seafarers who are not employees of the shipowner/operator.

**k.** Effective upon entry into force of the 2018 MLC, 2006 amendments, in the event that a seafarer is held captive on or off the ship because of acts of piracy or armed robbery, regardless of whether the expiration date of the seafarer's employment agreement has passed or whether either party has given notice to suspend or terminate the seafarer's employment agreement:

(1) the seafarer's employment agreement shall continue to have effect; and

(2) wages and other entitlements, including the remittance of any allotments, under the seafarers' employment agreement shall continue to be paid until either the seafarer is released and repatriated or, where the seafarer dies in captivity, the date of death is determined.

## .2   Recruitment and Placement Services.

The employment of seafarers by shipowners/operators through the use of recruitment and placement services based in countries or territories to which MLC, 2006, does not apply shall be prohibited unless it can be demonstrated by the shipowner/operator, as far as practicable, that such services meet the relevant requirements set forth by MLC, 2006.

Maritime Act Chapter 8, Part III.

**7.46    Shipping Articles.**

**.1    Official Form Required.**

 **a.** Shipping Articles, sometimes referred to as Articles of Agreement, is an agreement entered into between the ship's Master and the seafarers aboard his or her ship. It shall be in the English language. The Maritime Administrator shall prescribe by Marine Notice the form and contents of the Articles of Agreement. No other form shall be used in lieu of the official form except that a foreign language version may be appended thereto or otherwise made a part thereof; provided, however, that on any vessel the initial form of Shipping Articles prescribed therein shall be required only upon expiration of the Articles currently in effect or within one (1) year from the effective date of this Regulation, whichever is later.

 **b.** For those vessels which have instituted a different format, the language shall reference Regulation 7.46.1, the terms of which when not specifically stated in the new format are to be considered incorporated by such reference. Any such new format shall be proposed to the Maritime Administrator for review and approval prior to use.

**.2    Definitions.**

For the purposes of this regulation only, the following definitions shall apply:

 **a.** Seafarers means any and all members of the crew and officers other than the Master and pilots, employed or engaged in any capacity on board any vessel, unless specified otherwise.

 **b.** Crew means collectively those other than officers and Master, serving in any capacity on board a vessel.

 **c.** Hotel Staff means those persons on board providing services to passengers who are not regularly assigned to perform shipboard safety and pollution prevention related duties and are not part of the ship's marine crew as defined above. Accordingly, hotel staff are not required to sign Shipping Articles; however, they may be parties to other contractual arrangements.

 **d.** Industrial Personnel means all persons who are transported or accommodated on board for the purpose of offshore industrial activities performed onboard other ships and/or offshore facilities, including those persons on board offshore installations or vessels engaged in the exploration, exploitation and production of energy, mineral and marine resources or maintenance and repair work who are not regularly assigned to perform shipboard safety and pollution prevention related duties and are not part of the vessel's marine crew as defined above. Accordingly, industrial personnel are not required to sign Shipping Articles; however, they may be parties to other contractual arrangements.

**.3    Time of Signing-on Articles.**

Every seafarer joining a vessel to commence employment on board shall sign the Shipping Articles prior to the vessel's departure from the port at which the seafarer so joined the vessel. The Master shall officiate at the signing-on of each seafarer and shall sign his or her name to the Shipping Articles in attestation of he or she having so acted. Any seafarer signing such Shipping Articles must be given an opportunity to examine and seek advice on the agreement before signing as well as such other facilities as are necessary to ensure that they have freely entered into an agreement with the Master with a sufficient understanding of their rights and responsibilities. The seafarer concerned must be provided with a copy of the terms of the Shipping Articles.

**.4   Signing-Off of Articles Not a Waiver.**

The signing-off of Shipping Articles by a seafarer at the time of his or her discharge from employment on board shall not constitute a waiver on his or her part of any claims he or she may have against the shipowner, the vessel or its Master at that time.

Maritime Act Chapter 8, Part III.

**7.47   Required Certification.**

**.1   Training and Qualifications.**

**a.**   Seafarers shall not work on vessels registered under the Maritime Act unless they are trained or certified as competent or otherwise qualified to perform their duties.

**b.**   Seafarers shall not be permitted to work on a vessel registered under the Maritime Act unless they have successfully completed basic training for personal safety on board ship.

**c.**   Training and certification in accordance with the requirements of the regulations of STCW and as established by the Maritime Administrator shall be considered as meeting the requirements of sub-paragraphs a. and b. of this regulation.

**.2   Officer's Certificate of Competence.**

**a.   Appropriate Certification.**

Shipowners and Operators responsible for employing seafarers for service on board vessels shall ensure that seafarers assigned to any vessel owned or managed by shipowner/operator hold appropriate certificates in accordance with the provisions of STCW and as established by the Maritime Administrator, or an official who is authorized to act for and on behalf of the Maritime Administrator.

**b.   Certificate of Competence or Temporary Permit.**

Every Mate, Chief Engineer, Watch Officer and Radio Officer shall cause a copy of his or her Certificate of Competence or Temporary Permit to be provided to the ship's Master as soon as practicable after reporting on board a vessel for duty. Willful failure of any officer to comply with this provision may be grounds for the suspension or revocation of his or her Certificate of Competence or Temporary Permit.

**c.   Penalty for Non-possession.**

The penalty provision in Section 109(4) of the Maritime Act shall also apply where a Master has allowed any function or service in any capacity required to be performed by a person holding an appropriate Certificate of Competence, to be performed by a person not holding the required certificate, a valid dispensation or having the documentary proof required by Regulations of STCW and as established by the Maritime Administrator.

Maritime Act Sections 103 and 805.

**.3   Seafarer's Identification and Record Books.**

**a.   Requirements.**

Each person employed on board a vessel registered under the Maritime Act, other than those persons exempted by the Administrator in accordance with Resolution VII adopted by the 94th (Maritime) session of the International Labour Conference or National law or regulation, shall have in his or her possession an official RMI Seafarer's Identification and Record Book and/or card, as applicable, issued by an official of the Maritime Administrator, containing any certificates of special qualification issued to the holder by an official of the Maritime Administrator, and in which all service at sea shall be entered and certified by the Master. Such entries for service at sea shall not contain any statement as to the quality of work of the seafarer concerned or as to their wages.

**b.   Qualifications.**

As a prerequisite, the applicant must demonstrate having received and successfully completed basic training in accordance with the requirements of the regulations of STCW and as established by the Maritime Administrator.

**c.   Validity and Renewal.**

The Seafarer's Identification and Record Book shall be valid for a period of five (5) years, and shall be subject to renewal for periods of five (5) years thereafter.

**d.   Penalty for Non-possession.**

The Master and/or owner of a vessel shall be liable to a penalty of US$250 for each person employed on board the vessel who does not possess a current and valid official Identification and Record Book. Such penalty shall be remitted if an official Identification and Record Book is obtained within 30 days of the inspection or other report which establishes the default. This penalty can only be imposed by the Maritime Administrator.

**.4   Medical Certificates.**

Seafarers shall not work on a vessel registered under the Maritime Act unless they are certified as medically fit to perform their duties.

**a.   Requirements.**

Each seafarer employed on board a vessel registered under the Maritime Act shall be in possession of a physical examination certificate in the official form required by the RMI; STCW; or by another State Party to the ILO Convention Concerning the Medical Examination of Seafarers and such physical examination certificate shall be in compliance with the requirements of the MLC, 2006, attesting to the holder's medical fitness for duty. The certificate must be signed by a medical practitioner licensed in the place of examination and issued not more than two (2) years previous to the date of signing of the Articles of Agreement in force. The medical certificate shall state in particular that:

**(1)** the hearing and sight of the seafarer concerned, and the color vision in the case of a seafarer to be employed in capacities where fitness for the work to be performed is liable to be affected by defective color visions, are all satisfactory; and

**(2)** the seafarer is not suffering from any medical or psychological condition likely to be aggravated by service at sea or to render them unfit for such service or to endanger the health of other persons on board.

**b.   Refusal of Medical Certificate.**

Any seafarer who has been refused a certificate or has had a limitation imposed on their ability to work shall be given the opportunity to have a further examination by another independent medical practitioner or by an independent medical referee.

**c.   Valid Time Period.**

Unless a shorter period of required by reason of the specific duties to be performed by the seafarer concerned or is required under STCW:

**(1)** the maximum period of validity for a medical certificate shall be two (2) years unless the seafarer is under the age of 18, in which case the maximum period of validity shall be one (1) year.

**(2)** the maximum period of validity for a color vision certificate shall be six (6) years.

Should the period of validity of a certificate expire in the course of a voyage, the certificate shall continue in force until the next port of call where the seafarer can obtain a medical certificate from a qualified medical practitioner, provided that the period shall not exceed three (3) months.

**d.   Urgent Circumstances.**

In urgent circumstances a person may be employed without holding a currently valid official medical certificate until the next port of call where the seafarer can obtain a medical certificate from a qualified medical practitioner, provided that:

**(1)** the period of such permission does not exceed three (3) months; and

**(2)** the seafarer concerned is in possession of a medical certificate which is expired for a period not greater than six (6) months.

**.5   Availability of Seafarers Documents.**

Shipowners and operators shall ensure that documentation and data relevant to all seafarers employed on board a vessel registered under the Maritime Act are maintained and readily accessible, and include, without being limited to, documentation and data on their experience, training, medical fitness and competence in assigned duties.

**7.48** **Certificates of Service.**

In the absence of an official Seafarer's Identification and Record Book, the detailed sea service of each person employed on board a vessel must be certified in writing, separately for each capacity served in, and such certificate shall bear the signature of the Master and the seal or stamp of the vessel, shall not contain any statement as to the quality of work or wages, and shall be in the following form:

Certificate of Service

| | | | |
|---|---|---|---|
| (a) | Name of Seafarer | (i) | Total Service (Months and Days) |
| (b) | Citizenship | (j) | Name of Vessel (Steam or Motor) |
| (c) | Rank or Rating | (k) | Official Number |
| (d) | Book or Certificate Number | (l) | Port of Registry |
| (e) | Place of Engagement | (m) | Gross Tonnage |
| (f) | Date of Engagement | (n) | Propulsion Power (kW) |
| (g) | Place of Discharge | (o) | Nature of Voyage |
| (h) | Date of Discharge | (p) | Remarks |

I hereby certify to the best of my knowledge that all entries herein were made by me and are correct. In witness whereof, I have this date affixed my signature and the seal or stamp of the vessel.

_____          _____

Signature of Master                              Date

Maritime Act Sections 103 and 825.

**7.49** **Minimum Age.**

**.1** **Prohibition.**

In accordance with § 826 of the Maritime Act, persons under the age of 16 years shall not be employed or work on vessels of the RMI.

**.2** **Nighttime Work.**

The employment or engagement of seafarers less than 18 years of age for work at night shall be prohibited. For the purposes of this Regulation, "night" shall be defined as the period starting at 20:00 hrs and ending at 06:00 hrs.

**.3** **Nighttime Work Exceptions.**

An exception to strict compliance with the night work restriction may be made by the Maritime Administrator or his representatives when:

**a.** the effective training of the seafarers concerned, in accordance with established programs and schedules, would be impaired; or

**b.** the specific nature of the duty or a recognized training program requires that the seafarers covered by the exception perform duties at night and the authority determines, after consultation with the organizations of the shipowners and the seafarers concerned, that the work will not have a detrimental impact on their health or well-being.

**.4   Hazardous Work.**

The employment of seafarers less than 18 years of age for work which is likely to jeopardize their health or safety shall be prohibited. The types of employment or work which is considered "hazardous" shall be determined by the shipowner/operator in accordance with the relevant international standards and Marine Notice.

Maritime Act Section 826.

**7.50   Benefit of Compensation for Loss of Life.**

**.1   Amount of Compensation.**

The amount of direct compensation for loss of life for each seafarer shall aggregate no less than US$10,000 or its equivalent in foreign currency, regardless of the seafarer's nationality, rank, seniority or other circumstances.

**.2   Exceptions.**

The shipowner shall bear the costs of direct compensation for loss of life upon the death of a seafarer from any cause, except:

**a.**   if death resulted from the willful act of the seafarer;

**b.**   if death developed directly from a condition which was intentionally concealed from the employer at or prior to engagement under the Articles; or

**c.**   if death was caused directly by war or an act of war, declared or undeclared. But this clause shall not apply if at the time of the act the vessel had entered a known zone of international hostility for the purpose of trade.

**.3   Medical Examination.**

A seafarer shall not be entitled to the benefit of a direct compensation for loss of his or her life if he or she avoids or refuses a medical examination at the time of his or her employment.

**.4   Presumption of Death.**

If the body of a missing Master or seafarer has not been found within six (6) months after: (a) an incident of damage involving the vessel on which he or she sailed, or (b) an incident which otherwise points to the reasonable conclusion that the seafarer is dead, he or she shall be presumed dead and the direct compensation for loss of life shall become due and payable. Such presumption shall be rebuttable in a court of competent jurisdiction, and where the presumption is rebutted any such compensation paid shall be recoverable by the shipowner.

**.5   Shipowner's Obligation.**

The shipowner's obligation to provide the benefit of direct compensation for loss of life shall arise at the earlier of the times indicated below:

**a.**   upon signing on the Articles; or

**b.**   when the seafarer, at the request of the shipowner and prior to signing on the Articles,

commences travel to join his or her assigned vessel. For the purpose of this Regulation the seafarer shall be deemed to be employed or engaged on board the assigned vessel from the commencement of his or her travel.

**.6    Termination of Obligation.**

The shipowner's obligation to provide the benefit of direct compensation for loss of life shall terminate at the later of the times indicated below:

    **a.**    upon signing off the Articles; or

    **b.**    when the seafarer has returned from his or her assigned vessel to his or her place of residence or declared destination. For the purpose of this Regulation the seafarer shall be deemed to be employed or engaged on board the assigned vessel until he or she has reached his or her place of residence or declared destination.

**.7    Suspension of Obligation.**

The shipowner's obligation to provide the benefit of direct compensation for loss of life shall be suspended:

    **a.**    upon and during the period of a desertion as defined in the Maritime Act; or

    **b.**    during any unauthorized and unreasonable delays by the seafarer when traveling to his or her assigned vessel or from his or her assigned vessel to his or her residence or declared destination, or during any unauthorized and unreasonable deviations from the prescribed or customary travel routes.

**.8    Seafarer's Residence.**

Unless otherwise agreed in writing between the seafarer and the Master or the shipowner, the expression "residence" shall mean the seafarer's home address as shown in the Articles.

**.9    Beneficiaries.**

    **a.**    The compensation hereunder shall be paid to the seafarer's designated beneficiary or beneficiaries, or in the absence of such designated beneficiary or beneficiaries, to his or her estate or to his or her personal legal representative.

    **b.**    The designated beneficiaries shall either be entered in an appropriate space in the columnar entries of the Articles of Agreement or on a separate form to be provided by the shipowner.

**.10    Other Death Benefits.**

The amount of the direct compensation payable under this Regulation shall be determined by aggregation and subtraction of any other lump-sum death benefits in favor of the seafarer which are also provided or contributed to by the shipowner.

**.11    Satisfaction of Obligation.**

The shipowner shall secure his or her obligation to provide a benefit of direct compensation for loss of life by any one (1) or a combination of the following:

**a.** a guarantee from a P&I Club approved by the Maritime Administrator, whereby the Club guarantees payment of the compensation hereunder; or

**b.** a life insurance policy from an insurance company approved by the Maritime Administrator; or

**c.** in lieu of the guarantee or life insurance, by depositing and maintaining at all times a payment bond from a bonding company approved by the Maritime Administrator, in an amount equal to US$10,000 times the number of seafarers on the one (1) vessel in his or her fleet with the largest number of seafarers; or

**d.** participation in an approved national or international scheme.

**.12 Certification.**

**a.** If the shipowner participates in a national or international plan approved by the Maritime Administrator, he or she shall annually file with the Maritime Administrator a certificate or other satisfactory evidence of both participation in and contribution to the approved plan.

**b.** The shipowner or his or her P&I Club or his or her insurance company or his or her bonding company shall file with the Maritime Administrator a certificate of insurance or guarantee or participation for every vessel, or a payment bond as required under paragraph 7.50.11c. Such certificate or bond shall be renewed and refiled 10 days before its expiration date. Such certificate or bond may be issued for a period from inception until canceled.

**c.** Certificates of Insurance shall be in substantially the following form, unless prescribed otherwise by a convention to which the Republic of the Marshall Islands is a signatory:

REPUBLIC OF THE MARSHALL ISLANDS
OFFICE OF THE MARITIME ADMINISTRATOR
CERTIFICATE OF INSURANCE PURSUANT TO
MARITIME REGULATION 7.50

NOT TRANSFERABLE

NAME OF VESSEL:
OFFICIAL NUMBER:
PORT OF REGISTRY: MAJURO
NAME AND ADDRESS OF OWNER:

This is to certify that there is in force in respect of the above-named vessel while in the above ownership a policy of insurance satisfying the requirements of Maritime Regulation 7.50.

PERIOD OF INSURANCE:       FROM

                                                  TO

The insurer may cancel this Certificate only by giving 30 days written notice of cancellation to the Maritime Administrator whereupon the liability of the insurer hereunder shall cease as from the date of the expiry of the said period of notice, but only as regards incidents arising thereafter.

DATE:

This Certificate has been issued for and on behalf of:

_____
    (NAME OF INSURANCE COMPANY)

BY _____
    (NAME AND TITLE OF OFFICER OR AUTHORIZED MANAGER OR AGENT)

**d.** Certificates of Guarantee of Payment shall be substantially in the following form unless prescribed otherwise by a convention to which the Republic of the Marshall Islands is a signatory:

REPUBLIC OF THE MARSHALL ISLANDS
OFFICE OF THE MARITIME ADMINISTRATOR
GUARANTEE OF PAYMENT PURSUANT TO
MARITIME REGULATION 7.50

NAME OF VESSEL:
OFFICIAL NUMBER:
PORT OF REGISTRY: MAJURO
NAME AND ADDRESS OF OWNER:

This is to certify that there is in force in respect of the above-named vessel while in the above ownership a guarantee of payment satisfying the requirements of Maritime Regulation 7.50.

PERIOD OF GUARANTEE:     FROM

                         TO

The guarantor warrants that it will pay the direct compensation for loss of life provided for under Section 837 of the Maritime Act directly to the beneficiaries and/or legal representatives of the deceased seafarer upon their demand, if for any reason the Owner does not pay the said compensation. The guarantor further warrants that it will not raise any other defenses against claims for such compensation except those available to the Owner under the Regulation 7.50.

The guarantor may cancel this guarantee only by giving 30 days written notice of cancellation to the Maritime Administrator, whereupon the obligations of the guarantor hereunder shall cease as from the date of the expiry of the said period of notice, but only as regards incidents arising thereafter.

DATE:

This Guarantee has been issued for and on behalf of:

_____
        (NAME OF GUARANTOR)


BY _____
    (NAME AND TITLE OF OFFICER OR AUTHORIZED MANAGER OR AGENT)

Maritime Act Section 837.

**7.51    Hours of Work and Hours of Rest.**

**.1    Terms Used.**

**a.** hours of work shall mean the time during which seafarers are required to do work on account of the vessel;

**b.** hours of rest shall mean the time outside hours of work; this term does not include short breaks;

**c.** normal hours of work in port and at sea shall mean eight (8) per day.

**.2    Limits on Hours of Rest.**

**a.    Standard**

In accordance with the requirements of the MLC, 2006, the Maritime Administrator has established the provisions for hours of rest to be the standard to which shipowners and operators shall comply. Shipowners and operators shall, within the following limits, fix a minimum number of hours of rest which shall be provided in a given period of time. Shipowners and operators shall take account of the danger posed by fatigue of seafarers, especially those whose duties involve navigational safety and the safe and secure operation of the vessel.

**b.    Minimum Rest Hours**

The minimum number of hours of rest shall not be less than:

**(1)** 10 hours in any 24-hour period; and,

**(2)** 77 hours in any seven-day period.

**c.    Additional Provisions.**

**(1)** Hours of rest may be divided into no more than two (2) periods, one of which shall be at least six (6) hours in length, and the interval between consecutive periods of rest shall not exceed 14 hours.

**(2)** Musters, fire-fighting and lifeboat drills, and drills prescribed by these Regulations and by international instruments, shall be conducted in a manner that minimizes the disturbance of rest periods and does not induce fatigue.

**(3)** When a seafarer is on call, such as when a machinery space is unattended, the seafarer shall have an adequate compensatory rest period if the normal period of rest is disturbed by call-outs to work.

**(4)** Night work of seafarers under the age of 18 shall be prohibited unless the effective training of the seafarers concerned would be impaired or the specific nature of the duty or a recognized training program requires that the seafarers covered by this exception perform duties at night and it has been determined that the work will not be detrimental to their health or well-being.

**d.   Right of the Master.**

Nothing in this section shall be deemed to impair the right of the Master of a ship to require a seafarer to perform any hours of work necessary for the immediate safety of the ship, persons on board or cargo, or for the purpose of giving assistance to other ships or persons in distress at sea.

**(1)**   Accordingly, the Master may suspend the schedule of hours of rest and require a seafarer to perform any hours of work necessary until the normal situation has been restored.

**(2)**   As soon as practicable after the normal situation has been restored, the Master shall ensure that any seafarers who have performed work in a scheduled rest period are provided with an adequate period of rest.

**.3   Record.**

**a.**   A table with the shipboard working arrangements shall be prepared in accordance with the standardized format established by the Maritime Administrator, and shall be posted in an easily accessible location which shall contain for every position at least:

**(1)**   the schedule of service at sea and service in port;

**(2)**   the minimum hours of rest required by these Regulations or applicable collective agreement.

**b.**   Records of seafarers' daily hours of rest shall be maintained to allow monitoring of compliance with these Regulations. The records shall be in a standardized format established by the Maritime Administrator. The records may be maintained in electronic form.

**c.**   The table of shipboard working arrangements and records of daily hours of rest shall be in the working language(s) of the ship and in English. The seafarer shall receive a copy of the records pertaining to him or her which shall be endorsed by the master, or a person authorized by the Master, and by the seafarer.

**.4   Payment of Wages.**

**a.   Terms Used.**

**(1)**   Basic pay or wages means the pay, however composed, for normal hours of work and does not include payments for overtime worked, bonuses, allowances, paid leave or any other additional remuneration;

**(2)**   Consolidated wage means a wage or salary which includes the basic pay and other pay-related benefits that may include compensation for all overtime hours which are worked and all other pay-related benefits, or it may include only certain benefits in a particular consolidation.

**(3)**   These arrangements shall be reflected as an addendum to the Articles of Agreement or contained in the seafarer's employment agreement.

**b.  Wages.**

**(1)**  The shipowner shall ensure that payments due to seafarers working on vessels are made at no greater than monthly intervals and in accordance with any applicable seafarer's employment agreement or collective bargaining agreement.

**(2)**  Seafarers shall be given a monthly account (paper or electronic) of the payments due and the amounts paid, including wages, additional payments and the prevailing market rate or official published rate of exchange used where payment has been made in a currency or at a rate different from the one to which agreed. Seafarers will be provided with a private secure access to electronic accounts.

**(3)**  The shipowner shall take measures to provide seafarers with a means to transmit all or part of their earnings to their families or dependents or legal beneficiaries.

**(4)**  Any charge of service to transmit seafarer earnings shall be of reasonable amount, and the rate of currency exchange, unless provided otherwise, shall be at the prevailing market rate or the official published rate and not unfavorable to the seafarer.

Maritime Act Sections 827 and 831.

**c.  Salary Plans.**

**(1)**  The shipowner may implement a fixed salary plan, which establishes a practical, modern salary system that will ensure a regular monthly income to the seafarer while on active service and during leave periods. Such arrangements are to be agreed between the Master and the seafarer and be reflected as an addendum to the Articles of Agreement.

**(2)**  For the purpose of the penalty provision in Part 8, Section 827(4) of the Maritime Act, it shall be deemed that no default has occurred under the following controlled circumstances:

**i.**  There exists an offshore based account system which utilizes an electronic transfer of wage payments to perform the wage accounting function, provided that individual wage account slips are transmitted to the ship electronically for the officer/seafarer and mailed to the officer/seafarer's mailing address by a specified date, and

**ii.**  The officer/seafarer receives a shipboard transaction statement before signing off the ship, which shall be followed by a final wage account slip to the officer/seafarer's mailing address by a specified date in the month following the date on which the sign-off occurs.

**(3)**  These arrangements are to be agreed between the Master or the shipowner/operator and the seafarer and reflected as an addendum to the Articles of Agreement or contained in the seafarer's employment agreement.

Maritime Act Section 827.

**d.  Profit-Sharing.**

Although the right to wages on the part of any seafarer shall not be dependent upon the earning of freight by the vessel, nothing in this section shall be construed to prevent any profit-sharing plan by which the officers and crew are to be compensated with profits in addition to their established wages.

Maritime Act Section 835.

**.5  Overtime.**

**a.  Terms Used.**

For the purposes of calculating overtime compensation:

**(1)**  Normal working hours in port and at sea shall mean eight (8) hours per day.

**(2)**  Overtime shall mean work performed over and above normal working hours.

**b.  Rate.**

The rate or rates of compensation for overtime shall be for no less than one and one-quarter times the basic pay or wages per hour, <u>unless otherwise stipulated in a seafarer's employment agreement or collective bargaining agreement</u>.

**c.  Exceptions.**

Work performed outside of normal working hours shall not be compensated for as overtime when necessary for the safety of the vessel, its passengers, officers, crew, cargo or for the saving of other vessels, lives or cargo, or for the performance of fire, lifeboat, or other emergency drills. Such work shall be conducted in a manner that minimizes the disturbance of rest periods and does not induce fatigue.

**d.  Alternatives.**

In the special circumstances of lightering, drilling, offshore supply or other specialized maritime operations not constituting an international voyage of more than 24 hours duration, the shipowner may agree with the crew in writing that overtime is to be compensated by additional paid vacation or by additional tangible benefits other than money.

Maritime Act Section 842.

**7.52  Social Protections.**

**.1  Liability Insurance.**

Each shipowner shall be required to maintain at all times satisfactory third party liability insurance as described in Regulation 2.23.2 which covers, among other things, all reasonable costs incurred in meeting the shipowner's obligations, under any circumstances, including insolvency, to provide for seafarer health protection, medical care, long-term disability, death, welfare measures, repatriation, abandonment and/or unemployment compensation.

**a.** The liability insurance required by 7.52.1 with respect to abandonment as defined in 7.52.7 shall be sufficient to cover:

**(1)** outstanding wages and other entitlements due from the shipowner to the seafarer under their employment agreement, a relevant collective bargaining agreement and RMI Maritime Act and RMI Maritime Regulations, limited to four (4) months of any such outstanding entitlements;

**(2)** All expenses reasonably incurred by the seafarer, including the cost of repatriation in accordance with 7.52.5; and

**(3)** The essential needs of the seafarer and any other reasonable costs or charges arising from the abandonment.

**b.** The liability insurance required by 7.52.1 with respect to long-term disability and death shall provide for the payment of all contractual claims covered by it which arise during the period of validity of such insurance. For the purpose of this regulation, contractual claims shall mean any claim which relates to death or long-term disability of seafarers due to an occupational injury, illness or hazard as set out in the RMI Maritime Act, the seafarers' employment agreement or collective agreement.

**.2  Security for Costs.**

In addition to the insurance coverage required by 7.52.1, the Maritime Administrator may at any time require a shipowner to obtain insurance, post a bond or provide other security to cover anticipated costs of obligations owed to the Master, officers and crew under any circumstances, subject to the provisions of the Maritime Act.

**.3  Satisfaction of Obligations for Social Protections.**

The shipowner shall secure his or her obligation to provide for repatriation and other obligations provided for in Regulation 7.52 by any one (1) or a combination of the following:

**a.** a guarantee, from a P&I Club approved by the Maritime Administrator, whereby the P&I Club guarantees payment of the shipowner's obligations hereunder; or

**b.** an insurance policy, from an insurance company approved by the Maritime Administrator, which covers the shipowner's obligations hereunder; or

**c.** by depositing and maintaining with the Administrator at all times a payment bond or financial guarantee, from a bonding company approved by the Maritime Administrator, in an amount equal to the shipowner's obligations for outstanding wages and other entitlements due to the seafarers on every vessel in the shipowner's fleet in accordance with their seafarers employment agreements, relevant collective bargaining agreements, RMI Maritime Act and Maritime Regulations; or

**d.** participation in a national or international plan, as approved or established by the Maritime Administrator.

**4   Certification.**

**a.**   If the shipowner secures his or her obligations with a guarantee from a P&I Club as provided in 7.52.3a, the shipowner or the P&I Club shall file with the Maritime Administrator a certificate of guarantee for every Marshall Islands flagged vessel in the shipowner's fleet.

**b.**   If the shipowner secures his or her obligations with an insurance policy as provided in 7.52.3b, the shipowner or the insurance company shall file with the Maritime Administrator a certificate of insurance for every RMI flagged vessel in the shipowner's fleet.

**c.**   If the shipowner secures his or her obligations with a payment bond or financial guarantee as provided in 7.52.3c, the shipowner or the bonding company shall file such payment bond with the Maritime Administrator.

**d.**   If the shipowner participates in a national or international plan as provided in 7.52.3d, he or she shall file annually with the Maritime Administrator a certificate or other satisfactory evidence of both participation in and contribution to the Maritime Administrator approved or established plan for every RMI flagged vessel in the shipowner's fleet.

**e.**   Any certificate or bond filed with the Maritime Administrator pursuant to 7.52.3a, 7.52.3b or 7.52.3c shall be renewed and re-filed 10 days before its expiration date. Such certificates or bonds may be issued for a specific period of time or for an indefinite period of time and until cancellation.

**f.**   Each new or renewal certificate or evidence of the shipowner's method of securing its obligations to provide financial security as required in 7.52.1 shall be conspicuously posted aboard each vessel where the information may be made available to the seafarers.

**.5   Repatriation.**

**a.   Entitlements.**

**(1)**   In accordance with the Maritime Act, seafarers shall be entitled to repatriation, at no expense to them, to the port at which they were engaged, the port where the voyage commenced, a port within the seafarer's own country, or to such other port as may be agreed upon under the following circumstances:

**i.**   when the period of employment is terminated by reason of completion of the voyage for which the seafarer was engaged;

**ii.**   upon the termination of the seafarer employment agreement by the seafarer for justified reasons;

**iii.**   upon the termination of the seafarer employment agreement by the shipowner;

**iv.**   due to the seafarer no longer being able to carry out his/her duties under the seafarer employment agreement or where the seafarer cannot be expected to carry them out in the specific circumstances; or

**iv.**   upon the expiration of the contract period of employment.

**(2)** A list of the precise entitlements to be accorded by the shipowner for repatriation shall be provided to each seafarer employed by that shipowner. This list shall include entitlements relating to the destination of repatriation, the mode of transport, the items of expense to be covered and other arrangements to be made for the seafarer by the shipowner.

**(3)** The entitlement to repatriation is not permitted to lapse when a seafarer is held captive on or off the ship as a result of acts of piracy or armed robbery against the ship.

**b.  Forbidden Employment Condition.**

It shall be a maritime offense for any shipowner to require the Master, any officer or any crew member to purchase in advance his or her own repatriation transportation as a condition of initial or continued employment. Furthermore, it shall be a maritime offense for any shipowner to attempt to recover the cost of repatriation from the seafarer's wages or other entitlements except where the seafarer has been found, in accordance with RMI laws, regulations or other applicable measures or the provisions of applicable collective bargaining agreements to be in serious default of the seafarer's employment obligations. Nothing in these Regulations shall prejudice any right of a shipowner to recover the cost of repatriation under other contractual arrangements.

**c.  Duration of Service.**

The duration of service on board, as mutually agreed upon between the seafarer and the shipowner following which a seafarer is entitled to repatriation shall be less than 12 months. The right to repatriation shall be retained by a seafarer at the end of any satisfied contract period, extended or otherwise, unless forfeited pursuant to § 844 of the Maritime Act.

**d.  Seafarer's Copy.**

Each RMI flagged ship must carry and make available to all seafarers aboard the ship a copy of the applicable provisions of the Maritime Act regarding repatriation written in English and the working language of the ship.

Maritime Act Sections 843 and 844.

**.6  Unemployment Compensation.**

**a.  Indemnity.**

Each shipowner shall ensure that, in every case of loss or foundering of any vessel, each seafarer on board shall be paid an indemnity against unemployment resulting from loss or foundering.

**b.  Rights and Legal Remedies.**

Such compensation shall be without prejudice to any other rights and legal remedies a seafarer may have under the Maritime Act for loses or injuries arising from a vessel's loss or foundering.

**c.  Pay Rate and Period.**

The indemnity against unemployment resulting from a vessel's foundering or loss shall be paid for the days during which the seafarer remains in fact unemployed at the same rate as the

wages payable under the employment agreement, but the total indemnity payable to any one seafarer may be limited to two (2) months' wages.

**.7   Abandonment**

A seafarer shall be deemed to have been abandoned where, in violation of the requirements of the Maritime Labour Convention, 2006 or the terms of the seafarers' employment agreement, the shipowner:

**a.**   fails to cover the cost of the seafarer's repatriation; or

**b.**   has left the seafarer without the necessary maintenance and support; or

**c.**   has otherwise unilaterally severed their ties with the seafarer including failure to pay contractual wages for a period of at least two (2) months.

Maritime Act Sections 834, 862 and 864.

**7.53   On Board Complaint Procedures, Conciliation, Mediation and Arbitration.**

The following procedures shall apply to on board complaints, conciliation, mediation and arbitration under Section 861 of the Maritime Act:

**.1   On Board Complaint Procedures.**

**a.**   There shall be on board complaint procedures that allow for the fair and effective handling of seafarer complaints alleging violations of the relevant ILO Conventions**.**

**b.**   All seafarers shall be provided, together with a copy of their seafarers' employment agreement, a copy of the on board complaint procedures applicable to the ship. The Maritime Administrator shall prescribe by Marine Notice provisions for development of the on board complaint procedure.

**c.**   Any victimization of a seafarer for filing a complaint is strictly prohibited. Victimization is understood to mean any adverse action taken or threatened by any person with respect to a seafarer for lodging a complaint which is not manifestly vexatious or maliciously made.

**d.**   Utilization of on board compliant procedures shall not prejudice a seafarer's right to seek redress through conciliation and mediation, arbitration or legal means.

**.2   Conciliation and Mediation Procedures.**

**a**   If the matter cannot be resolved through the on board complaint procedure in the appropriate timeframe allotted, officer and/or crew members shall have 10 days thereafter to bring it through the Master or his or her appointee to the employer; or if the matter may be to the prejudice of the Master, then directly to the employer. The employer and the officer and/or crew members shall have a period of 20 days there from to bring about conciliation.

**b.**   If after 20 days, the matter has not been conciliated, then either party shall have a further 20 days to bring the matter for mediation to the Maritime Administrator, or its appointed representative.

    **c.**  The conciliation and mediation procedures shall be informal.

**.3**  **Arbitration Rules.**

    **a.**  If the Maritime Administrator, or its appointed representative is unable to successfully mediate the matter, either party shall have 30 days to serve a notice of demand for arbitration and therein designate a proposed arbitrator. In the event that an arbitrator cannot be mutually agreed upon and appointed within 20 days after service of said demand, each party shall appoint an arbitrator and those two (2) shall choose the third arbitrator, who will act as the presiding arbitrator of the panel. Should one (1) party fail to appoint an arbitrator, then the first moving party shall thereafter have 10 days to bring the matter to the Maritime Administrator, or its appointed representative, who shall at his or her discretion appoint an arbitrator on behalf of the party failing to respond, or, alternatively, shall himself or herself act as sole arbitrator.

    **b.**  The arbitrator or arbitrators shall have 30 days from the receipt of a written request for arbitration to make a final determination in the matter.

    **c.**  The time periods above may be extended by the Maritime Administrator, or its appointed representative, and in the case of subparagraph f above may be extended by consent of the parties.

    **d.**  The parties to the arbitration may agree as to the place where the arbitration proceeding shall be held, the language in which the proceeding shall be conducted and, subject to the requirements of paragraph .3 hereof, the rules which will govern the arbitration proceeding. In default of agreement as to the place of the arbitration, the place shall be decided by the arbitrator(s). In default of agreement as to the rules, the proceeding shall be conducted in the English language under the United Nations Commission on International Trade Law (UNCITRAL) Arbitration Rules, insofar as consistent with the requirements of this Regulation.

**.4**  **Arbitration Proceeding.**

    **a.**  The arbitration proceeding shall be informal, and testimony shall be given orally and in person to the extent possible. All oral testimony shall be recorded unless the parties agree in writing to waive recording. The arbitration award shall be in writing, in the English language, and shall briefly state the reason for the award. The costs of the arbitration, as determined by the arbitrator(s), shall be borne by both parties unless otherwise awarded by the arbitrator(s). A payment on account of costs shall be made by both parties at the commencement of the arbitration.

    **b.**  Any arbitration award may be enforced, if necessary, by any Court of competent jurisdiction.

Maritime Act Section 861.

**Initial Effective Date:** The RMI Maritime Regulations became effective as of 21 March 1991.

END

**REVISION HISTORY**

| DATE | REGULATION | DESCRIPTION |
|------|------------|-------------|
| 12-2009 | 2.11.1 | Added section on Code for the Implementation of Mandatory IMO Instruments |
| | 2.13 | Revised per the International Convention for the Prevention of Pollution from Ships, 1973/78 |
| | 5.34.4 | Revised passenger ship inspections to six (6) month intervals from quarterly |
| | 6.35 | Revised entire Chapter on Marine Investigations (previously Marine Casualties and Offenses) |
| | 7.42.1 | Revised per Maritime Labour Convention, 2006 |
| | 7.45 | Revised per Maritime Labour Convention, 2006 |
| | 7.46.1 | Revised per Maritime Labour Convention, 2006 |
| | 7.47.1 | Revised per Maritime Labour Convention, 2006 |
| | 7.47.3 | Revised per Maritime Labour Convention, 2006 |
| | 7.47.4(d2) | Revised per Maritime Labour Convention, 2006 |
| | 7.48 | Revised per Maritime Labour Convention, 2006 |
| | 7.49.1 | Revised per Maritime Labour Convention, 2006 |
| | 7.49.2 | Revised per Maritime Labour Convention, 2006 |
| | 7.49.4 | Revised per Maritime Labour Convention, 2006 |
| | 7.51.2 | Revised per Maritime Labour Convention, 2006 |
| | 7.51.3 | Revised per Maritime Labour Convention, 2006 |
| | 7.51.4(b4) | Revised per Maritime Labour Convention, 2006 |
| | 7.51.5 | Revised per Maritime Labour Convention, 2006 |
| | 7.52.3 | Revised per Maritime Labour Convention, 2006 |
| | 7.52.5 | Revised per Maritime Labour Convention, 2006 |
| | 7.53.1 | Revised per Maritime Labour Convention, 2006 |
| | 7.53.4 | Revised per Maritime Labour Convention, 2006 |
| 4-2010 | 7.41.6 | Revised items (i) & (j) regarding free-fall launches |
| 7-2010 | 7.53.1 | Revised to harmonize with MN-7-053-1 |
| | 7.53.2 | Revised to harmonize with MN-7-053-1 |
| 11-2010 | 2.13.2 | Added new item (f) and re-lettered rest |
| | 5.34.3 | Revised to reflect current exceptions to annual inspection requirements |
| 10-2011 | 1.07 | Revised to reflect deletion of Decision Maker category (1.07.2) & Qualified Individual category (1.07.5), renumbering of rest & revision of Contact Information category (now 1.07.6) |
| | 5.34.2 | Revised to reflect revisions to initial inspection dates |
| | 5.34.9 | New section on Compliance Verification with rest renumbered |
| | 6.36.2 | Revised items in follow-up report |
| 12-2011 | 2.17.1 | Added Indian Register of Shipping to Classification Societies authorized for Vessel Measurement & Survey |
| | 6.35 | Extensively revised Chapter 6 on Marine Investigations |
| | 7.38.6 | Updated last sentence in paragraph. |
| | 7.51.2 | Added item (c) on Right of the Master |
| | 7.51.4 | Added paragraph 3 to item (a) |
| | 7.51.5 | Updated item (b) |
| 12-2012 | 1.03.1 | Added new item (b) with rest re-lettered |
| | 1.03.2 | Added new item (c) with rest re-lettered |
| | 1.11 | Added new section 1.11.5 Vessels Under Construction |
| | 2.11.1 | Changed title |
| | 2.13.7 | Added new item (h) regarding SEEMP |
| | 3.31.1 | Updated Regulation references |
| | 3.34 | New section on Construction Contracts |
| | 5.34.1(b) | Added new item (3) |
| | 5.34.2 | Revised items (a), (b) and (d) |
| | 5.34.3 | Added new items (d) and (e) |
| | 7.41.2 | Revised items (f) and (g) |
| | 7.46.2 | Added new item (d) on Industrial Personnel |
| 6-2013 | 1.03 | Definitions moved from 1.12 to 1.03 with rest renumbered and "Private Yacht Limited Charter" added |
| | 5.34.3 | Added new item (c) and re-lettered rest |
| | 5.34.9 | Revised to reflect the addition of Private Yachts Limited Charter |
| 11-2013 | 1.03 | Definitions: added "commercial yacht" and "passenger yacht" |

| DATE | REGULATION | DESCRIPTION |
|---|---|---|
| 11-2013 | 1.05 | Was *Certificates of Seafarers*, now *Fees* |
|  | 1.06 | Was *Fees*, now *Certificates of Seafarers* |
|  | 1.07 | Was *Appeal from a Decision*, now *Control of the Movement and Operation of Vessels* with rest renumbered |
|  | 1.07.2 | Updated to include reference to MLC, 2006 |
|  | 1.09.1 | Added sections on Vessels Engaged in Foreign Trade and Private Yachts Limited Charter |
|  | 1.09.3 | Retitled |
|  | 1.11.1a | Added reference to Private Yachts Limited Charter |
|  | 1.11.2 | Added new item (e) |
|  | 1.11.3 | Updated and added new item (l) |
|  | 1.11.6 | New section on Designated Number |
|  | 1.12 | Now *Appeal from a Decision* |
|  | 2.11.7 | Revised and added new items (b), (c) and (e) |
|  | 2.11.11 | Increased penalty amount |
|  | 2.12 | Switched order of Yachts from .3 to .2 and Change of Classification from .2 to .3 |
|  | 2.12.2 | Updated with new item (a) |
|  | 2.13.8 | Increased penalty amount |
|  | 2.14.4 | Increased penalty amount |
|  | 2.17.2 | Changed title and updated |
|  | 2.20.3 | Updated item (a) |
|  | 2.23.3 | Updated to include references to new Declarations |
|  | 2.24.2 | Added reference to Appointed Representatives |
|  | 5.34.2 | Added new item (c) |
|  | 5.34.6 | Updated |
|  | 5.34.10 | Added new section on MLC, 2006 Inspections and renumbered rest |
|  | 5.34.11 | Changed title and revised |
|  | 5.34.14 | Updated |
|  | 5.34.15 | Updated |
|  | 7.41.2 | Added new item (c) with rest relettered |
|  | 7.41.6 | New item (l) |
|  | 7.42.2 | Updated |
|  | 7.44.2 | Added new item (4) |
|  | 7.45.1(a) | Added new item (5) |
|  | 7.45.1(b) | Added permission for verifiable electronic signatures of Shipowner |
|  | 7.45.1e | New |
|  | 7.47.3 | Revised item (a) |
|  | 7.47.4 | Revised item (a) |
|  | 7.51.4(a) | Updated item (3) |
|  | 7.51.4(b) | Updated item (2) |
|  | 7.52 | Changed title and updated throughout |
| 12-2013 | 1.04.1 | Added "financing charters" to item (c) |
|  | 1.07 | Added 2nd paragraph under .2 regarding notice of change in Company |
| 02-2014 | 1.09.1 | Revised to reflect the acceptance of either the original or a copy of the Tonnage Tax receipt being attached to the Certificate of Registry as proof of payment. |
|  | 2.20.3 | Removed "or semi-annually for passenger yachts" from item a (4) |
|  | 5.34.9 | Removed reference to semi-annual from Compliance Verifications |
|  | 6.38.1 | Added new item (e) |
| 05-2014 | 2.17.1 | Revised Classification Society list to reflect DNV and GL merger |
| " | 7.41.6 | Updated to include passenger vessels and MOUs |
| " | 7.41.15 | New section on Emergency Preparedness |
| 07-2014 | 7.41.2 | Updated item (f) |
| 08-2014 | 7.45.1 | Updated verbiage regarding original signatures |
| 01-2015 | 2.13.4 | Updated to reflect replacement of BC Code with IMSBC Code |
|  | 7.41.2f | Added new item (10) on enclosed space entry and rescue drills with rest renumbered |
|  | 7.41.6 | Revised item (l) |
|  | 7.41 | Added new items 7, 9 and 10 with the rest renumbered |
|  | 7.47.2 | Updated item (b) to reflect that a copy of the Certificate of Competence must be provided to the ship's Master rather than displayed in a conspicuous location on board |
| 10-2015 | 1.01.4 | Updated to reflect change in requirement. |

| DATE | REGULATION | DESCRIPTION |
|---|---|---|
| 11-2015 | 5.38.8 | Added new item (a) |
| 1-2016 | 7.41 | Renumbered to original number; 7.38 and updated subsequent sections |
| 3-2016 | 1.02 | Updated reference |
| | 2.11.7(g) | Edited (g) Fishing Vessels |
| | 2.13f | Revised reference |
| | 2.17.2 | Removed "Annex 5 – Table 2" title from table |
| | 2.18.2 | Removed "whereupon as noted in Article 3 of the present Convention, it shall apply", added "and applies" |
| | 2.23.3 | Changed title to Yacht Declarations, updated content |
| | 3.31.1 | Replaced "required" with "outlined" in Regulations 1.04.2d and 2e |
| | 6.35.8 | Updated references |
| | 6.38.8(f) | Updated reference |
| | 6.38.8(g) | Updated reference in item (2) |
| | 7.39.6 | Updated reference |
| | 7.40 | Updated reference |
| | 7.41(f) | Updated reference in item (11), and updated reference in item (15) |
| | 7.41.14 | Updated reference |
| | 7.45.2 | Updated reference |
| | 7.46.4 | Updated reference |
| | 7.51.4(b) | Updated reference |
| 12-2016 | 1.03 | Added new item as .13 "pleasure yachts" and renumbered the remaining items |
| | 2.17.2 | Removed "Regs4Yachts (regs4ships.com) and replaced with "NautX (www.nautx.com)" |
| | 2.23.2 | Added new item (d) |
| | 7.41.2(d) | Added "Book" to title and removed numbering |
| | " | Added SOLAS requirement and revised to reflect all items that are required to be logged |
| | " | Removed item (2) completely |
| | 7.43 | Added new item (3) |
| | 7.50.12(c) | Added ", unless prescribed otherwise by a convention to which the Republic of the Marshall Islands is a signatory" |
| | 7.50.12(d) | Added ", unless prescribed otherwise by a convention to which the Republic of the Marshall Islands is a signatory" |
| | 7.52 | Added new items: a., (1), (2), (3), and b. |
| | " | Removed item .2 "Security for Costs." |
| | " | Added item: .7 "Abandonment" |
| | 7.52.1 | Added ", under any circumstances, including insolvency," and "long-term disability, death, abandonment" |
| | 7.52.3(c) | Added text |
| | 7.52.4 | Added item: f. |
| 3-2017 | 1.03 | Added new item as .8(d) & .21 "social guest" and renumbered the remaining items |
| | 1.03.13 | Updated reference |
| 10-2017 | 1.06 | Changed language and reworked entire section |
| | 7.38.5 | Added item: e. |
| | 7.41.2(h) | Revised language |
| | 7.43.3 | Revised language |
| | 7.43 | Added item: .4 |
| 5-2018 | 2.20.1 | Revised language |
| | 2.20.2 | Revised language |
| | 2.20 | Added item (4) |
| | 5.34.2 | Revised language |
| | 5.34.8 | Title change |
| | 5.34.8a | Revised language |
| | 5.34.8 | Added item (b) |
| 8-2018 | 5.34.8 | Title change |
| | 5.34.8(a) | Revised language |
| | 5.34.8(a) | Revised language item (2) |
| 12-2019 | 1.04.2(a) | Revised language |
| | 1.04.2(b) | Revised language |
| | 1.04.2(c) | Revised language |
| | 1.04.2(d) | Revised language |

| DATE | REGULATION | DESCRIPTION |
|---|---|---|
| 12-2019 | 1.04.2(e) | Revised language |
| | 1.04.2(g) | Revised language and updated reference |
| | 2.20.1 | Revised language |
| | 2.30.1 | Revised language |
| | 3.32 | Revised language |
| | 3.33 | Revised language |
| | 3.34 | Revised language |
| | 4.33.3 | Changed title and revised language |
| | 7.41.2(g) | Revised language of item (1), added item (3), and renumbered |
| | 7.41.8 | Added new items (c) and (d) |
| | 7.41.8(b) | Removed items (4) and (5) |
| | 7.45 | Added items (k), (k)(1), and (k)(2) |
| | 7.52.5 | Added item (3) and renumbered |
| 8-2020 | 1.03.3 | Added new definition and renumbered remainder of 1.03 |
| | 1.03.4 | Added new definition and renumbered remainder of 1.03 |
| | 1.03.5 | Added new definition and renumbered remainder of 1.03 |
| | 2.20.1 | Revised language |
| | 2.20.2 | Revised language |
| | 7.41.1 | Added new subsection (b) and renumbered |
| | 7.45(c)(2) | Revised language |
| | 7.45.1(k) | Revised language |
| 9-2020 | 6.36.2 | Revised item (a) and renumbered |
| | 6.38.7 | Revised Language |
| | 6.38.8(d) | Revised Language |
| | 6.40 | Removed |
| 1-2021 | 1.03.26 | Revised language |
| | 2.11.7(d) | Revised language |
| 3-2021 | 2.17.1 | Updated "DNV GL AS' to "DNV" |
| 8-2021 | 2.17.2 | Deleted Azure Naval Architects |
| | 7.38.1(d) | Revised language |
| | 7.38.3 | Revised language |
| | 7.38.6 | Revised language |
| | 7.42.4 | Revised language |
| | 7.46.2(d) | Revised language |