UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 21-126 |
| v. | * | SECTION: S |
| WARLITO TAN | * | |
| | * | |

\* \* \*

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE
AND DEFENDANT'S NOTICE OF FOREIGN LAW**

The United States, through undersigned counsel, hereby files this response to defendant's motion in limine to preclude the government from asserting that he failed to maintain an Oil Record Book or that he violated MARPOL. Rec. Doc. 263. The government respectfully urges the Court to deny this motion because Tan is charged with the former, and the proof is the latter. Because it is overlapping in content and filed during the pendency of the motion in limine, the United States also here advises defendant and the Court of its opposition to defendant's notice of foreign law. Rec. Doc. 277. Defendant's last-minute effort to present foreign law is as untimely as it is irrelevant. Furthermore, it apparently seeks to focus the jury on impermissible considerations and should be excluded.

**MOTION IN LIMINE**

**The Act to Prevent Pollution from Ships**

Count 1 of the Indictment charges that Tan "did knowingly fail and cause the failure to maintain an accurate ORB for the MV JOANNA." At trial it will be proved that the defendant failed to maintain an Oil Record Book. It will be further proved that he did so knowingly and willfully. And, it will be further proved that his acts and omissions also caused the ship's Master

to fail to maintain the Oil Record Book, in violation of the Act to Prevent Ships (APPS) and MARPOL. These are the facts as well as the legal charge in the case.

As the Master testified in Rule 15 depositions, he relies entirely on Tan to maintain the Oil Record Book and he had no basis to know whether defendant's entries were true or false. All of the entries and omissions that make up this charge were made by Tan. The Master signed each page he was given by Tan without question. Within this company and on this ship, Tan was vested with the responsibility to maintain an accurate Oil Record Book.

To the extent that defendant seeks an evidentiary ruling in limine, he apparently seeks to preclude the government from introducing evidence and argument showing his bad conduct because the responsibility to maintain the log rests on the Master. Defendant's request that the Court prevent the government from proving and arguing the facts that comprise Count 1 must be denied.

But Tan's motion seeks something far beyond an in limine ruling. It seeks nothing less than dismissal of Count 1. The time for dispositive motions has long passed. Moreover, defendant's misguided arguments concerning his criminal liability have already been squarely rejected by this Court. *United States v. Empire Bulkers Ltd.*, 583 F.Supp.3d 746 (E.D. La. Feb. 3, 2022) (Lemmon, J.).

Defendant's motion does not seek clarification regarding the elements of the offense or how the jury should be instructed. That is the subject of the parties' respective filings and future filings, and obviously the sole province of the Court to determine. However, it bears mentioning in this context that the Court has already determined, and the parties generally agree that the jury should be instructed that the defendant can be found guilty in Count 1 if he willfully caused another

person (i.e., the Master) to fail to maintain an accurate Oil Record Book by and through his own knowing failure to maintain the log. *Id*. at 753

## MARPOL Violations

The second part of defendant's motion in limine seeks to preclude the government from characterizing Tan's conduct as violating MARPOL. Defendant insists he is not engaging in "technical quibbles" but in fact, that is exactly what he is doing.

Paragraphs 9 – 11 of Count 1 of the Indictment set forth MARPOL requirements and that Congress implemented MARPOL into U.S. law through APPS. APPS prohibits violations of MARPOL, the statute, and the regulations promulgated thereunder. The statutory provision Tan is charged with violating provides that "[a] person who knowingly violates the MARPOL Protocol ... this chapter, or the regulations issued thereunder commits a class D felony." 33 U.S.C. § 1908(a). To explain how defendant's entries in the Oil Record Book were inaccurate with regard to Counts 1-3, and additionally obstructive with regard to Counts 2-3, the government must be able to explain how defendant's overboard discharges were made contrary to MARPOL. *See* Indictment at para. 10.

MARPOL Annex I ("Regulations for the Prevention of Pollution by Oil") established international standards governing the treatment and disposal of oily mixtures generated from the machinery spaces of a vessel. Under MARPOL, machinery space bilge water may be discharged overboard into the ocean only if it does not exceed 15 ppm of oil and the ship has in operation required pollution prevention equipment. This equipment includes: an oil filter, known as an OWS; an alarm, known as an Oil Content Monitor (OCM); and an automatic stopping device, known as a Three-Way Valve.

Defendant did not comply with the discharge requirements in MARPOL because the metal "chock" prevented the Oil Content Monitor, a required piece of equipment, from functioning as required. In everyday usage, there are various terms such as "noncompliant", "contrary to", "impermissible" and "violative" that are most frequently and perhaps most accurately described as "violations." Tan's argument in this filing is not that the alleged discharges are permissible under MARPOL, but rather, that only a vessel may be charged with violating MARPOL. But, like his complaint above, it was his conduct that caused the violation of United States law.

Asserting that the government should not be allowed to argue that a person violated the provisions of MARPOL is incorrect for several other reasons none of which the Court needs to resolve, but which the government briefly notes here.

First, both the United States and the ship's flag administration, the Marshall Islands (as well as defendant's licensing state, the Philippines) are all parties to MARPOL. There is no notice or fairness issue. Defendant is a licensed professional mariner whose employer charged him with ensuring environmental compliance.

Second, defendant is simply wrong that only ships can violate MARPOL. Rec. Doc. 263-1 at 4. Defendant's reference to Article 4, paragraph (3) of the '73 Convention does not state or even suggest that only ships can violate MARPOL. In fact, it provides notice that parties may take action "with respect to any violation…." Defendant ignores the second paragraph of that Article which provides:

> Any violation of the requirements of the present Convention within the jurisdiction of any Party [*i.e.,* the U.S.] to the Convention shall be prohibited and sanctions shall be established therefor under the law of that Party. Whenever such a violation occurs, that Party shall either:
>
>   (a) cause proceedings to be taken in accordance with its law; or
>
>   (b) furnish to the Administration of the ship such information and

> evidence as may be in its possession that a violation has occurred.

MARPOL, Art. 4(2).

Third, defendant has misstated or ignored the MARPOL Annex I discharge and Oil Record Book requirements. As set forth in Regulation 15, discharges from vessels are prohibited unless the ship is underway and moving, the required pollution prevention equipment is being used (e.g., the OWS and OCM), *and* the discharge effluent without dilution does not exceed 15 ppm of oil.[1] MARPOL does not say that a ship is prohibited from discharging oily mixtures, but rather, that certain discharges are prohibited "from a ship." Annex I, Reg. 15(A)(2). That is because it is people that discharge and cause discharges to occur. Similarly, Regulation 17 sets forth the Oil Record Book requirements and states that every ship of 400 gross tons or more "shall be provided with an Oil Record Book" and that certain entries "shall be recorded" and "signed by the officer or officers in charge of the operations concerned and each completed page shall be signed by the master of the ship." Reg. 17(4).

MARPOL places direct requirements on individuals, and those who do otherwise are properly said to have violated MARPOL. Whether, how, and by whom a violator is punished is another matter entirely. To preclude the United States from accurately stating that defendant violated MARPOL would run counter to the facts and the law. That said, to the extent that defendant wishes the jury to know that the United States has not charged him with any MARPOL violation that took place on the high seas, then that could be amply addressed in the Court's instructions to the jury.

---

[1] MEPC 117(52) at 20-22. Available at www.dco.uscg.mil/Portals/9/DCO%20Documents/5p/CG-5PC/CG-CVC/Marpol/sdoc/MEPC%20117(52).pdf

## TAN'S NOTICE REGARDING DETERMINATION OF FOREIGN LAW

Defendant's late filed notice to introduce foreign law, or, his interpretation of foreign law, is as untimely as it is irrelevant. Tan's last-minute request to be allowed to present his views regarding "the law governing ships on the high seas flying the flag of the Republic of the Marshall Islands" is not supported by any law or argument as to why that would be appropriate in this case. Indeed, the indictment charges violations of United States law committed more than 100 miles up the Mississippi River, within the internal waters of the United States. Defendant may have also violated the laws of other countries, but those are not the charges in this case.

In the first instance, this Court has properly recognized, "[t]he activity charged did not take place on the high seas; it is not the illegal discharge, but the presentation of the inaccurate record book, which Tan is alleged to have aided and abetted or otherwise caused, and which occurred in the Port of New Orleans." *United States v. Empire Bulkers*, 583 F.Supp.3d at 754. "The court has previously determined that [the ORB] regulation does not police activity on the high seas. The offense of failing to maintain an accurate ORB takes place when a knowingly inaccurate ORB is presented in a U.S. port. It therefore occurs in the United States, not on the high seas, and is properly prosecuted in the United States." *United States v. Empire Bulkers*, 2022 WL 3646069 (Aug. 24, 2022) (Lemmon, J.) (quotations and citations omitted). This Court's ruling follows the law of this Circuit in *United States v. Jho*, 534 F.3d 398 (5th Cir. 2008), as well two others. *See also United States v. Vastardis*, 19 F.4th 573 (3rd Cir. 2021); *United States v. Ionia Mgmt. S.A.,* 555 F.3d 303 (2d Cir. 2009) (per curiam). Each of these cases and many similar district court cases held that the "gravamen" of the offense was "not the pollution itself, or even the Oil Record Book violation occurring at that time, but the misrepresentation in port." *Jho*, 534 F.3d at 404 (quotations

and citations omitted). Defendant's attempt to revisit his incorrect legal theory should not be allowed at trial.

### Marshall Island Registry Regulations

Defendant's "Notice" lists seven legal conclusions regarding the law of the Republic of the Marshall Islands, accompanied by a one-hundred-page document that is represented to be the maritime regulations issued by the Marshall Islands Registry, a commercial business operated by a private for-profit corporation headquartered in the United States. *See* https://www.register-iri.com/maritime/ (last visited Oct. 28, 2022). Rule 26.1 requires that "[a] party intending to raise an issue of foreign law must provide the court and all parties with reasonable written notice." F.R.Crim.P., R. 26.1. Defendant's notice one week before trial is not reasonable. It is also not complete. There is no legal analysis or case law supporting the seven assertions, and there has been no notice of an expert witness who could inform the Court or be cross-examined.

Four of the seven determinations that Tan apparently is asking the Court to determine, and if so, presumably instruct the jury upon, refer to punishment or the lack thereof for MARPOL violations in the Marshall Islands. For example, proposed determination "a" contends that engineers and crew have no criminal liability for entries they make in an Oil Record Book under the law of Marshall Islands. Proposed determination "b" is that "[v]iolations of MARPOL are not punishable as crimes."[2] Proposed determination "d" represents that incorrect or incomplete entries in the ORB are not continuing criminal or civil violations. And proposed determination "g" is that a ship may suffer consequences, including a $1 million fine, if it violates the MARPOL regulations of the Marshall Islands. The contrast that Tan apparently seeks to make is with U.S. law where he is charged with criminal violations. Of course, jurors know that a person convicted of a U.S. crime

---

[2] The government notes that defendant uses the terminology "Violations of MARPOL" that he seeks to exclude above.

may face consequences, including fines and imprisonment. Thus, defendant apparently seeks to have the jury speculate on the possible punishment for the charges in this case versus lack of consequences in the Marshall Islands.[3]

It is well-established that "the jury [has] no sentencing function and should reach its verdict without regard to what sentence might be imposed." *Rogers v. United States*, 422 U.S. 35, 40 (1975); *see also United States v. Shannon*, 981 F.2d 759, 761 (5th Cir.1992), *aff'd*, 512 U.S. 573, (1994) ("The well-established general principle is that a jury has no concern with the consequences of its verdict."). Issues related to sentencing are irrelevant to the determination of guilt or innocence and would be highly inappropriate for defendant to mention directly or indirectly what sentence might be imposed if the defendant is found guilty. *See, e.g., United States v. Hudson*, 2011 WL 5331701 at 1 (E.D. La. Nov. 7, 2011) (Vance, J.).

Several of the other determinations of foreign law sought by defendant are apparently based on the absence of any specific language in the regulations. For example, proposed determinations "c", "e" and "f" all relate to specific things a Chief Engineer is allegedly not specifically required to do (not required to maintain and ORB, not required to document if the OCM is inoperable, not required to report a dangerous condition). This is not a legal analysis. However, it is misleading and inaccurate. The regulations relied upon by defendant do not excuse non-compliance with MARPOL nor do they provide that a Chief Engineer should violate a ship's required safety management plan, which, among other things, has detailed requirements for crew members.[4] The regulations defendant filed in this case fully incorporate MARPOL: "All vessels to which MARPOL Annexes I, II, III, IV, V and VI, applies shall comply with the design and pollution

---

[3] If defendant were allowed to make this argument, the United States should be allowed to respond.
[4] Tan's employer had detailed procedures that primarily reference MARPOL requirements and require compliance thereto, as opposed to the regulations o the Marshall Islands.

8

prevention equipment and operation provisions contained therein." Doc. 277-1 at 30. So, while the Marshall Islands regulations may or may not have additional provisions, the flag registry's regulations require compliance with MARPOL. For example, with regard to MARPOL Annex I (oil pollution), the regulations submitted by the defendant, require compliance with the equipment standards for the OWS and OCM found in MARPOL. *Id*.

Ironically, the regulations submitted by the defendant contradict an argument he has repeatedly made in this proceeding. Defendant has complained that the U.S. regulations implementing the MARPOL oil record book requirement contain the word "maintain" which is not found in MARPOL itself. In moving to dismiss Count 1, for example, Tan protested that:

> Again, those provisions do not come from MARPOL or the standard regulations (contained in "annexes") that are part of MARPOL. The relevant MARPOL regulation is Regulation 17 of Annex I . . . . Rather than stating that vessels of the prescribed size shall "maintain an oil record book," subsection (1) of Regulation 17 provides that vessels of that size "shall be provided with an Oil Record Book." Regulation 17 has no provision parallel to 33 C.F.R. §151.25(j) specifying a person "responsible for the maintenance of the ORB."

The Marshall Islands regulations submitted by the defendant state: "It shall be unlawful for any oil tank vessel of 150 gross tons and upwards, or for any other vessel of 400 gross tons and upwards, to fail to have *and maintain* on board at all times the current oil record book required by Regulation 17 . . . of Annex I and any amendments thereto in force." Doc 277-1 at 31 (emphasis added). In sum, it is not at all evident on this notice that the Marshall Islands regulations implementing MAPOL differ in significant respect from MARPOL (especially since it incorporates MARPOL) or from U.S. law.

## Notice

Defendant did not provide adequate notice to the Court or to the government of its intent to introduce the Marshall Islands regulations implementing MARPOL. The proposal conflicts with

9

the prior rulings of his Court and the law of the Circuit and should be excluded on relevance grounds alone. Furthermore, defendant's seven proposed take-aways from the regulations set forth in the Notice are devoid of legal analysis and would only serve to confuse the jury. Much greater notice would have been required for the Court and the government to properly evaluate the accuracy and completeness of these proposed determinations. For the government's part, it would have wanted sufficient opportunity to consult with legal representatives of the Marshall Islands Registry regarding the accuracy, import and relevance of defendant's proposed determinations.

Accordingly, Tan's Notice and proposed determinations should be rejected. Further, the government respectfully asks the Court to preclude evidence and argument by defense counsel to the law of the Marshall Islands or any other country other than the United States, to the punishment or consequences, or lack thereof, in opening or closing argument, direct or cross-examination of witnesses, or otherwise in the hearing of the jury. It the Court would prefer, the government will file a motion in limine addressing these issues separately.

## Conclusion

Accordingly, for the reasons set forth herein, the United States respectfully asks that the Court deny defendant's motion in limine, and reject the Notice Regarding Determination of Foreign Law.

Respectfully Submitted,

| | |
|---|---|
| TODD KIM | DUANE A. EVANS |
| Assistant Attorney General | United States Attorney |
| Environmental & Natural Resources Division | |
| U.S. Department of Justice | |
| | |
| *s/ Richard A. Udell* | *s/ G. Dall Kammer* |
| Richard A. Udell | G. Dall Kammer (26948) |
| Senior Litigation Counsel | Assistant U.S Attorney |
| Environmental Crimes Section | 650 Poydras Street, Suite 1600 |
| U.S. Department of Justice | New Orleans, LA 70130 |
| 50 M St., N.E./Room 4206 | Telephone: (504) 680-3168 |
| Washington, D.C. 20044 | Email: dall.kammer@usdoj.gov |
| Telephone: (202) 305-0361 | |
| Email: richard.udell@usdoj.gov | |

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all defense counsel of record.

*s/ G. Dall Kammer*
G. DALL KAMMER
Assistant United States Attorney