**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | \* | **CRIMINAL NO. 21-126** |
| **v.** | \* | **SECTION: S** |
| **WARLITO TAN** | \* | |
| | \* | |
| | \* | |
| | \*    \*    \* | |

**UNITED STATES' OBJECTIONS TO DEFENDANT TAN'S**
**PROPOSED JURY INSTRUCTIONS (REC. DOC. 283)**

The United States, by and through undersigned counsel, hereby files these objections to Defendant Tan's updated proposed jury instructions filed October 31, 2022. Rec. Doc. 283.

Defendant's proposed jury instructions directly contradict the Court's rulings in this case and the decisions of the Fifth, Third and Second Circuits discussed therein. As the government has cautioned, the defendant continues to notice the government and this Court that he intends to inject such improper argument and alleged "evidence" into the trial of this matter. *See, e.g,* government's motions in limine (Rec. Doc. 156), objections to defendant's exhibits (Rec. Doc. 288), motion for reconsideration (Rec. Doc. 207), motion to exclude expert testimony (Rec. Doc. 155), opposition to defendant's motion in limine and notice of foreign law (Rec. Doc. 280). Respectfully, the United States recommends that the Court address these issues prior to trial to avoid improper opening statements and argument, and to help minimize the need for objections during trial.

I.      **Defendant's Proposed Special Jury Instructions**

A.   Defendant's Proposed Instructions No. ___ and No. 1 (Count 1)

The first two proposed instructions (No. ___ and No. 1) contradict this Court's rulings on various legal issues that have been decided in accordance with well-settled law and serve no purpose other than to confuse the jury. Defendant's first proposed instruction, entitled No. ___, states:

> The indictment in this case includes references to U.S. regulations governing how oil record books are to be completed. I instruct you that those regulations apply to foreign vessels such as the JOANNA only with respect to operations that take place while the vessel is in the United States.
>
> There is no evidence in this case that any operation that was or was [sic] required to be recorded in the JOANNA's Oil Record Book took place while the vessel was in the United States. Accordingly, I instruct you that the U.S. regulations for how an Oil Record Book should be completed are not relevant.

Rec. Doc. 283 at 3. Tan's next proposed instruction, No. 1, repeats the same first paragraph above but adds:

> All of the entries in the Oil Record Book that the government contends are inaccurate or incomplete were made outside the United States, where only the law of the Marshall Islands applied to the entries. I instruct you that it is not a crime under the law of the Marshall Islands to make an inaccurate or incomplete entry.

*Id*. at 4. The Court has already rejected these same defense theories. *See* Order and Reasons, Rec. Doc. 112 at 10:

> Clearly, the applicable regulations require the maintenance of an ORB. Moreover, this requirement has been interpreted to mean that the ORB must be accurate. As the Third Circuit has observed, no reasonable reader could conclude otherwise. [*United States v. Vastardis*, 19 F.4th 573, 583] "The recordkeeping provision would make little sense if ... it required that ships only physically possess an Oil Record Book in any state of completeness or accuracy. Because an Oil Record Book must be accurately maintained under § 151.25, and because § 151.25 applies to foreign ships while they are in U.S. waters or a U.S. port, the arrival in U.S. waters or a U.S. port of a ship with an inaccurate Oil Record Book constitutes a violation of that regulation." *Id*.

Further, in *Jho*, the Fifth Circuit explained that "we read the requirement that an oil record book be 'maintained' as imposing a duty upon a foreign-flagged vessel to ensure that its oil record book is accurate (or at least not knowingly inaccurate) upon entering the ports of navigable waters of the United States." 534 F.3d at 403. Accordingly, the court rejects Tan's contention that the regulation does not require maintenance of an accurate ORB, and that the regulations impermissibly reach high seas activities. The activity charged did not take place on the high seas; it is not the illegal discharge, but the presentation of the inaccurate record book, which Tan is alleged to have aided and abetted or otherwise caused, and which occurred in the Port of New Orleans. "[K]nowing violations of 33 C.F.R. § 151.25 carried out by foreign-flagged vessels in U.S. ports may be prosecuted under 33 U.S.C. § 1908(a) as wholly domestic offenses." *Jho*, 534 F.3d at 404. Accordingly, the indictment does not fail to charge a valid violation.

And, in response to defendant's motion to reconsider, the Court held: "The offense of failing to maintain an accurate ORB takes place when a knowingly inaccurate ORB is presented in a U.S. port. It therefore occurs in the United States, not on the high seas, and is properly prosecuted in the United States." Rec. Doc. 240 at 4-5 (quotations and citations omitted). Notwithstanding this Court's rulings, and the recent Third Circuit decision in *United States v. Vastardis*,[1] defendant continues to propose misleading law.

The last sentence of defendant's proposed instruction No. 1 – "I instruct you that it is not a crime under the law of the Marshall Islands to make an inaccurate or incomplete entry." – is

---

[1] This same argument was made and rejected in *Vastardis* who was represented on appeal by Tan's counsel. The Third Circuit held:

> The Oil Record Book entries in question falsely documented bilge water discharges that occurred when the Evridiki was on the high seas. Vastardis argues that this divests the United States of the authority to enforce the penalties prescribed under MARPOL because the Act to Prevent Pollution is limited to conduct while in the navigable waters of the United States. We disagree. Instead, we—like some of our sister circuit courts—find that the arrival of the Evridiki in the Delaware Bay triggered the duty under Coast Guard regulations to "maintain an Oil Record Book" while in U.S. waters, which brought Vastardis's conduct within U.S. jurisdiction under the Act to Prevent Pollution.

*Vastardis*, 19 F.4th at 584 (citing and upholding the applicability of 33 C.F.R. § 151.25(a)).

irrelevant and misleading. Since defendant is not charged with any violation of foreign law, any instruction regarding Marshall Islands law is irrelevant. It is misleading and highly improper for the reasons explained in the government's opposition to defendant's belated notice of foreign law. Rec. Doc. 280.

These two proposed jury instructions seek nothing less than for the Court to reverse its earlier rulings and contravene this Circuit's binding authority in *Jho*. At the time of the offenses charged in this case, the *M/V Joanna* was not on the high seas. The *M/V Joanna* was more than 100 miles up the Mississippi River, well within the jurisdiction of the United States. The idea that somehow the law of a foreign ship registry trumps United States law for acts committed *inside* the United States is without merit and has no place at trial.

B. Defendant's Proposed Instruction No. 2 (Counts 1-4)

Defendant's proposed instruction No. 2, seeks to define "willfully" as to all counts and to all foreign conduct. It mischaracterizes the indictment and again seeks an improper instruction focusing the jury on the alleged inapplicability of United States law when defendant Tan was on the high seas.

The government's requested jury instruction No. 6 ("Knowingly" and "Willfully" Defined), is consistent with the historical definition recognized by the Fifth Circuit:

> The word "willfully," as that term has been used from time to time in these instructions, means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.

Fifth Circuit Pattern Jury Instruction, No. 1.43. There is no reason to deviate from this established definition, and no legal or factual basis to carve out an exception to the traditional rule that "ignorance of the law is no excuse." *Id*., *see also United States v. Kay*, 513 F.3d 432, 447 (5th Cir. 2007) ("The [Foreign Corrupt Practices Act] does not define 'willfully,' and we therefore look to

4

the common law interpretation of this term to determine the sufficiency of the jury instructions pertaining to the mens rea element. The definition of 'willful' in the criminal context remains unclear despite numerous opinions addressing the issue. Three levels of interpretation have arisen that help clear the haze. Under all three, a defendant must have acted intentionally – not by accident or mistake.").

C.   Defendant's Proposed Instructions Nos. 3 and 3A (Count 1)

These requested jury instructions should be rejected for the same reasons set forth above. Moreover, Tan mischaracterizes Count 1 as being about false entries made outside of the United States[2] and then proposes an instruction that adds elements not found in the offense: "To prove that Defendant Tan willfully caused a failure to maintain an Oil Record Book inside the United States by the entries he made outside the United States the government was required to prove that the entries were *false and intended to deceive*. It is insufficient for the government to prove that the entries may have been *incomplete or misleading*." Rec. Doc. 283 at 7 (emphasis added).

The elements of the offense are only those set forth in the government's proposed jury instruction. "Intended to deceive" is not an element of Count 1.[3] (Likewise, the other terms mentioned in defendant's proposed instruction – "incomplete" and "misleading" – are not elements of the offense charged in Count 1 and it would be more than odd in this context for an instruction

---

[2] *See* Order and Reasons, Rec. Doc. 112 at 7-8 ("[T]he indictment charges Tan with causing the master's failure to maintain an accurate ORB, pursuant to 18 U.S.C. § 2(b).... Thus, Tan is not being prosecuted simply for having previously failed to maintain an oil record book once a ship enters U.S. waters, as occurred in *Fafalios*, but for causing the master or other person having charge of the ship to fail to maintain an accurate ORB for inspection upon entry to the Port of New Orleans.").

[3] Defendant's other proposed instructions would modify this further to require an intent to deceive the U.S. Coast Guard and violate a U.S. law.

to say what is *not* the intent standard rather than what the government is required to prove.) As stated in the government's proposed instructions, for the jury to convict on Count 1, the government must prove that the defendant knowingly and willfully failed or caused the failure (of the Master), to maintain an accurate Oil Record Book for the *M/V Joanna* in which quantities of oil were fully and accurately recorded. Defendant's complaint about "incomplete" and "misleading" entries is not only inapposite, but also legally incorrect since a jury could properly infer that incomplete entries, omissions, and/or misleading entries, resulted in the knowing and willful failure to fully maintain an accurate Oil Record Book.

D.  Defendant's Proposed Instructions Nos. 4 and 4A (Counts 1 and 3)

Although captioned as applying to Count 1, defendant asserts that the fact that he had the entries "countersigned" is not a criminal violation of any U.S. law and must be disregarded with respect to all counts. Rec. Doc. 283 at 8.  The indictment does not use the word "countersigned." None of defendant's the purported authorities listed for this proposition address the allegations in this case. Additionally, this proposed instruction does not apply to Count 1 or Count 4, because neither contain any allegation regarding co-signing (or countersigning) of Oil Record Book entries.

The allegation of co-signing Oil Record Book entries appears in Counts 2 and 3, both of which are obstruction counts. The government's theory of the case is that *the corporate defendants and Tan* engaged in this practice in order to create an appearance of normalcy and to avoid being questioned or detained in port. A second signature on Oil Record Book entries in the MARPOL context can reasonably be understood as an effort to boost their trustworthiness because U.S. regulations and MARPOL specify that "[e]ach completed operation shall be signed by the person or persons in charge of the operations concerned…." 33 C.F.R. § 151.25(h). *See also* MARPOL

Annex I, Reg. 17 ("Each completed operation shall be signed by the officer or officers in charge of the operations concerned….").

Defendant contends that he had a valid excuse because his employer and co-defendant had a policy that all entries should be countersigned. This does not insulate Tan from liability. The company did not instruct that people who are ignorant of the operations taking place in the engine room should vouch for their accuracy or otherwise sign detailed entries in the Oil Record Book. At trial, the government will introduce evidence that regulatory authorities understand that the person signing entries in an oil record book either performed the operation, witnessed the operation, or supervised the operation. The deposition testimony of the Third Engineer is that he did not perform, witness, or supervise the operations in question. Accordingly, the allegation is appropriate and cannot legitimately be excised from the indictment because defendant claims to have an excuse.[4] The jury will decide based on the evidence at trial whether this defense to Counts 2 and 3 has merit.

E.   Defendant's Proposed Instructions Nos. 5 and 5A (Count 1)

Defendant's proposed instructions 5 and 5A ask the Court to direct the jury to find the defendant not guilty unless he was the Master of the ship. Defendant's proposed instructions are improper because they fail to instruct the jury regarding causation and the applicability of 18 U.S.C. § 2(b) which is specifically charged in Count 1 (and every count of the indictment). It also contradicts this Court's Order and (Rec. Doc. 112 at 8) and the Fifth Circuit holding in *Jho*, 534 F.3d at 402 n.1 ("On appeal, Jho argues that he is not the "master or other person having charge

---

[4] No motion to dismiss this prong of counts 2 and 3 was filed. More recently, defendant has proposed a definition of the word "countersignature" which the government has opposed. Rec. Doc. 289.

of [the] ship." . . .  Even assuming this to be true, it is inapposite as the government charged Jho with aiding and abetting the oil record book offenses." (citations omitted)).

F.   <u>Defendant's Proposed Instructions Nos. 6 and 6A</u> (Count 1)

These proposed instructions are essentially the same as defendants proposed instructions 4 and 4A and should be rejected for the same reasons stated above.

G.   <u>Defendant's Proposed Instruction No. 7</u> (Count 1)

This instruction adds additional incorrect elements to Count 1 which charged that the defendant knowingly and willfully failed to maintain and caused the failure to maintain an accurate Oil Record Book. First, according to Tan, the government must prove the defendant "in fact recorded in the ship's oil record book that the OWS and OCM were functioning properly." Second, Tan contends that the government must also prove: (a) that the OWS and OCM were not working properly; (b) that defendant knew they were not working properly; and (3) that he made a false entry for the purpose of causing a violation of U.S. law.

This proposed instruction mischaracterizes the law and the elements of the offense. Tan's entries in the Oil Record Book claimed that discharges were made "through 15 ppm equipment." This is a term of art meaning through properly functioning equipment. However, in reality, the discharges were made while tampering with the equipment. Defendant was required also to log failures of the monitoring equipment, and, to log "exceptional discharges" not made in conformity with MARPOL. He did not do so. Thus, the government intends to prove that defendant failed to maintain the Oil Record Book both by commission and omission. The jury must be allowed to consider whether Tan's conduct was consistent with his obligation to fully maintained an accurate Oil Record Book upon arrival in U.S. ports and waters.

H. <u>Defendant's Proposed Instruction No. 8</u> (Count 2, prong 1)

Defendant's proposed instruction for Count 2 – obstruction of an agency proceeding in violation of 18 U.S.C 1505 – contains a six-step instruction that fails to include three of the obstructive acts specified in the indictment. Defendant has provided no legal grounds to depart from this Circuit's standard instruction.

As set forth in the government's proposed instruction No. 2, there are four separate ways in which a jury might convict defendant of this count. While defendant's proposed instruction 8 mentions the four allegations in the first paragraph, the instruction itself is limited to the first (defendant made, used, and presented and caused the presentation of an ORB that falsely reported that required pollution prevention equipment had been used properly when discharging oily bilge water). Each of the other three grounds are part of the charge and each provides an independent basis for conviction. As set forth in the indictment, and in the government's proposed jury instruction, the other bases for the allegation of obstruction of an agency proceeding are: that the defendant made, used and presented an ORB containing co-signed entries of an engineer who did not perform the operations in question or have personal knowledge regarding the truth of the entries; concealed and failed to disclose that the ship's incinerator was inoperable and had a missing part; and concealed and failed to report a hazardous condition (the disabling of the fuel oil heater pressure relief valves). Defendant's proposed instruction No. 8 is defective for incorrectly suggesting that only the first prong provides a basis for conviction. *See* Fourth and Fifth instructions. (Rec. Doc. 283 at 16).

Also, proposed instruction No. 8 directs the jury to determine whether "the Coast Guard was conducting a proceeding concerning a matter within the scope of its authority and jurisdiction, as opposed to an exercise aimed at conferring jurisdiction over acts that occurred outside the

United States." Rec. Doc. 283 at 15. This proposed instruction is inappropriate for a number of

reasons. First, the instruction recites the same improper jurisdictional argument contained in most

all of the defendant's proposed instructions. Second, the scope of the Coast Guard's authority is a

legal matter, not a factual determination by the jury. Third, the instruction suggests that defendant

intends to present an incorrect view of the law with regard to Coast Guard's authority and

jurisdiction, as well as the elements of the offense. The Coast Guard has clear statutory and

regulatory authority to inspect ships for compliance with APPS and MARPOL.[5] To ensure

compliance with U.S. laws, the Coast Guard has general authority to board vessels to perform

safety and environmental inspections, as well as specific authority to conduct a host of onboard

inspections of foreign vessels, such as certificate of compliance and port state control inspections.

*See* 46 U.S.C. § 3711; 46 C.F.R. § 2.01-6.  Such inspections are "routinely done to verify that

foreign vessels are complying with conventions governing safety, pollution, cargo, and labor."

*United States v. Taohim*, 817 F.3d 1215, 1219 (11th Cir. 2013). In the course of its inspections,

the Coast Guard may inspect ships to determine, among other things, that the vessel has a valid

International Oil Pollution Prevention certificate (which confirms that the vessel's equipment

meets MARPOL's requirements) and that "the condition of the ship and its equipment corresponds

substantially with the particulars" of that certificate. 33 C.F.R. § 151.23(a)(1), (a)(3); 33 U.S.C.

§§ 1904, 1907(c)(2)(A). The Coast Guard may also conduct an investigation specifically to ensure

---

[5] 14 U.S.C. 522(a) provides: The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, commissioned, warrant, and petty officers may at any time go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance.

compliance with MARPOL and APPS. 33 C.F.R.§ 151.23. It may examine the ship in general and

Oil Record Book, Oil Content Meter, and Oil Content Meter calibration certificate in particular.

33 C.F.R. §§ 151.23(a), (c), 155.380; 33 U.S.C. §§ 1904, 1907(c)(2)(A).

I. Defendant's Proposed Instruction No. 8A (Count 2)

Defendant's proposed instruction No. 8A contains the requisite elements but does not

provide any guidance regarding the necessary *mens rea*. The government's proposed instruction

for Count 2 is necessary because it also includes the definition of "corruptly." In 1996 Congress

enacted a clarifying amendment to 18 U.S.C. § 1515, which defines the term "corruptly" as used

in section 1505 to mean "acting with an improper purpose, personally or by influencing another,

including making a false or misleading statement, or withholding, concealing, altering, or

destroying a document or other information." False Statements Accountability Act of 1996, Pub.

L. No. 104-292, § 3, 110 Stat. 3459, 3460.

The government's proposed jury instruction requests that the jury be instructed that a port

state control inspection by the United States Coast Guard, an agency of the Department of

Homeland Security, to determine the vessel's compliance with United States law, is a pending

proceeding within the ambit of this offense. *See United States v. Vastardis*, 19 F. 4th, 573, 586 (3d

Cir. 2021) ("A Coast Guard inspection in a U.S. port is a proceeding in the manner and form

prescribed for conducting business before that agency, and § 1505 reaches all steps and stages in

such an action from its inception to its conclusion." (internal quotations and citation omitted); s*ee*

*generally Vastardis*, 19 F.4th at 585-88 (Coast Guard inspections of foreign ships, including Oil

Record Books, are authorized and within the agency's jurisdiction, and are considered proceedings

under the 18 U.S.C. 1519, 1505); *see also United States v. Taohim*, 817 F.3d 1215, 1221-1222

(11th Cir. 2013) (affirming Section 1505 conviction where "the jury reasonably could have

inferred that [the defendant] knew that the garbage record book did not include the discharge of plastic into the sea and that he made that fraudulent book available to the Coast Guard with the intent to interfere with its investigation"); *United States v. Oceanic Illsabe*, 889 F.3d 178, 189 & n.18, 190 & n.19 (evidence that ship's crew lied to Coast Guard inspectors supported § 1505 convictions).

J.  <u>Defendant's Proposed Instruction No. 9</u> (Count 2)

The United States objects to defendant's proposed jury instruction No. 9 which would instruct the jury "that [there is] no rule or regulation prohibiting a chief engineer of a vessel from co-signing entries in an ORB regardless of his personal knowledge. Therefore, you cannot find Defendant Tan guilty of obstruction of an agency proceeding on the basis that he co-signed entries in the ORB."

There is no allegation that the Chief Engineer co-signed entries of another person in the Oil Record Book. The allegation is that he directed a subordinate engineer to co-sign his (Tan's) entries. Thus, this instruction is inapposite. Even if Tan's proposed instruction were to instead refer to the co-signing by his subordinate Third Engineer, it would invade the fact-finding province of the jury. It will be up to the jury to determine if the co-signing of entries meets the requisite standard of "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information."

K.  <u>Defendant's Proposed Instruction No. 10</u> (Count 2, prong 3)

Tan's proposed instruction No. 10 seeks to address the third prong of Count 2 which alleges that he "concealed and failed to disclose and caused the concealment and failure to disclose a broken component of the ship's incinerator and its inoperability."

Like proposed instruction No. 8 regarding the first prong of Count 2, Tan requests that the jury determine whether the Coast Guard was acting "within the scope of its authority and jurisdiction" as opposed to exercising jurisdiction over foreign acts. As set forth above, this is improper in multiple respects. *See supra,* government's response to proposed instruction No. 8.

Defendant's proposed instruction No. 10 additionally seeks to impose a requirement not found in the statue or case law requiring the jury to find that defendant "took active steps" (as opposed to acts of omission) to conceal the condition of the ship's incinerator from the Coast Guard. Rec. Doc. 283 at 19. Further, defendant asks the Court to tell the jury: "I instruct you that an officer of a vessel cannot be guilty of obstruction of an agency proceeding *merely for not voluntarily disclosing information*." Defendant's proposed instruction is in direct conflict with the definition of corrupt: "The term "corruptly" means acting with an improper purpose, personally or by influencing another*, including making a false or misleading statement, or withholding, concealing, altering or destroying a document or other information*." 18 U.S.C. § 1515(b) (emphasis added). Whether defendant's acts and omissions meet this standard is a question for the jury.

L.  Defendant's Proposed Instruction No. 11 (Count 2, prong 4)

Defendant's proposed instruction No. 11 seeks to address the fourth prong of Count 2 which alleges that Tan "concealed and failed to report and caused the failure to report a hazardous condition concerning the disabling of the fuel oil heaters pressure relief valves …." Defendant proposes that the jury should be instructed that an officer of a vessel cannot be guilty of obstruction of an agency proceeding "merely for not voluntarily disclosing information." As stated above, this is legally incorrect and unsupported by the law. It is also a mischaracterization of the government's

evidence. Tan is similarly incorrect that the jury must find that he took "active steps to conceal the condition of the ship's oil heater pressure relief" from the Coast Guard.

Rather than use the statutory definition, Tan proposes that "corruptly" be defined as requiring the government to prove that he "intentionally endeavored to corruptly (that is, with the purpose of obstructing justice) influence, obstruct, or impede that pending proceeding." This imposes a higher level of specific intent than established by Congress. Tan provides no explanation for his proposal to diverge from the statutory definition: "The term 'corruptly' means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering or destroying a document or other information." 18 U.S.C. § 1515(b).

M. Defendant's Proposed Instruction No. 12 (Count 2)

Like the proposed instructions as to Count 1, this instruction asks the Court to direct a verdict of not guilty as to Count 2 for the same improper reasons regarding defendant's international law and jurisdiction theories as detailed above. It should be rejected for the same reasons as set forth in this Court's denial of the motions to dismiss and motion for reconsideration.

N. Defendant's Proposed Instruction No. 13 (Count 3)

This proposed instruction regarding Count 2 (18 U.S.C. § 1519) fails to address the elements of the offense and instead, again focuses on improper jurisdictional arguments. The government's proposed jury instruction No. 3 should be used because it correctly tracks Fifth Circuit Pattern Jury Instruction No. 2.65 and 18 U.S.C. § 1519.

Defendant's proposed instruction No. 13 asks this Court to instruct the jury that "only the Republic of the Marshall Islands, and not the United States, has jurisdiction to prosecute Chief

Tan … with respect to alleged high seas discharges of bilge water." This contention is irrelevant and would only serve to mislead the jury as to the actual charges in this case.

O. <u>Defendant's Proposed Instruction No. 14</u> (Ports & Waterways Safety Act)

Like defendant's other proposed instructions, it fails to track the statutory elements and diverges in ways unsupported by law. It also seeks to re-litigate his motion to dismiss Count 4 that this Court rejected (Rec. Doc. 112 at 13; and Rec. Doc. 240). There are several distinct failings in this proposed instruction.

In the first instance, defendant's proposed instruction seeks to ratchet up the definition of a hazardous condition to be only those that "were *likely* to create harm…." Rec. Doc. 283 at 25 (emphasis added). The standard is defined in the law itself. The law does not require that the hazardous conditions were "likely" to cause harm, but rather, only that the condition is sufficiently serious that it "may" have an adverse impact. The jury instruction should include the entire regulatory definition verbatim as was proposed by the United States:

> Hazardous condition means any condition that may adversely affect the safety of any vessel, bridge, structure, or shore area or the environmental quality of any port, harbor, or navigable waterway of the United States. It may, but need not, involve collision, allision, fire, explosion, grounding, leaking, damage, injury or illness of a person aboard, or manning-shortage.

33 C.F.R. § 160.202.; *see also* Order and Reasons, Rec. Doc. 112 at 13. Defendant's instruction would defeat the very purpose of the law to broadly require the reporting of hazards to the Coast Guard as recognized by this Court: "Thus, by its terms, the statute directs the Secretary to prevent damage in U.S. ports and waterways, from harm resulting from vessel damage. Requiring hazards on vessels that could affect safety to be reported upon arrival in port is an obvious and reasonable means to achieve this legislative directive." Rec. Doc. 112 at 16.

Defendant Tan next seeks to exclude certain types of hazards and harm from his proposed definition of a hazardous condition. While the above-quoted regulatory definition includes injury to persons *aboard* the vessel, defendant's proposed jury instruction seeks to limit the harm only to include "property or a person *outside the ship* or obstruction to navigation." (emphasis added). There is no authority for limiting the scope of the PWSA in this regard and this Court has twice rule otherwise.

Defendant's proposed instruction is also defective because it excludes conditions that "may adversely affect the safety of any vessel, bridge, structure, or shore area or the environmental quality of any port, harbor, or navigable waterway of the United States." 33 C.F.R. § 160.202.

Defendant's proposed instruction also would require the defendant took an "affirmative act" and caused another person "to do an affirmative act." Rec. Doc. 283 at 25. These terms are not in the statute or regulations and are left unexplained. They would apparently allow those in charge of vessel operations to remain silent about a wide range of hazards Congress sought to include. As this Court recognized in rejecting defendant's motion to dismiss Count 4, one of the explicit purposes of the PWSA was the "protection of the marine environment." *See* Rec. Doc. 112 at 18 (citation omitted).

Tan's proposed PWSA instruction is further erroneous because it would require a specific intent to violate "a U.S. law that required the reporting of these conditions by the owner, operator or master under the circumstances." Neither the statute, applicable regulation, or any decisional law imposes such a specific intent standard.

P.  <u>Defendant's Proposed Instruction No. 15</u> (All Counts)

The United States objects to defendant's proposed jury instruction No. 15 because it is false, misleading, and unsupported by law. Proposed instruction No. 15 states: "The government has conceded that there is no evidence of pollution in this case. You are therefore instructed that in evaluating whether Defendant Tan is guilty you must accept that there were no discharges of oil to sea from the JOANNA." The United States has made no such concession. As a matter of law, "[a]ny liquid entering the bilge system including bilge wells, bilge piping, tank tops or bilge holding tanks is considered oily bilge water." 33 C.F.R. § 151.05 (definitions). There is much evidence that defendant engaged in deliberate acts of pollution. The government sought only to remove proof or lack of proof of "environmental harm" as a trial issue since it is not an element of any offense or relevant to any legitimate defense. The question concerning whether defendant's pollution had an adverse and cognizable environmental impact cannot fully be known because of the modus operandi used by this defendant to conceal his MARPOL violations – *i.e.,* tampering with the device designed to measure and prevent pollution and falsifying the Oil Record Book. Defendant cannot now benefit from his concealment of the evidence regarding the extent of his pollution.

Q.  <u>Defendant's Proposed Instructions Nos. 16-25</u>

Defendant's proposed jury instructions Nos. 16-25 propose that the Court modify this Circuit's standard jury instructions. The government objects and respectfully recommends that the Court instead utilize this Circuit's pattern instructions as outlined below. This will have the added benefit of consistency in this district and Circuit, and avoiding error.

| Defendant's Proposed Instruction | Fifth Circuit Pattern Instruction |
|---|---|
| Nos. 16 (Reasonable Doubt), 16a (Reasonable Doubt), 17 (Presumption of Innocence), 17a (Presumption of Innocence), 20 (Indictment), | 1.05 (Presumption of Innocence, Burden of Proof, Reasonable Doubt) |

| 21 ((Presumption of Innocence), 22 (Burden of Proof) | |
|---|---|
| No. 18 (government informer) | 1.15 (Accomplice – Informer – Immunity) |
| No. 19 (credibility of law enforcement) | 1.09 (Credibility of Witnesses) |

R.  Defendant's Proposed Instruction No. 23 (18 U.S.C. § 2(b))

The government objects to this proposed instruction because (1) it gives an inaccurate and incomplete definition of "willfully" as described above; (2) it improperly re-urges rejected jurisdictional arguments by its reference to "American law"; (3) it incorrectly states that an affirmative act must be committed; and (4) it incorrectly states that "is insufficient for the government to prove that defendant Tan caused or contributed to another person's failure to perform an act." *See* sections E, G, and K above.

S.  Defendants Proposed Instruction No. 24 (Aiding and Abetting) (All Counts)

Defendant's Instruction 27 seeks the Fifth Circuit's standard instruction for "aiding and abetting" in violation of 18 U.S.C. § 2(a). In support, Tan notes that the indictment referred to "aiding and abetting" (in a heading only) and the Court's Order and Reasons denying defendant Tan's motions to dismiss Counts 1 and 4 noting that aiding and abetting liability is always implicitly included. The statute, commonly referred to as "aiding and abetting" has two separate and distinct charges. In this case, the government specifically charged only 18 U.S.C. § 2(b) –the causation prong of the statute.  Accordingly, the government objects to this instruction because the indictment does not charge 18 U.S.C. § 2(a).

The substantive problem with defendant's proposed aiding and abetting charge under 18 U.S.C. § 2(a) is that it would require proof that the Master of the ship knew that the Oil Record Book was false. Under 18 U.S.C. § 2(b) a bad actor can cause an innocent person to violate the law. In this case, the government need not prove  that the Master of the ship knew the Oil Record

Book was false. It matters only that defendant Tan caused the Master to sign this false and fictitious record and his failure to maintain the log. Again, the defendant's purpose for requesting this instruction is to re-litigate issues that have already been resolved by this Court. *See*, *e.g.*, Rec. Doc. 112 at 7-8, 13-14.

    T.  <u>Defendant's Proposed Instructions Nos. 25 & 25a  (Willfully)</u> (All Counts)

Defendant's proposed instructions Nos. 25 and 25a (an alternative) seek to instruct the jury that the element "willfully" means that the government must prove defendant acted with specific intent to violate a "U.S. law known to him." None of the authority cited by defendant supports this level of specific intent. Tan's proposed requirement that that willfully include an "intent to cause a violation of U.S. law known to him" apparently seeks to re-urge international law arguments. Under this Court's rulings and the law of this Circuit, the Indictment is not properly characterized as foreign conduct involving foreign violations of law.

In support, defendant argues that "[t]his case raises the novel question when foreign conduct can properly be charged as "willfully causing" another's subsequent violation of U.S. law." That is not a correct articulation of the charges in this case.[6]

Tan's proposed requirement that that willfully include an "intent to cause a violation of U.S. law known to him" apparently seeks to re-urge international law arguments. Under this Court's rulings and the law of this Circuit, Tan's conduct charged in the Indictment is not properly characterized as foreign conduct involving foreign violations of law. His United States offenses

---

[6] Tan's question is not novel, especially in the context of Title 18 offenses. *See, e.g.,* United States v. Royal Caribbean Cruises Ltd. 11 F.Supp.2d 1358 (S.D.Fla. 1998) ("To find to the contrary would raise serious questions about the government's ability to enforce, as a matter of domestic law, false statements made in connection with such matters as bank fraud, immigration, and visa cases, where the false statements at issue were made outside of the United States, perhaps acceptable or in the alternative unnecessary under the appropriate foreign regulatory scheme, but nonetheless illegal under United States law.").

are alleged in the indictment to have taken place in the United States, including failing to maintain an accurate Oil Record Book upon entry into U.S. ports and waters, and the presentation of the false log to the Coast Guard during a port state control inspection 100 miles up the Mississippi River.

## III.     Conclusion

Defendant has submitted instructions that diverge from the statutes charged based on erroneous views of the law, mischaracterization of the charges, and attempts to insert unstated and unproved theories of foreign law. If permitted, it would open up lines of improper argument in opening and closing statements, as well as cross examination about matters not relevant to the actual charges. It would also substantially elongate the trial of this matter and require the government to call witnesses in far flung fields (*e.g.,* the law of the Marshall Islands) that have no real bearing on this case. A court ruling on these issues would greatly facilitate an orderly trial and assist the parties in tailoring their jury addresses, examinations, and exhibits.

                                                       Respectfully Submitted,

TODD KIM                                               DUANE A. EVANS
Assistant Attorney General                             United States Attorney
Environmental & Natural Resources Division
U.S. Department of Justice

*s/Richard A. Udell*                                   *s/ G. Dall Kammer*
Richard A. Udell                                       G. Dall Kammer (26948)
Senior Litigation Counsel                              Assistant U.S Attorney
Environmental Crimes Section                           650 Poydras Street, Suite 1600
U.S. Department of Justice                             New Orleans, LA 70130
50 M St., N.E./Room 4206                               Telephone: (504) 680-3168
Washington, D.C. 20044                                 Email:dall.kammer@usdoj.gov
Telephone: (202) 305-0361
Email: richard.udell@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all defense counsel of record.

*s/ G. Dall Kammer*
G. DALL KAMMER
Assistant United States Attorney